UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.

|  |  |
|---|---|
| WARREN FREEDENFELD ASSOCIATES, INC. as successor in interest to WARREN FREEDENFELD & ASSOCIATES, INC., Plaintiff, ) ) ) ) ) | **MAGISTRATE JUDGE** ___ |

v.                                                                    )   **COMPLAINT**
                                                                       )   **FOR COPYRIGHT**
MICHAEL P. MCTIGUE, DVM individually and as    )   **INFRINGEMENT,**
Trustee of THE MCTIGUE FAMILY TRUST,           )   **AND UNFAIR**
NANCY A. MCTIGUE, as Trustee of the            )   **COMPETITION**
MCTIGUE FAMILY TRUST, BRIAN C. HURLEY, DVM, )
GARDNER ANIMAL CARE CENTER, LLC                )
d/b/a GARDNER ANIMAL HOSPITAL, EDWARD D.      )
CORMIER, ASSOCIATES INC., and BENNETT         )
BUILDING CORPORATION,                          )
                     Defendants.               )
_____)

RECEIPT # _____
AMOUNT $ 250
SUMMONS ISSUED ✓
LOCAL RULE 4.1 ____
WAIVER FORM ____
MCF ISSUED____
BY DPTY. CLK. ___
DATE ___

## INTRODUCTION

1.       This is an action for damages for copyright infringement in violation of 17

U.S.C. § 101 et seq., injunctive relief, false designation or description of origin and unfair

competition in violation of 15 U.S.C. § 1125(a) in connection with architectural works

created by the plaintiff in connection with the expansion and renovation of a veterinary

hospital in Gardner, Massachusetts. The claims in this suit are based on the unauthorized

copying and/or use of the plaintiff's architectural works by the defendants.

## THE PARTIES

2.      The plaintiff, Warren Freedenfeld Associates, Inc., successor in interest to Warren Freedenfeld & Associates, Inc. (collectively, "Freedenfeld"), is a Massachusetts corporation with an address located at 39 Church Street, Boston, MA 02460.

3.      The defendant, Gardner Animal Care Center, LLC, d/b/a Gardner Animal Hospital (collectively, the "Hospital"), is a Massachusetts limited liability company with an address located at 73 Eaton Street, Gardner, MA 01440. The Hospital operates a veterinary clinic on the property located at 73 Eaton Street (the "Property").

4.      The defendant, Michael P. McTigue, DVM ("McTigue"), is a Massachusetts resident with an address located at 2 Squire Road, Ashburnham, MA 01430. Upon information and belief, McTigue is a co-trustee of the McTigue Family Trust which owns an interest in the Property. McTigue is also a co-owner of the Hospital and/or its manager.

5.      The defendant, Nancy A. McTigue as co-trustee of the McTigue Family Trust ("Nancy McTigue"), is a Massachusetts resident with an address located at 2 Squire Road, Ashburnham, MA 01430.

6.      The defendant, Brian C. Hurley, DVM ("Hurley"), is a Massachusetts resident with an address located at 7 Prouty Lane, Rutland, MA 01543. Upon information and belief, Hurley is the co-owner of the Hospital.

7.      The defendant, Edward D. Cormier Associates, Inc. ("Cormier"), is a Massachusetts corporation specializing in architectural design services with a principal place of business located at 113 Cedar Street, Suite S4, Milford, MA 01757.

8. The defendant, Bennett Building Corporation ("Bennett"), is a Massachusetts Corporation specializing in building construction with a principal place of business located at 42 Main Street, Leominster, MA 01453.

## JURISDICTION AND VENUE

9. This court has jurisdiction over this action pursuant to 28 U.S.C. 1338(a) and (b), and (c).

10. Venue in this action lies in this jurisdiction because the Property is located in Massachusetts, the defendants are located in Massachusetts, and the infringing acts were committed in Massachusetts (See 28 U.S.C. 1391 (b)(2) and 1400(a)).

## GENERAL ALLEGATIONS

### A.     The Project

11. In March of 1998, McTigue engaged Freedenfeld to perform architectural services in connection with the design of a new veterinary facility for the Hospital at the Property (the "Project"). Upon information and belief, at all relevant times, the Property was owned by the McTigue Family Trust. McTigue and his wife, Nancy McTigue, are the co-trustees of the trust. See copy of Deed attached as **Ex. A.**

12. McTigue's selection of Freedenfeld to design the Project was based on McTigue's familiarity with Freedenfeld's work. McTigue had worked with Freedenfeld in the past and had been "very pleased" with the firm's designs. For example, in a letter that McTigue submitted to City of Gardner Zoning and Planning Board (the "Planning Board") as part of a detailed zoning application packet to secure the city's approval of the Project, McTigue stated:

> To plan and design [the Project], I have assembled an experienced team of specialists. ***The architect is Warren Freedenfeld and Associates from Boston. Warren has designed over 300 veterinary hospitals and has won many awards for his work. We have worked together on our hospital renovation project in 1994 and have been very pleased with his designs***.

See Letter to Gardner Zoning and Planning Board, attached as **Ex. B.**

## B.     The Architectural Work

13.     In connection with the Project, Freedenfeld prepared several original architectural works for the Hospital. The original architectural works are identified as any and all drawings, plans, or other architectural work that Freedenfeld prepared in connection with the Project, including, but not limited to, all schematic design progress drawings, partial construction drawings, reduced scale plans that were submitted to the City of Gardner or any of its agencies, including the Planning Board and the Zoning Board of Appeals, and those drawings identified as A1.1, A2.1, A.4.1, A4.2, and A5.1. ( "Architectural Work") See Gardner Animal Hospital Project dated March 11, 1999 (identified in the table of contents as "Reduced Scale Plans"), attached as **Ex. C**, and Gardner Animal Care Center plans attached as **Ex. D.** Each of the Reduced Scale Plans contained the logo in large bold type **"Warren Freedenfeld & Associates, Inc."**

14.     The A2.1 drawing is entitled "First Floor Plan." This drawing depicts the entire layout of the first floor, including the two front vestibules and exact room locations. A unique aspect of the First Floor Plan is the interrelationship between the rooms and configuration of the spaces. These rooms include but are not limited to the waiting area, restrooms, medical records room, laundry room, food prep, consultation room, surgery suite, doctor's work stations, surgery prep, treatment room, pharmacy, lab, canine hospital ward, feline/exotic hospital ward, storage rooms, canine exam rooms,

4

feline exam rooms, and canine and feline boarding areas and locations of all points of ingress and egress. The First Floor Plan also appears in **Ex. C** as one of the reduced scale "Schematic Design Progress" drawings. <u>See</u> Gardner Animal Hospital Project dated March 11, 1999, attached as **Ex. C.**

15. The A1.1 drawing was entitled "Basement Plan." This drawing depicts the entire layout of the basement of the hospital.

16. The A4.1 drawing was entitled "Exterior Elevations." This drawing depicts the exterior west elevation of the hospital.

17. The A4.2 drawing was also entitled "East Elevation." This drawing depicts the east elevation of the hospital

18. The A5.1 drawing was entitled "Building Sections." This drawing depicts the east and west building sections of the hospital.

## C.    The City's Approval of the Project

19. When the Project was first conceived, it was clear that in order to gain the City of Gardner's approval; the Project first had to overcome certain zoning hurdles. The Property was originally zoned for residential purposes and was located in a Watershed Protection District. McTigue needed a Special Permit and Variance from the Gardner Planning Board. The Architectural Work, including the First Floor Plan, was submitted to City of Gardner in connection with the Zoning Variance Application, Special Permit Application and Zoning Board of Appeals Application. <u>See</u> Gardner Animal Hospital Project dated March 11, 1999, attached as **Ex. C.** In May of 1999, and based on the submissions in **Ex. C**, the City of Gardner voted unanimously in favor of the Project.

**D.     The Termination of the Architectural Services**

20.     By the end of June 1999, Freedenfeld billed the Hospital a total of

$50,036.33 in architectural services. Of this amount $15,013.70 remained unpaid by the

Hospital. When Freedenfeld attempted to raise the issue of the unpaid balance with the

Hospital, McTigue threatened to terminate Freedenfeld.

21.     In late July of 1999, Freedenfeld sent McTigue a letter which provided an

itemized list of all invoices and Hospital's payment history. See Freedenfeld letter dated

July 30, 1999, attached as **Ex. E.** Despite the fact, that $15,013.70 had still remained

unpaid by the Hospital, and that Freedenfeld had performed the work that was billed, in

an effort to resolve the dispute and keep the Project moving, Freedenfeld offered to

compromise the unpaid invoices for a payment of $9,500.00. However the letter made

clear that if McTigue went forward with his termination of Freedenfeld that McTigue was

precluded from using the Architectural Work and related documents to complete the

Project. Freedenfeld's letter stated:

> *It is also important for you to understand that your decision to terminate*
> *[the Services Agreement] precludes your use of any and all drawings*
> *and /or documents produced by this Office. These documents are not*
> *only protected by Federal copyright laws but are also the sole legal and*
> *contractual property of this Office and cannot be used by the Owner or*
> *others for completion of the Project. I believe you know that there is no*
> *dispute about this issue.* In addition, *any licensed architect will know the*
> *substantial jeopardy he will place his firm in by using another*
> *architect's copyrighted documents. All documents given to you by this*
> *Office must be returned upon Completion of the Termination*
> *Agreement.*

See Freedenfeld letter dated July 30, 1999 attached as **Ex. E.**

22.     In August of 1999, McTigue responded by letter to Freedenfeld's July 30,

1999 correspondence. In the letter, McTigue alleged for the first time that Freedenfeld

6

had failed to substantially perform the architectural services. See McTigue Letter

attached as **Ex. F.** But rather than return the Architectural Work to Freedenfeld as

specifically requested by Freedenfeld, McTigue stated in the letter that the Hospital

"rolled up" the plans and "discarded" them. According to McTigue, the Architectural

Work had proven to be "useless." McTigue stated:

> ***Whatever plans, drawings etc. you did prepare have proven useless to us,***
> ***and they have been rolled up and discarded.*** This is in spite of my having
> paid tens of thousands of dollars; unfortunately, I again have to pay
> another architect another tens of thousands of dollars to complete the
> project.

See McTigue Letter attached as **Ex. F.**

23.     In August of 1999, Freedenfeld applied to the Register of

Copyrights for a Certificate of Registration for all the Architectural Work, and

properly filed an application deposit and fee with the U.S. Copyright Office. A

copyright was granted to Freedenfeld as evidenced by Certificate VAU 656-367.

See Certificate of Registration, attached as **Ex. G.**

### E.     The Termination and Mutual Release Agreement

24.     On September 2, 1999, Freedenfeld and the Hospital agreed to

settle the dispute between the parties by entering into a Termination and Mutual

Release Agreement (the "Termination Agreement"). Under the terms of the

Termination Agreement, the parties agreed to release each other of all claims each

may have had against each other. However, the parties specifically agreed that the

Hospital would not use the Architectural Work. See Termination and Mutual

Release Agreement dated September 2, 1999, attached as **Ex. H.**

25.    The Architectural Work furnished to the Hospital was solely produced by Freedenfeld.

**F.    The Infringing Activity**

26.    Upon information and belief, shortly after the Hospital and Freedenfeld discontinued their relationship, the Hospital retained Cormier as the new architect for the Project. The Hospital also retained Bennett to construct the Project.

27.    Upon information and belief, sometime during this period, McTigue, the Hospital, Cormier, and Bennett came to the conclusion that the preparation of new plans would be too costly and significantly delay the completion of the Project. The defendants knew that any new plans would have to be submitted to the Planning Board again for approval. However, neither McTigue, the Hospital, Cormier, nor Bennett wanted to pay Freedenfeld for the right to use the Architectural Work. Without Freedenfeld's knowledge or consent, the defendants decided to use the Architectural Work but make only superficial changes in an attempt to disguise the fact that the Architectural Work was copied. This way, the defendants could be assured that the Planning Board would not reject the plans and issue a building permit so that construction could begin.

28.    The defendants acquired the original Architectural Work from an unknown source or obtained them from the Hospital, which in truth, must have never discarded them. Without notifying Freedenfeld and without Freedenfeld's approval, McTigue, the Hospital, Cormier, and Bennett, developed a new set of plans that substantially copied certain critical aspects of the Architectural Work, particularly those that formed the basis of the Planning Board's approval.

8

29.     Upon information and belief, in late 1999, the City of Gardner Building

Inspector issued a Building Permit for the Project to McTigue based on the plans and

design features that the defendants copied from the Architectural Work  See Copy of

Building Permit attached as **Ex. I**. Upon information and belief, the Project was

completed in 2000. See Copy of Occupancy Permit, attached as **Ex. J**

**G.     Freedenfeld's Discovery of the Infringing Activity**

30.     In late 2004, Freedenfeld was a subscriber to a veterinary trade

publication, *Veterinary Economics* (the "Magazine"). Upon information and belief, the

Magazine is an international business and management publication serving more than

50,000 subscribers in the United States and Canada. While perusing the November 2004

issue of the magazine, Freedenfeld discovered an article appearing on pages 50 - 57 about

the renovation and expansion of the Gardner Animal Hospital. According to the article,

the design won a "Merit Award" in the 2004 Veterinary Hospital Design Competition, a

national and international competition. The article is entitled "Giving an Old House a

Cutting –Edge Extension." The article identifies the owner of the Hospital as Michael

McTigue DVM, and Brian Hurley DVM. Cormier is listed as the Architect. Pages 52-53

of the article contain drawings that are nearly identical to the First Floor Plan contained

in the Architectural Work as A2.1 and submitted to the Planning Board as a schematic

design progress drawing in all important aspects, including, but not limited to, the

locations of two front vestibules and locations of the waiting area, medical records

room, laundry room, food prep, consultation room, canine and feline exam rooms,

surgery suite, doctor's work stations, surgery prep, treatment room, pharmacy, lab, canine

hospital ward, feline/exotic hospital ward, storage rooms, and canine and feline boarding areas.

31.     More importantly, a full size version of the First Floor Plan that was created by the defendants and obtained from the Planning Board and City of Gardner Building Department reveal that the defendants copied the unique interrelationship between the rooms and configuration of the spaces.

32.     All of the defendants named in this action either directly or indirectly infringed on Freedenfeld's copyrights in the Architectural Work. The infringement was willful and knowing. Further, each of the defendants substantially benefited from the infringement. Among other things, the copying of the Freedenfeld drawing allowed McTigue, the Hospital and Hurley to realize greater profits. McTigue and Nancy McTigue in their capacity as trustees of the McTigue Family Trust, also benefited from an increase in value to the Property. Among other things, Cormier and Bennett profited from the use of the Architectural Work in connection with their receipt of design and construction fees from McTigue. Cormier also substantially benefited from a marketing standpoint through its ability to market to clients the firm's receipt of the 2004 Veterinary Hospital Design Competition Merit Award. Upon information and belief, Cormier has also used the Architectural Work in advertising.

## COUNT I- DIRECT VIOLATION OF COPYRIGHT
**(The Hospital, McTigue individually and as Trustee of the McTigue Family Trust, Cormier, and Bennett)**

33.     Freedenfeld incorporates by reference the allegations contained in previous paragraphs as if fully set forth herein.

34.     Freedenfeld holds a valid copyright in the Architectural Work.

10

35.     The defendants had access to the Architectural Work and opportunity to copy them.

36.     The architectural works used or created by the defendants as described herein are strikingly similar to the Architectural Work.

37.     The defendants copied or caused to be copied the Architectural Work without authorization or license and thereby infringed on Freedenfeld's copyrights in violation of 17 U.S.C. § 101 et. seq.

38.     The defendants' conduct in infringing Freedenfeld's copyrights was willful, intentional, and in disregard of and with indifference to the rights of Freedenfeld.

39.     By infringing on Freedenfeld's copyrights, the defendants earned a substantial profit.

40.     As a result of the defendants' infringement of Freedenfeld's copyrights, Freedenfeld is entitled to relief pursuant to 17 U.S.C. § 504 and his attorneys' fees and costs pursuant to 17 U.S.C. § 505.

## COUNT II- VICARIOUS LIABILITY FOR VIOLATION OF COPYRIGHT
### (The Hospital, Nancy McTigue as Trustee of the McTigue Family Trust, and Brian C. Hurley)

41.     Freedenfeld incorporates by reference the allegations contained in previous paragraphs as if fully set forth herein.

42.     Freedenfeld holds a valid copyright in the Architectural Work.

43.     The defendants vicariously contributed to the direct violation of Freedenfeld's copyrights by profiting from the direct infringement while declining to exercise a right to stop or limit it.

11

44.    The defendants' conduct in vicariously contributing to the infringement of Freedenfeld's copyrights was willful, intentional, and in disregard of and with indifference to the rights of Freedenfeld.

45.    The defendants' conduct is actionable under 17 U.S.C. § 101, et. seq.

46.    As a result of the defendants' vicarious contribution to infringement of Freedenfeld's copyrights, Freedenfeld is entitled to relief pursuant to 17 U.S.C. § 504 and his attorneys' fees and costs pursuant to 17 U.S.C. § 505.

### COUNT III- CONTRIBUTORY VIOLATION OF COPYRIGHT
### (The Hospital, Nancy McTigue as Trustee of the McTigue Family Trust, and Brian C. Hurley)

47.    Freedenfeld incorporates by reference the allegations contained in previous paragraphs as if fully set forth herein.

48.    Freedenfeld holds a valid copyright in the Architectural Work.

49.    The defendants contributed to the direct violation of Freedenfeld's copyrights.

50.    The defendants' conduct in contributing to the infringement of Freedenfeld's copyrights was willful, intentional, and in disregard of and with indifference to the rights of Freedenfeld.

51.    The defendants' conduct is actionable under 17 U.S.C. § 101, et seq. seq.

52.    By contributing to the infringement of Freedenfeld's copyrights, the defendants earned a substantial profit.

53.    As a result of the defendants' contribution to infringement of Freedenfeld's copyrights, Freedenfeld is entitled to relief pursuant to 17 U.S.C. § 504 and his attorneys' fees and costs pursuant to 17 U.S.C. § 505.

12

## COUNT IV- JOINT AND SEVERAL LIABILITY FOR VIOLATION OF COPYRIGHT

54.    Freedenfeld incorporates by reference the allegations contained in previous paragraphs as if fully set forth herein.

55.    Freedenfeld holds a valid copyright in the Architectural Work.

56.    Each of defendants directly violated or contributed to the violation of Freedenfeld's copyright.

57.    The defendants' conduct in contributing to the infringement of Freedenfeld's copyrights was knowing and willful.

58.    The defendants' conduct is actionable under 17 U.S.C. § 101, et seq. seq.

59.    By contributing to the infringement of Freedenfeld's copyrights, the defendants earned a substantial profit.

60.    The defendants by their conduct are jointly and severally liable for their violation of Freedenfeld's copyright.

61.    As a result of the defendants' conduct, Freedenfeld is entitled to relief pursuant to 17 U.S.C. § 504 and his attorneys' fees and costs pursuant to 17 U.S.C. § 505.

## COUNT V- INJUNCTIVE RELIEF

62.    Freedenfeld incorporates by reference the allegations contained in previous paragraphs as if fully set forth herein.

63.    The defendants' conduct is causing, and unless enjoined and restrained by the Court, will continue to cause Freedenfeld irreparable harm that cannot be fully compensated or measured in money. Freedenfeld has no adequate remedy at law.

64.     Pursuant to 17 U.S.C. § 502, Freedenfeld is entitled to preliminary and

injunctive relief and permanent injunctions prohibiting the defendants from infringing on

Freedenfeld's copyrights.

## COUNT VI – FALSE DESIGNATION OR DESCRIPTION OF ORIGIN, AND UNFAIR COMPETITION

65.     Freedenfeld incorporates by reference the allegations contained in

previous paragraphs as if fully set forth herein.

66.     The actions of the defendants violate the provisions of 15 U.S.C. §

1125(a), under which Freedenfeld makes a claim.

67.     Freedenfeld is entitled to the greater of the value of the drawings or the

profits earned by the defendants as a result of this violation.

WHEREFORE, Freedenfeld prays for judgment against each of the defendants as

follows:

A.     For actual damages and lost profits, or statutory damages as the plaintiff
       may elect pursuant to 17 U.S.C. § 504;

B.     For the plaintiff's costs and reasonable attorneys' fees pursuant to 17
       U.S.C. § 505;

C.     For preliminary and permanent injunctive relief pursuant to 17 U.S.C. §
       502;

D.     For damages in connection with the defendants' violations of 15 U.S.C. §
       1125(a);

E.     For such other relief as the court deems just and proper.

14

Respectfully submitted,

WARREN FREEDENFELD &
ASSOCIATES, INC.

By its attorneys,

Barry S. Scheer
BBO No. 445100
Garrett J. Lee
BBO No. 641876
PARKER | SCHEER, LLP
One Constitution Center
Dated: July 20, 2005                    Boston, MA 02129
Tel.: 617-886-0500
Fax: 617-886-0100
Email: bss@parkerscheer.com
        gjl@parkerscheer.com

%JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Warren Freedenfeld Associates, Inc., et al.

**DEFENDANTS**

Michael P. McTigue, et al.

**(b)** County of Residence of First Listed Plaintiff    Suffolk
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant    Worcester
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Barry S. Scheer, Parker Scheer, LLP, (617)886-0500
1 Constitution Center, Boston, MA 02129

Attorneys (If Known)

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

☐ 1  U.S. Government
Plaintiff

☒ 3  Federal Question
(U.S. Government Not a Party)

☐ 2  U.S. Government
Defendant

☐ 4  Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                                    and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☒ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☒ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN   (Place an "X" in One Box Only)

☒ 1 Original
Proceeding

☐ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from
another district
(specify)

☐ 6 Multidistrict
Litigation

☐ 7 Appeal to District
Judge from
Magistrate
Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
U.S.C. Section 101 et. seq. and 15 U.S.C. Section 1125(a)
Brief description of cause:
Complaint for copyright infringement and unfair competition

## VII. REQUESTED IN   COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes  ☒ No

## VIII. RELATED CASE(S)
IF ANY

(See instructions):

JUDGE

DOCKET NUMBER

DATE
7-22-05

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. **Title of case (name of first party on each side only)**   Warren Freedenfeld, et. al v. Michael P. McTigue, et al.

2. **Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).**

___  I.  160, 410, 470, 535, R.23, REGARDLESS OF NATURE OF SUIT.

X  II.  195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730,   *Also complete AO 120 or AO 121
           740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.        for patent, trademark or copyright cases

X  III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
           315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
           380, 385, 450, 891.

___  IV.  220, 422, 423, 430, 460, 480, 490, 510, 530, 610, 620, 630, 640, 650, 660,
            690, 810, 861-865, 870, 871, 875, 900.

___  V.  150, 152, 153.

3. **Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.**

4. **Has a prior action between the same parties and based on the same claim ever been filed in this court?**

    YES ☐    NO ☒

5. **Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC §2403)**

    YES ☐    NO ☒

    **If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?**

    YES ☐    NO ☐

6. **Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?**

    YES ☐    NO ☒

7. **Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).**

    YES ☒    NO ☐

    A.  **If yes, in which division do all of the non-governmental parties reside?**

        Eastern Division ☐        Central Division ☐        Western Division ☐

    B.  **If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?**

        Eastern Division ☒        Central Division ☐        Western Division ☐

8. **If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)**

    YES ☐    NO ☐

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME   Barry S. Scheer

ADDRESS   One Constitution Center, Boston, MA 02129

TELEPHONE NO.   (617) 886-0500

(CategoryForm.wpd -5/2/05)

**66750**

BOOK **21315** PAL **97**

### QUITCLAIM DEED

I, **ELIZABETH I. OSCHMAN** of 140 Holliston Street; Medway, Massachusetts, sole surviving owner,

for consideration paid, and in full consideration of TWO HUNDRED THIRTY FIVE THOUSAND ($235,000.00) DOLLARS,

grant to **MICHAEL P. McTIGUE and NANCY A. McTIGUE**, Trustees of the **McTIGUE FAMILY TRUST** under Declaration of Trust dated June 28, 1994 and recorded with the Worcester District Registry of Deeds, Book 16474, Page 280, of 2 Squire Road, Ashburnham, Worcester County, Massachusetts 01430

with **Quitclaim Covenants**,

A certain parcel of land situated on the northerly side of Eaton Street and the westerly side of Green Street in Gardner, Worcester County, Massachusetts, bounded and described as follows:

BEGINNING at the northeasterly corner thereof, at a point in the westerly line of Green Street, at a corner of other land now or formerly of John W. Denman and Georgia O. Denman, said point being located South 3° 52' 08" East along said street, line a distance of 300.00 feet from a granite bound at a point of curvature in said street line;

THENCE South 03° 52' 04" East, 442.80 feet to a granite bound at a point of curvature;

THENCE southerly by a curve to the left, having a radius of 5789.58 feet, an arc length of 114.72 feet to a point that is not tangent;

THENCE South 02° 08' 43" West, 55.97 feet to a point of curvature of a curve that rounds the northwesterly intersection of the westerly line of Green Street with the northerly line of Eaton Street, the preceding three courses being by the said line of Green Street;

THENCE southwesterly and westerly, by said intersection, by a curve to the right having a radius of 45.28 feet, an arc length of 70.14 feet to a point of tangency in the northerly line of Eaton Street;

THENCE North 89° 06' 17" West, 203.39 feet to a granite bound;

THENCE North 89° 52' 01" West, 331.07 feet to a point on a stone wall;

THENCE North 78° 44' 16" West, 43.16 feet;

THENCE North 73° 26' 02" West, 31.37 feet to a drill hole at a corner of stone walls at other land now or formerly of the first mentioned John W. Denman and Georgia O. Denman, the preceding two courses being by a stone wall and the preceding four courses being by the said line of Eaton Street;

THENCE North 2° 29' 51" West, 392.61 feet;

THENCE North 6° 34' 40" West, 117.87 feet;

THENCE North 17° 18' 36" West, 36.79 feet, the preceding three courses being by a stone wall;

THENCE North 82° 12' 59" East, 663.80 feet to a point in the westerly line of Green Street and the point of beginning, the preceding four courses being by said Denman land.

PROPERTY ADDRESS: 73 Eaton Street, Gardner, MA 01440

99 APR 28 AM 10:52

RETURN TO:
Steven B. DiPace, Esquire
348 Lunenburg Street  Suite 201
Fitchburg,MA  01420

BOOK 21315 PAGE 98

Containing 9.113 acres.

Subject, however to a Slope and Drain Easement, known as "Parcel 7-DS-3" according to the 1972 State Highway Layout No. 6004, for Green Street. Said Easement is situated at the northeasterly corner of the above described premises.

Being shown on a plan entitled: "Plan of Land of John W. & Georgia O. Denman in Gardner, (Worcester County) Massachusetts, Scale: 1 inch = 60 feet— February 26, 1992, Szoc Surveyors, 32 Pleasant St., Gardner, MA 01440, Plan Book 656, Plan 110.

Being the same premises conveyed to George A. Oschman, Jr. (now deceased) and Elizabeth I. Oschman by deed of John W. Denman and Georgia O. Denman dated May 3, 1993 and recorded in Worcester District Registry of Deeds, Book 15352, Page 379.

Real property taxes assessed by the City of Gardner for the current fiscal year shall be apportioned as of the date of the delivery of this Deed.

Witness my hand and seal this 12th day of March, 1999.

*Elizabeth I. Oschman*

Elizabeth I. Oschman

STATE OF FLORIDA

Manatee , SS.                                    March 12, 1999

Then personally appeared the above named Elizabeth I. Oschman and acknowledged the foregoing instrument to be her free act and deed, before me

Notary Public *Susan E. Snyder*

My Commission Expires:

STATE OF FLORIDA
COUNTY OF MANATEE
The foregoing instrument was
acknowledged before me on
3-12-99                    by
Elizabeth Oschman.
( ) Personally known to me
( X ) Produced ID FLA DL
          204207603



SUSAN E. SNYDER
MY COMMISSION # CC 652960
EXPIRES: June 4, 2001
Bonded Thru Notary Public Underwriters

ATTEST: WORC. Anthony J. Vigliotti, Register

**MICHAEL P. McTIGUE, D.V.M.**

TO: GARDNER ZONING AND PLANNING BOARDS

GARDNER ANIMAL HOSPITAL
7 Pearson Blvd.
Gardner, MA 01440
Telephone: (508) 632-7110

I am the owner of the Gardner Animal Hospital. We have been at our current facility in Gardner for 15 years, and serve as the area's only veterinary hospital. We provide complete small animal health care for dogs and cats (99%) and exotics (1% - ferrets, rabbits, and birds). Our scope of services include medicine, surgery, dentistry, radiology, pharmacy, laboratory, retail, grooming, pet adoption, and emergency care. We have 3 specialists who come to the hospital on an as needed basis for cardiology/ultrasound, orthopedic surgery, and behavioral consultation. We work with the Board of health, animal control officer, and MSPCA to comply with city and state regulations regarding rabies control, stray animal care, and animal health problems. We provide school tours, internships for students interested in veterinary medicine, and lectures as needed for any group. We also have several community services such as an annual spay day to provide low cost spays and neuters, fund raising for emergency animal relief aid, and a non profit feline adoption center.

We are the only animal hospital in the area, which includes Gardner, Winchendon, Ashburnham, Westminster, and Hubbardston with a combined population of about 46,000.

I became the sole proprietor of the Gardner Animal Hospital in January, 1988. I grew up in Rochester, NY, attended the New York State College of Environmental Science and Forestry at Syracuse University and graduated with a BS degree in 1979, and attended the New York State College of Veterinary Medicine at Cornell University and graduated with a Doctor of Veterinary Medicine degree in 1984. I worked for 4 years in a mixed animal practice (horses, cows, dogs, cats) in Copake, NY, and a small animal hospital in Hartford, CT, prior to moving to Gardner.

Since coming to Gardner 11 years ago, the hospital has grown from a single veterinarian to a 3 veterinarian business. We have 15 employees, and have seen over 15,000 clients and 30,000 patients.

Our growth, besides favorable demographics, is also due to our philosophy and performance. Our mission statement summarizes our goals and vision: "Our mission is to maintain a dedicated, caring and knowledgeable team committed to providing exceptional client service and veterinary health care. We strive toward this excellence through continuing education, technical advances and compassionate care for all pets entrusted to us. It is our pleasure to cultivate and celebrate the family – pet – veterinary bond." We have regular staff meetings and continuing education training every 2 weeks. Our staff is well trained and dedicated and has very little turnover. Most of the staff has been employed for over 5 years, and the new employees are from growth rather than replacement.

It is our growth, together with the growth in the area, that has led to the current problem lack of space. Our hospital has only 2,000 square feet. I started searching for a new location 2 year ago, but only recently found a suitable and available site. This site is worth the wait, as it is ideal for our needs.

The location is excellent, with the community hospital and Mount Wachusett Community College within ¼ mile, and the Gardner municipal golf course across the street. The site has 9 acres and includes a 220-year-old cape style home, a connecting breezeway, and a renovated barn that was used by a physician for his medical practice. It also has 2 small barns, a riding ring, and pastureland for horses.

The project will have several components. The breezeway, which is an attractive post and beam and brick structure in good condition, will be the main entrance, reception and waiting area. The barn will be removed, and the new hospital will be constructed surrounding the breezeway, and will be approximately 6,500 square feet. There will be a basement of approximately 5,000 square feet for use as an obedience training area and storage. The house, which is approximately 2,000 square feet and is in fair condition, will be restored and used as the business office, kitchen, library/conference room, and 2 doctor's offices. The total square footage of the project is about 13,500.

To plan and design this project I have assembled an experienced team of specialists. The architect is Warren Freedenfeld and Associates from Boston. Warren has designed over 300 veterinary hospitals and has won many awards for his work. We have worked together on our hospital renovation project in 1994 and I have been very pleased with his designs. The civil engineer, Denis McLaughlin who is from Gardner, is working closely with the architect on the project. Daniel McCarty of Leominster is providing Permitting and Project Management Functions.

This new facility will greatly increase our ability to provide a complete spectrum of services that are currently unavailable in our area. Our clients are currently referred to businesses outside the Gardner area for these services. We will need to increase our staff, so at least 6 new jobs will be created. Our entire current staff of 15 will continue in their present positions. To reflect our increased scope of services, we will be changing the name of the new site to the Gardner Animal Care Center.

We respectfully request that your Board act favorably on our request.

Sincerely,

Michael P. McTigue, DVM



FIRST FLOOR PLAN

GARDNER ANIMAL CARE CENTER
GARDNER, MASSACHUSETTS

Warren Freedenfeld & Associates

A2.1





GARDNER ANIMAL CARE CENTER
GARDNER, MASSACHUSETTS

EXTERIOR ELEVATIONS

A4.1



| A4.2 | EXTERIOR ELEVATIONS | | GARDNER ANIMAL CARE CENTER | Warren Freedenfeld & Associates | ARCHITECT | ENGINEER | REVISIONS |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | | | GARDNER, MASSACHUSETTS | | | | |





**Warren Freedenfeld & Associates**

Architecture
Planning
Interior Design

39 Church Street
Boston MA 02116
**Phone:** 617.338.0050
**Fax:** 617.426.2557

30 July 1999

Michael P. McTigue, DVM
Gardner Animal Hospital
7 Pearson Boulevard
Gardner, MA 01440

Project: **Gardner Animal Hospital (Project #9818)**
Re:    **Termination Agreement**

Dear Dr. McTigue:

Warren has asked me to respond to your last correspondence (undated) regarding our Termination Agreement. We would like to offer clarification and a summary of the transactions, to date. In your presentation, you neglected to include reimbursable expenses from all invoices. Therefore, the correct total billed to dated is as itemized below.

| Date | Invoice # | Amount | Payments | Check Date |
|------|-----------|--------|----------|------------|
| Retainer | N.A. | $ 3,000.00 | $ 3,000.00 | 20 Apr 98 |
| 30 Apr 98 | 5109 | 1,513.62 | 1,513.62 | 08 Jul 98 |
| 31 Jan 99 | 5500 | 14,615.23 | 14,615.23 | 22 Feb 98 |
| 28 Feb 99 | 5524 | 5,478.32 | | |
| 31 Mar 99 | 5553 | 10,340.30 | 7,500.00 | 07 Apr 99 |
| 30 Apr 99 | 5592 | 75.16 | 8,393.78 | 10 May 99 |
| 31 May 99 | 5620 | 17,865.71 | | |
| 30 Jun 99 | 5644 | 147.99 | | |
| Totals    = | | $50,036.33 | $35,022.63 | |

As noted above, your payments to date amount to $35,022.63, as stated in your letter, leaving an unpaid balance of $15,013.70.

Our offer to settle for $9,500.00 included all payments made by Gardner Animal Hospital, including the initial retainer (deposit) and falls below the break-even point for this Project. This figure was arrived at in an attempt to cut the substantial losses that our Office has incurred on your behalf.



**Architecture**
**Planning**
**Interior Design**

Michael McTigue, DVM
29 July 1999
Page 2

It is also important for you to understand that your decision to terminate our Owner and Architect Agreement precludes your use of any and all drawings and/or documents produced by this Office. These drawings and other documents are not only protected by Federal copyright laws but are also the sole legal and contractual property of this Office and cannot be used by the Owner or others for completion of this Project. I believe you know there is no dispute about this issue. In addition, any licensed architect will know the substantial jeopardy he will place his firm in by using another architect's copyrighted documents. All documents given to you by this Office must be returned upon execution of the Termination Agreement.

For whatever it's worth, Warren has asked me to, once again, convey to you his desire to continue working together toward the successful completion of this Project. He has indicated to me that he is ready and willing to resolve any issue and to do everything and anything possible to work together in harmony. If there is any possibility of this, then Warren will remain involved and available. My intervening in this matter will become necessary, only if termination is the only course open to us.

Sincerely,

Charles Cimino, AIA
Director of Operations

CC: aeb

cc:  Warren Freedenfeld, AIA
     Richard Ahern, Business Manager
     File



**Michael P. McTigue, D.V.M.**
**Brian C. Hurley, D.V.M.**
**Kathleen J. O'Brien, D.V.M.**

GARDNER ANIMAL HOSPITAL
7 Pearson Blvd.
Gardner, MA 01440
Telephone: (978) 632-7110

Warren Freedenfeld & Associates, Inc.
39 Church Street
Boston, MA 02116

Dear Mr. Freedenfeld:

This letter is sent to you pursuant to the terms of Article 8.1 of the AIA Document B151 executed by and between us dated March 24, 1998, regarding the proposed construction of the Gardner Animal Hospital on my behalf. Furthermore, this letter is sent to you as written confirmation of the termination of the contract entered into by and between us verbally during our phone discussion on June 25, 1999, which termination was further confirmed by you in your letter of July 22, 1999 to me.

The reason for the termination action taken on June 25, 1999, and for this letter in confirmation of same, is that you failed substantially to perform in accordance with the terms of the Agreement above referenced through no fault of mine.

Some, and this list is not all inclusive, of the reasons for this termination are as follows:

1.      Although I was charged nearly $50,000 for work you purport to have done, substantial portions of that work had not, indeed, ever been completed by you. For example, foundation drawings were never developed by you, nor were the proper elevations used. Additionally, there were residual questions as to whether work you had said had been done, and billed me for, had ever actually been done.

2.      Whatever plans, drawings etc. You did prepare have proven to be useless to us, and they have been rolled up and discarded. This, in spite of my having paid you tens of thousands of dollars; unfortunately, I again have to pay another architect another tens of thousands of dollars to complete the project.

3.      Most importantly, you continued to refuse to recognize that a redesign of the plans, etc. was required to reduce the cost of the project to a manageable financial level. You knew full well that my bank had limited me to construction costs of $1,000,000.00, while everyone to whom I spoke in the construction industry and elsewhere indicated that the project as you had designed it could not be completed for less than approximately $1.3 million, some 30% over my project budget.

I regret having had to take this action and I wish you success in your future endeavors.

Sincerely,

Michael P. McTigue, DVM

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America



**Form VA**
For a Work of the Visual Arts

REG **VAu 656 – 367**

EFFECTIVE DATE OF REGISTRATION

8  ·11· 1999
Month   Day   Year

---

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

**1**

**Title of This Work ▼**   NOT YET CONSTRUCTED

Gardner Animal Care Center (WFA Project #9818)

**NATURE OF THIS WORK ▼** See instructions

Architectural Design

**Previous or Alternative Titles ▼**

Gardner Animal Care Center (WFA Project #9323)

**Publication as a Contribution** If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared. Title of Collective Work ▼

N/A

If published in a periodical or serial give   Volume ▼    Number ▼    Issue Date ▼    On Pages ▼
N/A

---

**2**

**NOTE**

Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

**a** **NAME OF AUTHOR ▼**  Warren Freedenfeld & Associates, Inc

**DATES OF BIRTH AND DEATH**
Year Born ▼   Year Died ▼
N/A    N/A

Was this contribution to the work a "work made for hire"?
☑ Yes
☐ No

**Author's Nationality or Domicile**
Name of Country
OR { Citizen of  USA
Domiciled in  USA

**Was This Author's Contribution to the Work**
Anonymous?   ☐ Yes  ☑ No
Pseudonymous?  ☐ Yes  ☑ No
If the answer to either of these questions is "Yes" see detailed instructions.

**Nature of Authorship** Check appropriate box(es) See instructions
☐ 3-Dimensional sculpture    ☐ Map    ☐ Technical drawing
☐ 2-Dimensional artwork    ☐ Photograph    ☐ Text
☐ Reproduction of work of art    ☐ Jewelry design    ☑ Architectural work

**b** **Name of Author ▼**

**Dates of Birth and Death**
Year Born ▼   Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**Author's Nationality or Domicile**
Name of Country
OR { Citizen of
Domiciled in

**Was This Author's Contribution to the Work**
Anonymous?   ☐ Yes  ☐ No
Pseudonymous?  ☐ Yes  ☐ No
If the answer to either of these questions is "Yes" see detailed instructions.

**Nature of Authorship** Check appropriate box(es) See instructions
☐ 3-Dimensional sculpture    ☐ Map    ☐ Technical drawing
☐ 2-Dimensional artwork    ☐ Photograph    ☐ Text
☐ Reproduction of work of art    ☐ Jewelry design    ☑ Architectural work

---

**3**

**a** **Year in Which Creation of This Work Was Completed**
1999
This information must be given
Year in all cases

**b** **Date and Nation of First Publication of This Particular Work**
Complete this information Month _____ Day _____ Year _____
ONLY if this work has been published.    Nation

---

**4**

See instructions before completing this space

**COPYRIGHT CLAIMANT(S)** Name and address must be given even if the claimant is the same as the author given in space 2 ▼

Warren Freedenfeld & Associates Inc
39 Church Street
Boston MA 02116

**Transfer** If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

APPLICATION RECEIVED
FEB 0 4 2005   8/11/99
ONE DEPOSIT RECEIVED
FEB 0 4 2005   8/11/99
TWO DEPOSITS RECEIVED

FUNDS RECEIVED
8/11/99

DO NOT WRITE HERE
OFFICE USE ONLY

---

**MORE ON BACK ▶**  • Complete all applicable spaces (numbers 5-9) on the reverse side of this page
• See detailed instructions.    • Sign the form at line 8

DO NOT WRITE HERE
Page 1 of 2 pages

EXAMINED BY _____  FORM VA

CHECKED BY

☒ CORRESPONDENCE
Yes

FOR
COPYRIGHT
OFFICE
USE
ONLY

**DO NOT WRITE ABOVE THIS LINE  IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET**

**PREVIOUS REGISTRATION** Has registration for this work  or for an earlier version of this work  already been made in the Copyright Office?

☐ Yes  ☒ No  If your answer is  Yes  why is another registration being sought? (Check appropriate box )  ▼

a  ☐ This is the first published edition of a work previously registered in unpublished form

b  ☐ This is the first application submitted by this author as copyright claimant

c  ☐ This is a changed version of the work  as shown by space 6 on this application

If your answer is "Yes,  give  Previous Registration Number ▼          Year of Registration ▼

**5**

**DERIVATIVE WORK OR COMPILATION** Complete both space 6a and 6b for a derivative work  complete only 6b for a compilation

a Preexisting Material  Identify any preexisting work or works that this work is based on or incorporates ▼

N/A

**a**  **6**

See instructions
before completing
this space

b Material Added to This Work  Give a brief  general statement of the material that has been added to this work and in which copyright is claimed ▼

·N/A

**b**

**DEPOSIT ACCOUNT**  If the registration fee is to be charged to a Deposit Account established in the Copyright Office  give name and number of Account

Name ▼

N/A

Account Number ▼

N/A

**a**  **7**

**CORRESPONDENCE**  Give name and address to which correspondence about this application should be sent  Name/Address/Apt/City/State/ZIP ▼

Warren Freedenfeld, AIA, President
Warren Freedenfeld & Associates, Inc
39 Church Street
Boston, MA 02116

**b**

Area code and daytime telephone number      ( 617 ) 338-0050              Fax number      ( 617 ) 426-2557

Email    warren@freedenfeld com

**CERTIFICATION\***  I, the undersigned, hereby certify that I am the

check only one ▶

☐ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☒ authorized agent of ___Warren Freedenfeld & Associates, Inc___
Name of author or other copyright claimant  or owner of exclusive right(s) ▲

**8**

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge

Typed or printed name and date ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date

Warren Freedenfeld, AIA, President                                    Date    21 Jan 2005

Handwritten signature (X) ▼

X _____

**Certificate
will be
mailed in
window
envelope
to this
address**

Name ▼
Warren Freedenfeld, AIA

Number/Street Apt ▼
39 Church Street

City/State/ZIP ▼
Boston, MA 02116

**YOU MUST:**
• Complete all necessary spaces
• Sign your application in space 8

**SEND ALL 3 ELEMENTS
IN THE SAME PACKAGE:**
1 Application form
2 Nonrefundable filing fee in check or money
order payable to Register of Copyrights
3 Deposit material

**MAIL TO:**
Library of Congress
Copyright Office
101 Independence Avenue  S E
Washington  D C 20559 6000

**9**

17 U S C  § 506(e)  Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409  or in any written statement filed in connection
with the application  shall be fined not more than $2 500

Rev August 2003—30 000  Web Rev June 2002  ⊕ Printed on recycled paper                    U S Government Printing Office 2003-496-605/60 029

## TERMINATION AND MUTUAL RELEASE AGREEMENT
## BETWEEN GARDNER ANIMAL HOSPITAL AND
## WARREN FREEDENFELD & ASSOCIATES INC.

WHEREAS Michael P. McTigue, DVM, and Gardner Animal Hospital, collectively ("GAH") and Warren Freedenfeld & Associates Inc. ("WFA") had previously entered into an Owner and Architect Agreement dated 24 March 1998 ("Agreement"), for the provision of architectural services in connection with the Gardner Animal Hospital, located at 73 Eaton Street, Gardner, Massachusetts ("the Project"), and

WHEREAS the Schematic Design and partial Construction Drawings for such Project has been substantially completed, and

WHEREAS the parties desire to terminate their Agreement without the provision of any further services by WFA,

NOW THEREFORE, in consideration of the mutual agreements contained herein, the parties agree as follows:

1. The Agreement is terminated and the parties shall have no further obligations except as set forth in this Termination and Mutual Release Agreement.

2. Upon execution of this Agreement, GAH shall pay WFA Seven Thousand Five Hundred Dollars ($7,500.00) as final and total payment for all services provided and expenses incurred to date. This amount shall be in addition to all previous amounts paid by GAH and/or received by WFA.

3. GAH agrees not to use any of the work *SOLELY* *IF* produced by WFA. Article 6 of the Owner and Architect Agreement shall remain in full force and affect.

4. GAH and WFA agree to release each other of and from all loss, expense, claim, or action of any kind arising at any time from this date forward, whether arising out of the Agreement or otherwise, intending thereby to give each other a general release of all claims each may have against each other to date, and in the future, except as to the obligations under this Termination and Mutual Release Agreement, which are not being released.

Executed as a contract under seal this **2 ND** day of **SEP**, 1999.

Owner:

Gardner Animal Hospital
7 Pearson Boulevard
Gardner, MA 01440

By _____
Michael P. McTigue, DVM

Witness:
By _____
Name: Brian C. Hurley DVM

Architect:

Warren Freedenfeld & Associates Inc.
39 Church Street
Boston, MA 02116

By _____
Warren Freedenfeld AIA, President

Witness:
By _____
Name: Sasha A. Chanaka

# CITY OF GARDNER

MASSACHUSETTS 01440

OFFICE OF THE

## BUILDING INSPECTOR

(978) 630-4007
(978) 630-4020
FAX (978) 632-4682



No. ...240...

# BUILDING PERMIT

Date.... Oct. 26 ... 19 ... 99...

Certificate of Occupancy ........ Feb. 16, 00

THIS MAY CERTIFY THAT .Michael R. McTigue.

has permission to .Verté Mostє Per. Plan...

situated on .7.3. Eaton. St.

provided that the person accepting this permit shall in every respect conform to the terms of
the application on file in this office, and to the provisions of the Massachusetts Building
Code and shall begin work on said building within six months from the date hereof, and
prosecute the work thereon to a speedy completion. Any violation of any of the terms above
noted is an immediate revocation of this permit

Contractor. .Barrell. .Building. .(unknown)

License # .C.S. .053.0.09

## FINAL APPROVAL

..................................... Water & Sewer

.Sb. -Temporary. Plumb. .6/20 .A.Mark. ............... Fire Dpt.

.6-7-00 .O.D. .V. ....... Inspector of Plumbing

.6/9/00 ..... .................................. Inspector of Wires

......................................... Building Inspector

### THIS PERMIT MUST BE SIGNED AND RETURNED

## INSPECTIONS

Plumbing - Rough .3/4/00 .T. .Will.
Wiring - Rough .O.D. .V.T.
Board of Health .O.L.D. .3-28. av
Fire Department .6-12-00

Inspector of Buildings

Foundation & as Built .1. ................
Framing & Insulation .3/3/00 .2. ................
Final Inspection .3. ................

Note: And inspection on such other occasions as the building
Inspector may designate

Building Inspector requires 24 hour notice before inspection.

## POST THIS CARD SO IT
## IS VISIBLE FROM THE STREET

.................................... Inspector of Buildings

**NUMBER**

00-240

**THE COMMONWEALTH OF MASSACHUSETTS**

**CITY OF GARDNER**

Building Inspector



**FEE**

$ 25.00

## OCCUPANCY PERMIT

"No building, nor structure shall be erected, and no land, building or structure shall be used for a new, different, changed, or enlarged use without a Building Permit therefor first having been obtained from the Building Inspector. No building shall be occupied until a certificate of occupancy has been issued by the Building Inspector."

| Issued to | Michael P. McTigue | Address | 73 Eaton St. |
|---|---|---|---|
| Wiring Inspector | Robert Therrian | Inspection Date | 6/7/00 |
| Plumbing Inspector | Tom Wiinikainen | Inspection Date | 6/9/00 |
| Fire Department | Lt. Iwanik | Inspection Date | 6/7/00 |
| Water Department | B.O.H. | Inspection Date | |
| Highway Department | | Inspection Date | |
| Building Inspector | Richard Reynolds | Inspection Date | 6/12/00 |

**THIS PERMIT WILL NOT BE VALID, AND THE BUILDING SHALL NOT BE OCCUPIED UNTIL SIGNED BY THE BUILDING INSPECTOR UPON SATISFACTORY COMPLIANCE WITH TOWN REQUIREMENTS.**

June 12,        2000

Building Inspector