FILED
IN THE UNITED STATES DISTRICT COURT CLERKS OFFICE
FOR THE EASTERN DISTRICT OF MASSACHUSETTS

2005 OCT 17 P 1: 2b

| | |
|---|---|
| WARREN FREEDENFELD ASSOCIATES) | |
| INC., as successor to WARREN ) | U.S. DISTRICT COURT |
| FREEDENFELD & ASSOCIATES, INC. ) | DISTRICT OF MASS. |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | CIVIL ACTION NO:05-11573-RGS |
| ) | |
| MICHAEL P. MCTIGUE, D.V.M., ) | |
| Individually and as Trustee of the ) | |
| MCTIGUE FAMILY TRUST, NANCY ) | |
| A. MCTIGUE, as Trustee of the MCTIGUE ) | |
| FAMILY TRUST, BRIAN C. HURLEY, ) | |
| D.V.M., GARDNER ANIMAL CARE ) | |
| CENTER, LLC d/b/a GARDNER ANIMAL ) | |
| HOSPITAL, EDWARD D. CORMIER ) | |
| ASSOCIATES, INC. and BENNETT ) | |
| BUILDING CORPORATION ) | |
| ) | |
| Defendants ) | |

MOTION OF DEFENDANTS MICHAEL P. MCTIGUE, NANCY A. MCTIGUE, BRIAN C.
HURLEY AND GARDNER ANIMAL CARE CENTER LLC d/b/a GARDNER ANIMAL
HOSPITAL TO DISMISS THE LAWSUIT BROUGHT BY THE PLAINTIFF, PURSUANT
TO F.R.C.P. 12(b)(6)

Now come the Defendants Michael P. McTigue, Nancy A. McTigue, Brian C. Hurley and

Gardner Animal Care Center, LLC d/b/a Gardner Animal Hospital ("the Moving Defendants")

and move to dismiss the Plaintiff's lawsuit in its entirety pursuant to F.R.C.P. 12(b) based upon

the failure of the Plaintiff to bring this lawsuit within the appropriate time delegated for the

commencement of suit under 17 U.S.C.A § 507.

The three year term for bringing suit commenced no later September 2, 1999 and ended, at

the latest, September 2, 2002.

The Moving Defendants also join in any and all other motions to dismiss this suit under Rule

12 as if they had specifically filed those motions. The Moving Defendants note that even if the

Plaintiff had filed this Complaint by September 2, 2002, the case would still be subject to

dismissal, as the Plaintiff specifically signed an agreement licensing the Moving Defendants to

use certain architectural concepts, such that the Plaintiff cannot be heard to complain of

copyright violations for work legitimately used.

However, since the copyright matter is clearly time-barred, the court need not reach that

issue. However, to the extent that the issue is raised by other defendants, the Moving Defendants

adopt the position that that the matter is barred under Rule 12(b)(6) for failure to plead a proper

claim for copyright violation.

As further grounds for this motion, the Moving Defendants state as follows:


I.      NATURE AND STATUS OF PROCEEDINGS

The Plaintiff filed this suit on or about July 27, 2005 alleging that the Defendants in this

lawsuit infringed on protected copyright rights.

Specifically, the Plaintiff, an architect who was retained to design a veterinary hospital in

1998 and who was terminated in 1999, claims that his design elements were unlawfully

incorporated into the veterinary hospital ultimately designed by Defendant Edward Cormier.

The Moving Defendants and the Plaintiff had signed a settlement agreement on September 2,

1999 under which the Moving Defendants, in exchange for valid consideration, acquired the

rights to move forward with the construction of a new veterinary hospital with a new architect,

so long as the new hospital did not contain design elements that were not "solely produced" by

the Plaintiff.

The Plaintiff had both actual and constructive knowledge of the Moving Defendant's plans

and intentions as to the project as of September 2, 1999. Based upon the knowledge in 1999 that

2

the Moving Defendants intended to go forward with their project under the terms of the 1999 agreement, the Plaintiff had a duty to investigate whether any rights it retained were violated so as to protect its rights in a timely manner. The Plaintiff simply failed to protect its own rights, and has now lost the ability to make this claim.

The Moving Defendants therefore seek dismissal of the suit.


II.    UNDISPUTED FACTS

The following facts are undisputed, and are found within the parameters of the Complaint and its attachments filed with this Court:

1.  Michael P. McTigue, DVM is the owner of the property on which Gardner Animal Care Center, LLC is located.

2.  After a two-year search for a suitable site for his veterinary hospital, Dr. McTigue purchased the subject property known as 73 Eaton Road, Gardner, MA, on April 28, 1999, with the intention of building a new 7,700 square foot state-of-the-art, first-class veterinary hospital, while still preserving the historical nature of a 233 year old farmhouse located on the property.

3.  The property on Eaton Rd. was in a protected watershed area and was residentially zoned. The town of Gardner's requirements for issuing any building permit for this property were very restrictive and stringent. In order to obtain the necessary approvals from the relevant local planning, health and conservation boards and the Zoning Board of Appeals, Dr. McTigue assembled a team by interviewing and hiring specialists in each of the appropriate areas, including:

  a.  a veterinary architect (the Plaintiff)

  b.  a project manager with expertise in permit procurement

   c.  a general contractor

   d.  an engineer to work on the design

4.  The Plaintiff and Gardner Animal Hospital signed an Abbreviated Form of Agreement between Owner and Architect on March 24, 1998 (the "Owner/Architect Agreement") for services related to the design for construction of the project.

5.  The Plaintiff, by contract with Gardner Animal Hospital, had full knowledge of the scope and constraints of the project and the fact that the budget had limited the project's construction costs to One Million ($1,000,000.00) Dollars.  Plaintiff was told that he was expected to produce plans and drawings that would allow the construction to be realized within the limits of the approved budget.

6.  Despite Plaintiff's knowledge of the project's budget constraints, the drawings and specifications for the project, as submitted by the Plaintiff, exceed the established budget by thirty percent (30%).

7.  Countless hours were spent by Dr. McTigue trying to get the Plaintiff to acknowledge that the plans that he submitted were outside the financial constraints established for the project and that substantial changes needed to be made, but Plaintiff refused to make the necessary changes.

8.  Plaintiff billed nearly $50,000 for services rendered, which figure included work that had not been completed, such as foundation drawings, and work that was not done properly, or work that represented a collaboration between Dr. McTigue and the Plaintiff.

9.  Plaintiff was terminated on June 25, 1999 for failure to perform in accordance with the requirements of the Owner/Architect Agreement entered into between the parties on March 24, 1998.

4

10. A Termination and Mutual Release Agreement (the "Termination Agreement") was executed by the parties on September 2, 1999 in which, among other things, the parties agreed to a final and total payment amount for all services rendered.

11. To allow for the completion of the project within budget and in accordance with his original requirements and vision, it became necessary for Dr. McTigue to procure and pay for the services of a new architect, thereby incurring additional costs, delays and substantial losses.

12. Edward D. Cormier, Associates, Inc. was hired to produce new plans and to complete the project.

13. Following termination of the agreement between McTigue and the Plaintiff, the parties signed the settlement agreement on September 2, 1999. In exchange for a payment, which McTigue felt was excessive under the circumstances, the Plaintiff waived any rights to any copyright rights he held as to expressions which did not serve solely as the Plaintiff's work product. The clear and plain English meaning of the September 2, 1999 was that any work that was not "solely" the Plaintiff's written expressions **could be and would be** incorporated into the work.

14. A building permit for the project was issued in 1999 and the building received its occupancy permit in 2000.

15. Dr. McTigue has never refused access to the property to the Plaintiff, who could have easily viewed the finished project. The Plaintiff, at no time, requested copies of the plans for the building, or requested an inspection or otherwise made any effort in any form to develop an understanding of what had been built.

16. The Plaintiff does not allege that the Moving Defendants took any steps to prevent such an inspection of the building, or that the Moving Defendants made any statements or drafted any documents which intentionally misled the Plaintiff as to the nature of the finished building, or otherwise provided any assurances to the Plaintiff of anything other than what had transpired, or that the Moving Defendants made any attempts to conceal what they had built. Indeed, paragraph 30 of the Plaintiff's Complaint is a transparent and ultimately futile attempt to absolve itself of its failure to protect its own rights, simply glossing over its own obligations to protect its rights under the copyright statute.

17. In 2004, the Gardner Animal Hospital proudly displayed its building to the world in a published magazine, demonstrating that rather than concealing the nature of the building, the Gardner Animal Hospital was eager to display its facility to the world.

18. The only evidence of duplicity in this case is found in the Plaintiff's own Complaint. In paragraph 24, the Plaintiff writes that "...the parties specifically agreed that the Hospital would not use the Architectural Work." The Moving Defendants note that the document speaks for itself, and they invite the Court to review the language of the document, which clearly demonstrates that in 1999 the parties specifically agreed that the Hospital **could** use the architectural work, the exact opposite of what the Plaintiff has alleged.

III.    ARGUMENT

A. UNDER THE RULES OF CIVIL PROCEDURE, THIS MATTER MUST BE
   DISMISSED AS A MATTER OF LAW

F.R.C.P. 12(b) (6) permits a party to bring a motion to dismiss based upon a "failure to state a claim upon which relief can be granted.

6

As is argued below, the Moving Defendant's motion to dismiss is based upon the fact that the

Plaintiff has simply failed to comply with the applicable statute of limitations, such that the

Moving Party's motion must be ALLOWED

B. THE PLAINTIFF'S CLAIM IS TIME BARRED, AS THE CAUSE OF ACTION
ACCRUED NO LATER THAN SEPTEMBER 2, 1999, AND AS THE LAWSUIT WAS
FILED ALMOST THREE YEARS AFTER THE STATUTE OF LIMITATIONS HAD
EXPIRED, SUCH THAT THE PLAINTIFF'S SUIT MUST BE DISMISSED IN ITS
ENTIRETY

The statute of limitations for actions sounding in copyright infringement is three years. Under

the statute, "no civil action shall be maintained under the provisions of this title unless it is

commenced within three years after the claim accrued." 17 U.S.C.A. §507. The Court has written

that "[a] claim for copyright infringement is generally considered to have accrued when 'one has

knowledge of a violation or is chargeable with such knowledge'. " Danielson v. Winchester

Conant Properties, Inc. 106 F.Supp. 2d. 1, 24 (D.Mass. 2002) (later affirmed and part and

reversed in part, Danielson v. Winchester Conant Properties, Inc., 322 F.3d 26 (1st Cir. 2003)),

citing Hotaling v. Church of Jesus Christ of Latter Day Saints, 118 F.3d 199,201 (4th Cir. 1997).

As has been noted, "…the plaintiff has a duty of diligence; it is not enough that he did not

discover *he* had a cause of action, if a reasonable man in his shoes would have." Taylor v.

Meirick , 712 F.2d. 1112,118 (7th Cir. 1983)

Here, the facts are absolutely clear when the Plaintiff became chargeable with notice that the

Moving Defendants were using elements of design in an ongoing project—July of 1999 and

September of 1999, when the Moving Defendants not only expressly told the Plaintiff what it

was going to do, but also when both the Plaintiff and Moving Defendants reduced that

understanding to writing.

7

The Plaintiff, in its own writings and by its own signature, confirmed that the Moving
Defendants would be moving forward with another architect, and that the Moving Defendants
fully intended to incorporate their own ideas or collaborative ideas into the work. Indeed, in
September of 1999, the Plaintiff agreed that written expressions of ideas that were not "solely"
the Plaintiff's work product could be incorporated into the final structure. At that moment, the
Plaintiff developed actual knowledge that some portion of the architectural design would be
incorporated into the final structure.

The Plaintiff apparently entered into a period of willful ignorance after 1999. There is no
contention that the Plaintiff ever made any effort to ascertain what had been incorporated, or
whether any portion of the designs had been incorporated. There is also no contention that these
Moving Defendants ever denied the Plaintiff access to the building. The hospital, as built, was
certainly open to the public. If the Plaintiff ever had any doubt about the incorporation of the
work, the Plaintiff's principal was free to walk in to the building and take a look. Certainly, the
existence of the building was not concealed. Indeed, the plans for the building have always been
a matter of public record since 1999.

The Plaintiff does not allege that it ever requested as-built drawings, or that it had any
communications following 1999 in which information about the final plans had been requested.
There is no allegation that the Moving Defendants misled the Plaintiff about its plans, or
misstated in any communication what it had done. Indeed, there is no allegation that there was
any communication between the parties after 1999.

The Plaintiff's assertion that it did not become aware of the Moving Defendant's conduct
until 2004 is so specious that it warrants no credibility from this Court. Under the law, a party
may not avoid a statute of limitations by willful blindness. A party may not hide behind claims of

8

ignorance as this Plaintiff has done. The Plaintiff signed a writing in September of 1999 that put him on notice that some portion of the work would be incorporated. The statute of limitations in this case began running, at the latest, in September of 1999. Certainly, it had fully run by July of 2005, five years after the building was finished and was in use. The Plaintiff had a duty to investigate prior to the expiration of the statute of limitations of period in order to protect its own rights, and it failed to do so.

Even by the facts pled in the Complaint, this is not a case of repetitive infringement of a copyright; this is a case where the parties had a short term contract to work together for construction of a building and in which the parties terminated their agreement by a written document. There is no allegation that the Moving Defendants assisted in the preparation of any plans after 1999, or that it built other hospitals using the plans after 1999 or that it sold its plans or otherwise engaged in interstate commerce in these plans after 1999. There has been no conduct by the Moving Defendants with respect to these plans since 1999. The suggestion that the Moving Defendants have somehow profited from these plans at any time, let alone in the past three years, is specious at best.

Most importantly, this is not a case where it can be alleged that the Moving Defendants took affirmative action to prevent the Plaintiff from gaining knowledge. The Moving Defendants did not change the location of the building, or the identity of the permit applicant or the town in which the building was constructed. The project proceeded uninterrupted with the sole and obvious change of architect, and the Plaintiff, absent willful blindness, always had the ability to determine the conduct of the Moving Defendants. The Plaintiff asks this court to reward this willful blindness; in fact, based upon the pleadings, this Court cannot even accept the notion that

9

the Plaintiff was blind. This is a case where the Plaintiff, with eyes wide open, simply waited too long to protect its rights.

It should be obvious to this Court from the pleadings in this case that even the Plaintiff understands that the Complaint is time-barred. The entire section of the Complaint entitled "Freedenfeld's Discovery of the Infringing Activity" is a transparent attempt to explain away the failure of the Plaintiff to protect its own rights.

The Court need look no further than paragraph 31 of the Complaint, which states that "a full size version of the First Floor Plan that was created by the defendants and obtained from the Planning Board and City of Gardner reveal that the defendants copied the unique interrelationship between the rooms and configuration of the spaces." Thus, even if there was an infringement, which the Moving Defendants expressly deny, the Plaintiff has admitted in its Complaint that the ability to determine the alleged infringement was always publicly available to the Plaintiff. In short, the Plaintiff knew that the Moving Defendants were going forward with the project.

The Plaintiff clearly had the ability to obtain the First Floor Plan from the Planning Board and City of Gardner between 1999 and 2002 and simply failed to do so. Paragraph 31 confirms that the Plaintiff's own ignorance was willful, that it failed to protect its own interests, that the Moving Defendant could not conceal its conduct from the Plaintiff and that the Plaintiff was negligent in protecting any rights it may have had.

The Plaintiff's suggestion that it can wait indefinitely to file a lawsuit without running afoul of the statute of limitations is specious as both a matter of law and of fact. The Plaintiff's own argument would gut the entire statute of limitations by suggesting that in this context ignorance could prolong suit for tens, possibly, scores of years. Congress clearly intended a limited period

10

for the bringing of infringement suits. The Plaintiff does not allege the type of conduct by the Moving Defendants that would warrant the indefinite tolling of a statute of limitations. There is no evidence of fraudulent concealment, or continuing infringement or any conduct after 1999. There is no explanation tendered, and none would be permitted, to explain why the Plaintiff simply failed to exercise the requisite due diligence required to protect its rights under the infringement statute.

On the facts of this case, and based upon the Plaintiff's own admissions that the First Floor Plan was available to it since at least 1999, it is clear that a reasonable man would have exercised the due diligence after the Agreement was signed in 1999 so that any infringement claim could have been brought prior to 2002. This claim is simply too old, the excuse for inaction is simply lacking substantive merit. The statute of limitations bars the claim, and the motion to dismiss must be ALLOWED.

IV.    CONCLUSION

Because the matter is clearly time-barred the motion to dismiss must be ALLOWED.

Respectfully Submitted,
**The Moving Defendants**
By their attorneys,

Robert N. Meltzer, BBO #564745
P.O. Box 1459
Framingham, MA 01701
Phone: (508) 872-7116

Mary Q. Casey, BBO #636250
Harbor Law Group
385 South Street
Shrewsbury, MA 01545
Phone: (508) 842-9244

Dated: October 17, 2005

11

## CERTIFICATE OF SERVICE

I, Robert N. Meltzer, do hereby certify that on this day I have served the foregoing by providing a copy of the same by first class mail, postage prepaid, to:

Barry S. Scheer, Esq.
Parker Scheer, LLP
One Constitution Center
Boston, MA 02129

Stephen D. Rosenberg, Esq.
The McCormack Firm
One International Place
Seventh Floor
Boston, MA 02110

F. Joseph Gentili, Esq.
Capobianco & Gentili, PC
15 West Central Street
Natick, MA 01760

Robert D.City, Esq.
Michael J. Dissette, Esq.
City, Hayes & Dissette, PC
50 Congress Street
Boston, MA 02109

October 16, 2005

CERTIFICATE OF COMPLIANCE WITH L.R. 7.3

Gardner Animal Care Center, LLC  is a non-governmental corporate party which does not have a parent company or a 10% stock ownership by any publicly held company

Respectfully Submitted,
**Gardner Animal Care Center, LLC**
By its attorney,

Robert N. Meltzer, BBO #564745
P.O. Box 1459
Framingham, MA 01701
Phone: (508) 872-7116

Dated: October 17, 2005