UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
CLERK'S OFFICE

CIVIL ACTION NO. 05 11573 RGS

|  |  |  |
|---|---|---|
| WARREN FREEDENFELD ASSOCIATES, INC. as successor in interest to WARREN FREEDENFELD & ASSOCIATES, INC., Plaintiff, | ) ) ) ) ) | |
| v. | ) ) | |
| MICHAEL P. MCTIGUE, DVM individually and as Trustee of THE MCTIGUE FAMILY TRUST, NANCY A. MCTIGUE, as Trustee of the MCTIGUE FAMILY TRUST, BRIAN C. HURLEY, DVM, GARDNER ANIMAL CARE CENTER, LLC d/b/a GARDNER ANIMAL HOSPITAL, EDWARD D. CORMIER, ASSOCIATES INC., and BENNETT BUILDING CORPORATION, Defendants. | ) ) ) ) ) ) ) ) ) ) | |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO THE MOTION OF THE DEFENDANTS, MICHAEL P. MCTIGUE, NANCY A. MCTIGUE, BRIAN C. HURLEY, AND GARDNER ANIMAL CARE CENTER D/B/A GARDNER ANIMAL HOSPITAL, TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

### I.    INTRODUCTION

The plaintiff, Warren Freedenfeld Associates, Inc., as successor in interest to

Warren Freedenfeld & Associates, Inc. (collectively, "Freedenfeld"), submits this

memorandum in opposition to the motion of the defendants, Michael P. McTigue, Nancy

A. McTigue, Brian C. Hurley, and Gardner Animal Care Center d/b/a Gardner Animal

Hospital (collectively, the "Hospital Defendants"), to dismiss the complaint.[1]  The motion

---

[1] It should be noted that the Hospital Defendants failed to comply with Massachusetts Local Rule 7.1 which requires that "counsel certify that [he] has conferred [with opposing counsel] in good faith to resolve or narrow" issues of disagreement between the parties prior to filing their motion. Mass. Local Rule. 7.1(a)(2). No such certification is contained in the Hospital Defendant's motion to dismiss. Nor did counsel

must be denied because the Hospital Defendants' statute of limitations argument that

Freedenfeld had notice in 1999 that the defendants were using the architectural works and

reduced that understanding to writing to a contractual agreement is simply outrageous. At

the time when the owner of the project and Freedenfeld parted ways, the owner of the

project disavowed any interest in using the architectural works to complete the project

claiming that the works were "useless" and had been "rolled up" and "discarded."

Further that the clear and unambiguous language of the parties' termination agreement

evidences that Freedenfeld specifically reserved all rights under its copyright, including

the right to pursue a copyright infringement action. When Freedenfeld discovered that

the defendants caused plaintiff's copyrighted architectural works to be published in the

November 2004 edition of a national and international trade publication, the plaintiff

acted timely to enforce its rights in the copyrighted works by filing suit in July of 2005.

Further to the extent that the Hospital Defendants have adopted arguments

contained in the motion to dismiss filed by the defendant, Edward D. Cormier Associates,

Inc. ("Cormier"); wherein Cormier has argued that Freedenfeld contractually limited its

right to bring a copyright infringement claim against the defendants and failed to

adequately plead the interstate commerce element of its Lanham Act claims, dismissal of

the Complaint should be denied for the same reasons set forth in Freedenfeld's previously

filed memorandum in opposition to Cormier's motion. For the court's convenience, the

plaintiff has incorporated relevant portions of its memorandum in opposition to

Cormier's motion to dismiss in this memorandum. In further support of this opposition,

the plaintiff states as follows:

---

for the defendant contract the plaintiff's counsel regarding the issues addressed in their motion at any time
prior to filing it with the Court.

2

## II.    **FACTUAL BACKGROUND**

This is a clear case of architectural copyright infringement and violation of the Lanham Act. The facts of the case are more accurately plead in Freedenfeld's Complaint which for the purposes of this opposition, are adopted by reference. In short, Freedenfeld is a national architecture firm licensed to practice architecture in 37 states and the U.S. territory of Puerto Rico. Freedenfeld has designed hundreds of veterinary hospitals across the country and has won several awards for its work.

In 1999, the defendant, Michael McTigue, DVM ("Dr. McTigue"), retained Freedenfeld to design a new veterinary facility for the Gardner Animal Hospital ("the Hospital") in Gardner, Massachusetts (the "Project"). From the start of the Project, the parties understood that Freedenfeld retained exclusive ownership of all the designs and drawings that it prepared for the Project (collectively, the "Architectural Works"). Specifically, Dr. McTigue and the Hospital agreed that Freedenfeld was the author of the Architectural works and retained all common law, statutory, and other reserved rights, including the copyright. This agreement was memorialized in the Owner Architect Agreement executed by the parties dated March 24, 1999 (the "AIA Agreement"). Article 6 of AIA Agreement provides in its entirety:

> 6.1.    *The Drawings, Specifications and other documents prepared by the Architect for this Project are instruments of the Architect's service for use solely with respect to this Project, and the Architect shall be deemed the author of these documents and shall retain all common law, statutory and other reserved rights, including the copyright.* The Owner shall be permitted to retain copies and other documents for information and reference in connection with the Owner's use and occupancy of the Project. The Architect's Drawings, Specifications or other documents shall not be used by the Owner or others on other projects, for additions to this Project or for completion of this Project by others, unless the Architect is

3

adjudged to be in default under this Agreement, except by agreement in writing and with appropriate compensation to the Architect.

6.2.    Submission or distribution of documents to meet official regulatory requirements or for similar purposes in connection with the Project is not to be construed as publication in derogation of the Architect's reserved rights.

See Article 6 of Abbreviated Form of Agreement Between Owner and Architect (AIA Form B151), attached hereto as **Exhibit 1** at ¶ 6.1- 6.2.

The Architectural Works were the only architectural plans and drawings that were created for the Project and all were created by Freedenfeld.

After the Project gained the approval of the City of Gardner Zoning and Planning Board, Freedenfeld and McTigue engaged in a dispute over fees. Dr. McTigue also alleged that Freedenfeld failed to substantially perform the architectural services. As a result of the fee dispute, Dr. McTigue threatened to terminate Freedenfeld as the Project architect. During this period, Freedenfeld made clear to Dr. McTigue that if the Hospital decided to terminate Freedenfeld that the Hospital was prohibited from using the Architectural works to complete the Project. When Freedenfeld requested that Dr. McTigue and the Hospital return the Architectural works, Dr. McTigue responded to Freedenfeld by letter stating that all the works that the plaintiff prepared for the Project had been "rolled up and discarded." Dr. McTigue stated in the letter:

*Whatever plans, drawings etc. you did prepare have proven useless to us, and they have been rolled up and discarded.* This is in spite of my having paid tens of thousands of dollars; unfortunately, I again have to pay another architect another tens of thousands of dollars to complete the project.

See Dr. McTigue Letter attached to Complaint as **Ex. F.**

4

In August of 1999, to protect its rights in the Architectural Works, Freedenfeld properly filed an application and deposit fee with the U.S. Copyright Office. A copyright was later granted to Freedenfeld for the Architectural Works (Certificate VAU 656-367).

In September of 1999, Freedenfeld, Dr. McTigue, and the Hospital agreed to resolve the dispute over fees owed by the defendants for services performed in connection with the Project by entering into a Termination and Mutual Release Agreement (the "Termination Agreement"). As part of the Termination Agreement, Dr. McTigue and the Hospital agreed that they would not use the Architectural Works. The Termination Agreement did not modify in any way, Freedenfeld's exclusive ownership, proprietary rights, or right to enforce his copyright interests in the Architectural Works.

In late 2004, Freedenfeld was a subscriber to a veterinary trade publication, *Veterinary Economics* (the "Magazine"). The Magazine is an international business and management publication serving more than 50,000 subscribers in the United States and Canada. While perusing the November 2004 issue of the Magazine, Freedenfeld discovered an article appearing on pages 50 - 57 about the renovation and expansion of the Gardner Animal Hospital. According to the article, the design won a "Merit Award" in the 2004 Veterinary Hospital Design Competition, a national and international competition. The article is entitled "Giving an Old House a Cutting –Edge Extension." The article identifies the owners of the Hospital as Dr. McTigue and Brian Hurley DVM. Cormier is listed as the Architect. Pages 52-53 of the article contain drawings that are nearly identical to the Architectural Works prepared by Freedenfeld. After a further investigation by Freedenfeld's counsel in early 2005, it was determined that the Project was built by the defendant , Bennett Building Corporation ("Bennett") using the

5

Architectural Works and that the land where the Project was built is owned by the

McTigue Family Trust. Both Dr. McTigue and his wife, Nancy McTigue are trustees of

the McTigue Family Trust. On July 22, 2005, Freedenfeld instituted the instant action

against the defendants.

## III.    STANDARD OF REVIEW

It is well settled that a complaint may be dismissed under Fed. R. Civ. P. 12 (b)(6)

for failure to state a claim upon which relief may be granted "only if it is clear that no

relief could be granted under any set of facts that could be proved consistent with the

allegations." Gorski v. New Hampshire Dept. of Corrections, 290 F.3d. 466, 473 (1st Cir.

2002) quoting Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2232, 81 L.Ed.2d

59 (1984). In ruling on a motion to dismiss, a court "must accept as true the factual

allegations of the complaint, and all reasonable inferences must be drawn in favor of the

plaintiff." Moss v. Camp Pemigewassett, Inc., 312 F.3d 503, 506 (1st Cir. 2002).

The issue on a motion to dismiss for failure to state a claim is not whether the claimant

will ultimately prevail but whether the claimant is entitled to offer evidence to support the

claims asserted. Gilligan v. Jamco Development Corp., 108 F.3d 246, 249 (9th Cir. 1997).

The notice pleading standard set forth in Rule 8 establishes "a powerful

presumption against rejecting pleadings for failure to state a claim." Gilligan, 108 F.3d at

248 (citations omitted). Consequently, a court may not dismiss a complaint for failure to

state a claim unless "it appears beyond doubt that the plaintiff can prove no set of facts in

support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41,

45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957). In keeping with this liberal pleading standard,

the district court should grant the plaintiff leave to amend if the complaint can possibly

6

be cured by the inclusion of additional factual allegations. Doe v. United States. 58 F.3d

494, 497 (9th Cir. 1995).

## IV. ARGUMENT

### A. PRIOR TO NOVEMBER OF 2004, FREEDENFELD HAD NO REASON TO SUSPECT THAT THE DEFENDANTS HAD INFRINGED UPON THE PLAINTIFF'S COPYRIGHTED WORKS SO AS TO COMMENCE THE THREE YEAR STATUTE OF LIMITATIONS BECAUSE THE OWNER OF THE PROJECT HAD DISAVOWED ANY INTEREST IN USING THE WORKS CLAIMING THAT THEY HAD "PROVEN USELESS" TO THE HOSPITAL AND HAD BEEN "ROLLED UP AND DISCARDED."

The Hospital Defendants claim that Freedenfeld's copyright claims should be

dismissed on the basis of the three-year statute of limitations for copyright infringement

actions, 17 U.S.C. § 507. In support of this argument, the defendants take the position

that plaintiff became "chargeable with Notice that the [Hospital Defendants] where using

elements of [the Architectural Works] in an ongoing project—July of 1999 and

September of 1999." In support of this argument, the Hospital Defendants claim that: (1)

they "expressly" told Freedenfeld what "they were going to do"; and (2) that the parties

reduced that "understanding" to writing.

These arguments are simply outrageous given that Dr. McTigue and the Hospital

disavowed any interest in using the Architectural Works and that the clear and

unambiguous language of Termination Agreement and Article 6 of the AIA Agreement

evidences that Freedenfeld specifically reserved all rights under its copyright, including

the right to pursue a copyright infringement action.

As demonstrated by correspondence attached to the Complaint as **Ex. F**, Dr.

McTigue and the Hospital told Freedenfeld that the defendants had absolutely no interest

in using any part of the Architectural Works. According to Dr. McTigue, the

7

Architectural Works had "proven to be useless" for the Project and had been "rolled up and discarded." For the Hospital Defendants to now claim that Freedenfeld should have been on "notice" that the defendants were using elements of the Architectural Works in either August or September 1999 is simply outrageous.

Further the Hospital Defendants' interpretation of the Termination Agreement is simply wrong. The agreement says nothing about granting permission to the Hospital Defendants to use any elements of the Architectural Works to complete the Project. To the contrary, the language clearly and unambiguously states that "[the Hospital] agrees not to use any of the work solely produced by [Freedenfeld]" and that "Article 6 of the [AIA Agreement] shall remain in full force and effect" As previously stated, the Architectural Works were created and produced solely by Freedenfeld. Article 6 of the AIA Agreement makes clear that ownership of the Architectural works always vested solely in Freedenfeld, including the copyright. For the Hospital Defendants to suggest that any of the above language memorialized an "understanding" between the parties that granted them rights to use elements of the Architectural Works is beyond reason.

The Hospital Defendants have also taken the position that after 1999, Freedenfeld entered into a period of "willful ignorance" with respect to their unauthorized use of the Architectural Works. This is premised on an argument that Freedenfeld somehow had a duty to go to the Project "to ascertain what had been incorporated." According to the Hospital Defendants, they never denied Freedenfeld access to the building and that the plaintiff was "free to walk in" and take a look. The Hospital Defendants also state that the plans for the building were a matter of public record, presumably because they were on file with the City of Gardner Zoning and Planning Board. However, what the Hospital

8

Defendants continue to ignore is the fact that Dr. McTigue and the Hospital told Freedenfeld that they had no intention of using the Architectural Works to complete the Project and had thrown them in the trash. Under these circumstances, for the defendants to suggest that Freedenfeld should have been on notice or suspicious of the fact that the defendants were using the Architectural works is simply preposterous.

It is noteworthy that there is no history in our statutory or decisional law to suggest that an architect, seeking to enforce his copyright against a former client, had an affirmative duty to go to the project site or the local planning board to investigate whether the project was being built with his copyrighted plans. For obvious reasons, this is impracticable. An architect cannot simply walk into a privately owned hospital building and start measuring ever square inch of the property, including areas closed to the public like operating rooms, storage areas, and private offices to see if the owner copied elements of the his plans. Further, requiring the architect to conduct inspections of plans filed with the planning board would be prohibitively time consuming, expensive, and an inefficient use of the architect's time. Obviously, such a duty to inspect the site or the planning board's records could never exist where, as here, the infringer had made clear to the architect that his plans had "proven useless" and had been thrown in the trash. For the Hospital Defendants to suggest that such a duty would exist under these circumstances is ludicrous.

Moreover, Freedenfeld could not have known that several years after the Project was completed that the defendants would then cause the Architectural Works to be published in a national and international trade magazine that is read by the plaintiff's current and potential clients because the defendants never sought Freedenfeld's

9

permission to publish them. The reason for this was obvious, the defendants wanted to take credit for Freedenfeld's work, which they, in fact, did.

Paragraph 30 of Complaint, entitled **"Freedenfeld's Discovery of the Infringing Activity"** makes clear that Freedenfeld first discovered that the Architectural Works were being infringed upon when the plaintiff discovered an article in the November 2004 edition of *Veterinary Economics Magazine*. As stated in the Complaint, Page 52 of the article specifically lists Cormier as the "Architect" for the Project and states that the facility was completed in "2000." A further investigation, by Freedenfeld's counsel at the Gardner Zoning and Planning Board's offices in early 2005 determined that the Project was built by Bennett. This suit was commenced on July 22, 2005, well within the three year statute of limitations for copyright infringement actions. For the foregoing reasons, the Hospital Defendants' motion to dismiss on the basis of the statute of limitations should be DENIED.

## B.   FREEDENFELD NEVER CONTRACTUALLY LIMITED ITS RIGHT TO BRING A COPYRIGHT INFRINGEMENT ACTION AGAINST EITHER MCTIGUE OR THE HOSPITAL OR ANY OTHER PARTY.

The Hospital Defendants have adopted the argument, contained in Cormier's motion to Dismiss, that Freedenfeld's rights are governed solely by contract between Freedenfeld and the two other defendants, McTigue and the Hospital. As grounds for this argument, the defendants take the position that the Termination Agreement referenced in paragraph 24 of the Complaint suggests that this document alone controls the ownership and right to use the Architectural Works from the day it was executed forward, whether arising out of the agreement or otherwise. The defendants fundamentally misperceive the nature of this case and the purpose of the Termination Agreement.

10

As discussed in Freedenfeld's memorandum in opposition to Cormier's motion to dismiss, the plaintiff never contractually limited its right to bring a copyright infringement action against Dr. McTigue, the Hospital or any other party. Both the Termination Agreement and Article 6 of the AIA Agreement make clear that Freedenfeld was not creating documents for hire but retained full ownership over them and that the plaintiff preserved all its statutory and common law rights with respect to the copyright in the documents, including the right to bring an infringement action under 17 U.S.C. § 101 et seq. This was the specific reason why Freedenfeld applied for and obtained a valid copyright in the Architectural Works.

Again, the specific language in the Termination Agreement states: "[the Hospital] agrees not to use any of the work solely produced by [Freedenfeld]. Article 6 of the [AIA Agreement] shall remain in full force and affect." As previously stated, Article 6.1 of the AIA Agreement specifically states that the *"Architect shall be deemed the author of [the Architectural Works] and shall retain all common law, statutory and other reserved rights, including the copyright."* A plain reading of this sentence makes clear that the language referring to "statutory and other reserved rights, including the copyright" would include all rights and remedies available to the Architect under the Copyright Act, 17 U.S.C. § 101 et seq.

The correspondence attached to the Complaint clearly demonstrate that Dr. McTigue and the Hospital accepted Freedenfeld position with respect to the preservation of all the plaintiff's statutory and common law rights in the Architectural Works, including the right to pursue a copyright infringement claim. This is because Dr. McTigue and Hospital had made it clear to Freedenfeld that they **never claimed or**

11

**wanted** any ownership interest in the Architectural Works. Significantly, as previously discussed, Dr. McTigue and the Hospital had represented to Freedenfeld that they found the Architectural Works to be "useless" and had "rolled" them up and "discarded" them. See McTigue Letter attached to Complaint as **Ex. F.**

The best that the defendants could possibly argue is that the Termination Agreement gave Dr. McTigue and the Hospital a nonexclusive license to use the Architectural Works under very limited conditions. The obvious problem with this position is there is no language in the Termination Agreement granting such rights. Nor could the agreement be reasonably interpreted this way, since Dr. McTigue and the Hospital had previously disavowed any interest in using the Architectural Works to complete the Project and claimed to have thrown them in the trash.

Further, the Termination Agreement makes no reference to the grant of publishing rights to any of the defendants, let alone authorized them to take credit for Freedenfeld's work. This is exactly what the defendants did when they caused the Architectural Works to be published in the November 2004 edition of *Veterinary Economics Magazine* without Freedenfeld's knowledge or permission.

The bottom-line is that the Complaint demonstrates that Freedenfeld always maintained the right to bring a copyright infringement action against Dr. McTigue and the Hospital and any other party for the unauthorized copying or use of the plaintiff's Architectural Works. For any of the defendants to suggest otherwise, is nothing but a subterfuge to somehow justify the their egregious violation of federal copyright laws. Accordingly, for the reasons discussed above, the Hospital Defendants' Motion to Dismiss Freedenfeld's copyright claims should be DENIED.

12

**C.    FREEDENFELD HAS SUFFICIENTLY PLEAD THE IMPACT ON
       INTERSTATE COMMERCE ELEMENT OF ITS LANHAM ACT
       CLAIMS BECAUSE THE COMPLAINT AND ATTACHED EXHIBITS
       CLEARLY DEMONSTRATE THAT THE PLAINTIFF IS AN AWARD
       WINNING ARCHITECT WHO HAS WORKED ON "OVER 300
       VETERINARY HOSPITALS" FOR CLIENTS ACROSS THE COUNTRY.**

The Hospital Defendants have also adopted Cormier's argument that Freedenfeld has

failed to satisfy the interstate commerce element of its claim for violation of the Lanham

Act.[2] In support of this argument, the defendants take the position that Freedenfeld failed

to plead that it operated outside of Massachusetts. This argument is weak. As previously

discussed, Freedenfeld is and was at all relevant times a national architectural firm

licensed in the practice of architecture in 38 states and the U.S. territory of Puerto Rico.

Pursuant to Fed. R. Evid. 201(b), the plaintiff requests that the court take judicial notice

of Freedenfeld's many AIA registrations. See Fed.R.Evid. 201(b) ("A judicially noticed

fact must be one not subject to reasonable dispute in that it is either (1) generally known

within the territorial jurisdiction of the trial court or (2) capable of accurate and ready

determination by resort to sources whose accuracy cannot reasonably be questioned.") An

Architect's registration with state or territorial licensing authorities is clearly capable of

accurate and ready determination because they are a matter of public record.

Freedenfeld's architecture license numbers are provided in **Exhibit 2** attached hereto.[3]

---

[2] The Lanham Act,  15 U.S.C. § 1125(a), covers copyright infringement as well as host of other deceptive
practices that courts loosely term as "unfair competition." One such form of unfair competition is the false
designation of origin. The act imposes liability on "[a]ny person who, or in connection with any goods or
services…uses in commerce…any false designation of origin,  false or misleading  description of fact, or
false misleading representation of fact, which … is likely to cause confusion, or cause mistake, or to
deceive…as to the origin…of his or her goods, services, or commercial activities." 15 U.S.C. §
1125(a)(1)(A).

[3] If the Court does not take judicial notice of the facts referenced in this section of Freedenfeld's
opposition to the Hospital Defendant's motion to dismiss, the plaintiff requests leave to amend the
Complaint to include this information.

Further, Freedenfeld's notoriety as an accomplished designer of several hundred

veterinary hospitals throughout the country is not disputed by either Dr. McTigue or the

Hospital. This is a fact that is clearly referenced is paragraph 12 of the Complaint. The

paragraph contains a quotation from a letter authored by Dr. McTigue which he wrote to

the City of Gardner Zoning and Planning Board as part of a detailed zoning application

packet to secure the city's approval of the Project. Dr. McTigue states in the letter:

> To plan and design [the Project], I have assembled an experienced team of
> specialists. The architect is Warren Freedenfeld and Associates from
> Boston. *Warren has designed over 300 veterinary hospitals and has won*
> *many awards for his work.* We have worked together on our hospital
> renovation project in 1994 and have been very pleased with his designs.

See Letter to Gardner Zoning and Planning Board, attached to Complaint **Ex. B.**

Freedenfeld's designs for several of these out-of-state projects are on file with the United

States Copyright Office. Freedenfeld requests that the Court exercise its discretion to take

judicial notice of Freedenfeld's copyright registrations. See Island Software and

Computer Service, Inc. v. Microsoft Corp, 413 F.3d 257, 261 (2nd Cir. 2005)(District

Court was entitled to take judicial notice of copyright infringement plaintiff's federal

copyright registrations, as published in Copyright Office's registry) citing Duluth News-

Tribune v. Mesabi Publishing Co., 84 F.3d 1093, 1096 n. 2 (8th Cir. 1996). For purposes

of expediency the Court need only take judicial notice of the following copyright

registration numbers: Willow Pet Hotel, New York, Project # 9938: VAU 653-940;

Asheville Highway Animal Clinic, Tennessee, Project #0318: VAU 653-939; Three

Lakes Animal Care Center, Florida, Project # 9216, VAU 347-382. Copies of the

Certificate of Copyright Registration (U.S. Copyright Office Form VA) for these projects

are attached hereto as **Exhibit 3.**

14

The Complaint further alleges that Dr. McTigue and Cormier with the assistance of the other defendants distributed the Architectural Works that Freedenfeld created in connection with the Project to a veterinary trade publication, *Veterinary Economics* (the "Magazine") and allowed them to be published. As clearly plead in Paragraph 30 of the Complaint, "the Magazine is an international business and management publication serving more than 50,000 subscribers in the United States and Canada." To the extent that the defendants' false designation of the Architectural Works hinder Freedenfeld's ability to conduct his interstate architecture business which Dr. McTigue and the Hospital concede has included the design of over "300 veterinary hospitals", it affects interstate commerce. Accordingly, for the foregoing reasons, the Hospital Defendants' motion to dismiss Freedenfeld's Lanham Act claims should be DENIED.

## V.   CONCLUSION

For all the foregoing reasons, the Hospital Defendants' Motion to Dismiss the Complaint should be DENIED.

Respectfully submitted,

WARREN FREEDENFELD &
ASSOCIATES, INC.

By its attorneys,

Barry S. Scheer
BBO No. 445100
Garrett J. Lee
BBO No. 641876
PARKER | SCHEER, LLP
One Constitution Center
Boston, MA  02129
Tel.: 617-886-0500
Fax: 617-886-0100
Email: bss@parkerscheer.com
        gjl@parkerscheer.com

Dated: November 2, 2005

CERTIFICATE OF SERVICE

I, Garrett J. Lee, attorney for the plaintiff, Warren Freedenfeld Associates, Inc. as successor in interest to Warren Freedenfeld & Associates, Inc., hereby certify that on this 2nd day of November, 2005 a true copy of the following was served on all counsel record:

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO THE MOTION OF THE DEFENDANTS, MICHAEL P. MCTIGUE, NANCY A. MCTIGUE, BRIAN C. HURLEY, AND GARDNER ANIMAL CARE CENTER D/B/A GARDNER ANIMAL HOSPITAL, TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

By first-class mail postage pre-paid, addressed to:

Robert N. Meltzer, Esq.
P.O. Box 1459
Framingham, MA 01701

Stephen D. Rosenberg
The McCormack Firm, LLC
One International Place
7th Floor
Boston, MA 02110

F. Joseph Gentili, Esq.
Capobianco & Gentili, PC
15 West Central Street
Natick, MA 01760

Robert D. City, Esq.
Michael J. Dissette, Esq.
City, Hayes & Dissette, PC
50 Congress Street
Boston, MA 02109

Mary C. Casey, Esq.
Harbor Law Group
385 South Street
Shrewsbury, MA 01545

_____
Garrett J. Lee

## EXHIBIT 1

### FREEDENFELD AIA STATE AND TERRITORIAL REGISTRATIONS

| State | License # |
|---|---|
| Arizona | 33183 |
| California | C-24580 |
| Colorado | C-4749 |
| Connecticut | ARI.6497 |
| Florida | AR-0011410 |
| Georgia | RA008233 |
| Illinois | 001-010867 |
| Indiana | AR19600133 |
| Kansas | 4546 |
| Kentucky | 4355 |
| Louisiana | 5366 |
| Maine | AN10001281 |
| Maryland | 9888 |
| Massachusetts | AR3538 |
| Michigan | 13010-38998 |
| Mississippi | 3221 |
| Montana | 2722 |
| Missouri | 2000160073 |
| Montana | 2722 |
| Nevada | 3524 |
| New Hampshire | 01068 |
| New Jersey | AI-0742200 |
| New York | 014160-1 |
| North Carolina(c) | 50710 |
| North Carolina | 6863 |
| Ohio | A-00-12462 |
| Oklahoma | 4146 |
| Pennsylvania | RA008976B |
| Puerto Rico | 19850 |
| Rhode Island | 1567 |
| South Carolina | 4998 |
| Tennessee | 100876 |
| Texas | 14095 |
| Utah | 380348-0301 |
| Vermont | 003-000966 |
| Virginia | 0401009406 |
| Washington | 6218 |
| Wisconsin | 8415 |
| NCARB | 15026 |

T H E        A M E R I C A N        I N S T I T U T E        O F        A R C H I T E C T S





*AIA Document B151*

# Abbreviated Form of Agreement Between Owner and Architect

*for Construction Projects of Limited Scope*

## 1987 EDITION

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES; CONSULTATION WITH
AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION.*

## AGREEMENT

made as of the                24th            day of            March            in the year of
Nineteen Hundred and Ninety Eight

**BETWEEN** the Owner:        Mike McTigue, DVM
*(Name and address)*            GARDNER ANIMAL HOSPITAL
                7 Pearson Boulevard
                Gardner, MA  01440


and the Architect:        WARREN FREEDENFELD & ASSOCIATES INC.
*(Name and address)*        39 Church Street
                Boston, MA  02116


For the following Project:    GARDNER ANIMAL HOSPITAL
*(Include detailed description of Project, location, address and scope.)*

Project Location:        2 acres of existing 19 acre lot
                Typanny Road / Route 68
                (Across from Walmart)
                Gardner, Massachusetts

Scope of Work    :        New veterinary facility


The Owner and Architect agree as set forth below.

Copyright 1974, 1978, ©1987 by The American Institute of Architects, 1735 New York Avenue, N.W., Washington, D.C. 20006.
Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the
copyright laws of the United States and will be subject to legal prosecution.

**AIA DOCUMENT B151** • ABBREVIATED OWNER-ARCHITECT AGREEMENT • THIRD EDITION • AIA® • ©1987
THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C. 20006        **B151-1987    1**

WARNING: Unlicensed photocopying violates U.S. copyright laws and is subject to legal prosecution.

TERMS AND CONDITIONS OF AGREEMENT BETWEEN OWNER AND ARCHITECT

## ARTICLE 1
## ARCHITECT'S RESPONSIBILITIES

### 1.1  ARCHITECT'S SERVICES

**1.1.1** The Architect's services consist of those services performed by the Architect, Architect's employees and Architect's consultants as enumerated in Articles 2 and 3 of this Agreement and any other services included in Article 12.

**1.1.2** The Architect's services shall be performed as expeditiously as is consistent with professional skill and care and the orderly progress of the Work.

**1.1.3** The services covered by this Agreement are subject to the time limitations contained in Subparagraph 11.5.1.

## ARTICLE 2
## SCOPE OF ARCHITECT'S BASIC SERVICES

### 2.1  DEFINITION

**2.1.1.** The Architect's Basic Services consist of those described under the three phases identified below, any other services identified in Article 12, and include normal structural, mechanical and electrical engineering services.

### 2.2  DESIGN PHASE

**2.2.1** The Architect shall review with the Owner alternative approaches to design and construction of the Project.

**2.2.2** Based on the mutually agreed-upon program, schedule and construction budget requirements, the Architect shall prepare, for approval by the Owner, Design Documents consisting of drawings and other documents appropriate for the Project, and shall submit to the Owner a preliminary estimate of Construction Cost.

### 2.3  CONSTRUCTION DOCUMENTS PHASE

**2.3.1** Based on the approved Design Documents, the Architect shall prepare, for approval by the Owner, Construction Documents consisting of Drawings and Specifications setting forth in detail the requirements for the construction of the Project and shall advise the Owner of any adjustments to previous preliminary estimates of Construction Cost.

**2.3.2** The Architect shall assist the Owner in connection with the Owner's responsibility for filing documents required for the approval of governmental authorities having jurisdiction over the Project.

**2.3.3** Unless provided in Article 12, the Architect, following the Owner's approval of the Construction Documents and of the latest preliminary estimate of Construction Cost, shall assist the Owner in obtaining bids or negotiated proposals and assist in awarding and preparing contracts for construction.

### 2.4  CONSTRUCTION PHASE—ADMINISTRATION OF THE CONSTRUCTION CONTRACT

**2.4.1** The Architect's responsibility to provide Basic Services for the Construction Phase under this Agreement commences with the award of the Contract for Construction and terminates at the earlier of issuance to the Owner of the final Certificate for Payment or 60 days after the date of Substantial Completion of the Work.

**2.4.2** The Architect shall provide administration of the Contract for Construction as set forth below and in the edition of AIA Document A201, General Conditions of the Contract for Construction, current as of the date of this Agreement.

**2.4.3** Duties, responsibilities and limitations of authority of the Architect shall not be restricted, modified or extended without written agreement of the Owner and Architect with consent of the Contractor, which consent shall not be unreasonably withheld.

**2.4.4** The Architect shall be a representative of and shall advise and consult with the Owner (1) during construction until final payment to the Contractor is due and (2) as an Additional Service at the Owner's direction from time to time during the correction period described in the Contract for Construction.

**2.4.5** The Architect shall visit the site at intervals appropriate to the stage of construction or as otherwise agreed by the Owner and Architect in writing to become generally familiar with the progress and quality of the Work completed and to determine in general if the Work is being performed in a manner indicating that the Work when completed will be in accordance with the Contract Documents. However, the Architect shall not be required to make exhaustive or continuous on-site inspections to check the quality or quantity of the Work. On the basis of on-site observations as an architect, the Architect shall keep the Owner informed of the progress and quality of the Work, and shall endeavor to guard the Owner against defects and deficiencies in the Work. *(More extensive site representation may be agreed to as an Additional Service, as described in Paragraph 3.2.)*

**2.4.6** The Architect shall not have control over or charge of and shall not be responsible for construction means, methods, techniques, sequences or procedures, or for safety precautions and programs in connection with the Work, since these are solely the Contractor's responsibility under the Contract for Construction. The Architect shall not be responsible for the Contractor's schedules or failure to carry out the Work in accordance with the Contract Documents. The Architect shall not have control over or charge of acts or omissions of the Contractor, Subcontractors, or their agents or employees, or of any other persons performing portions of the Work.

**2.4.7** The Architect shall at all times have access to the Work wherever it is in preparation or progress.

**2.4.8** Based on the Architect's observations and evaluations of the Contractor's Applications for Payment, the Architect shall review and certify the amounts due the Contractor.

**2.4.9** The Architect's certification for payment shall constitute a representation to the Owner, based on the Architect's observations at the site as provided in Subparagraph 2.4.5 and on the

**WARNING: Unlicensed photocopying violates U.S. copyright laws and is subject to legal prosecution.**

data comprising the Contractor's Application for Payment, that the Work, to the best of the Architect's knowledge, information and belief, has progressed to the point indicated and that quality of the Work is in accordance with the Contract Documents. The issuance of a Certificate for Payment shall not be a representation that the Architect has (1) made exhaustive or continuous on-site inspections to check the quality or quantity of the Work, (2) reviewed construction means, methods, techniques, sequences or procedures, (3) reviewed copies of requisitions received from Subcontractors and material suppliers and other data requested by the Owner to substantiate the Contractor's right to payment or (4) ascertained how or for what purpose the Contractor has used money previously paid on account of the Contract Sum.

**2.4.10** The Architect shall have authority to reject Work which does not conform to the Contract Documents and will have authority to require additional inspection or testing of the Work whenever, in the Architect's reasonable opinion, it is necessary or advisable for the implementation of the intent of the Contract Documents.

**2.4.11** The Architect shall review and approve or take other appropriate action upon Contractor's submittals such as Shop Drawings, Product Data and Samples, but only for the limited purpose of checking for conformance with information given and the design concept expressed in the Contract Documents. The Architect's action shall be taken with such reasonable promptness as to cause no delay. The Architect's approval of a specific item shall not indicate approval of an assembly of which the item is a component. When professional certification of performance characteristics of materials, systems or equipment is required by the Contract Documents, the Architect shall be entitled to rely upon such certification to establish that the materials, systems or equipment will meet the performance criteria required by the Contract Documents.

**2.4.12** The Architect shall prepare Change Orders and Construction Change Directives, with supporting documentation and data if authorized or confirmed in writing by the Owner as provided in Paragraphs 3.1 and 3.3, for the Owner's approval and execution in accordance with the Contract Documents, and may authorize minor changes in the Work not involving an adjustment in the Contract Sum or an extension of the Contract Time which are not inconsistent with the intent of the Contract Documents.

**2.4.13** The Architect shall conduct inspections to determine the dates of Substantial Completion and final completion and shall issue a final Certificate for Payment.

**2.4.14** The Architect shall interpret and decide matters concerning performance of the Owner and Contractor under the requirements of the Contract Documents on written request of either the Owner or Contractor. The Architect's response to such requests shall be made with reasonable promptness and within any time limits agreed upon. When making such interpretations and initial decisions, the Architect shall endeavor to secure faithful performance by both Owner and Contractor, shall not show partiality to either, and shall not be liable for results of interpretations or decisions so rendered in good faith.

## ARTICLE 3
## ADDITIONAL SERVICES

**3.1** Additional Services shall be provided if authorized or confirmed in writing by the Owner or if included in Article 12, and

they shall be paid for by the Owner as provided in this Agreement. Such Additional Services shall include, in addition to those described in Paragraphs 3.2 and 3.3, budget analysis, financial feasibility studies, planning surveys, environmental studies, measured drawings of existing conditions, coordination of separate contractors or independent consultants, coordination of construction or project managers, detailed Construction Cost estimates, quantity surveys, interior design, planning of tenant or rental spaces, inventories of materials or equipment, preparation of record drawings, and any other services not otherwise included in this Agreement under Basic Services or not customarily furnished in accordance with generally accepted architectural practice.

**3.2** If more extensive representation at the site than is described in Subparagraph 2.4.5 is required, such additional project representation shall be provided and paid for as set forth in Articles 11 and 12.

**3.3** As an Additional Service in connection with Change Orders and Construction Change Directives, the Architect shall prepare Drawings, Specifications and other documentation and data, evaluate Contractor's proposals, and provide any other services made necessary by such Change Orders and Construction Change Directives.

## ARTICLE 4
## OWNER'S RESPONSIBILITIES

**4.1** The Owner shall provide full information, including a program which shall set forth the Owner's objectives, schedule, constraints, budget with reasonable contingencies, and criteria.

**4.2** The Owner shall furnish surveys describing physical characteristics, legal limitations and utility locations for the site of the Project, a written legal description of the site and the services of geotechnical engineers or other consultants when such services are requested by the Architect.

**4.3** The Owner shall furnish structural, mechanical, chemical, air and water pollution tests, tests for hazardous materials, and other laboratory and environmental tests, inspections and reports required by law or the Contract Documents.

**4.4** The Owner shall furnish all legal, accounting and insurance counseling services as may be necessary at any time for the Project, including auditing services the Owner may require to verify the Contractor's Applications for Payment or to ascertain how or for what purposes the Contractor has used the money paid by the Owner.

**4.5** The foregoing services, information, surveys and reports shall be furnished at the Owner's expense, and the Architect shall be entitled to rely upon the accuracy and completeness thereof.

**4.6** Prompt written notice shall be given by the Owner to the Architect if the Owner becomes aware of any fault or defect in the Project or nonconformance with the Contract Documents.

**4.7** The proposed language of certificates or certifications requested of the Architect or Architect's consultants shall be submitted to the Architect for review and approval at least 14 days prior to execution.

**AIA DOCUMENT B151** • ABBREVIATED OWNER-ARCHITECT AGREEMENT • THIRD EDITION • AIA® • ©1987
THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C. 20006

WARNING: Unlicensed photocopying violates U.S. copyright laws and is subject to legal prosecution.

## ARTICLE 5
## CONSTRUCTION COST

### 5.1  DEFINITION

**5.1.1** The Construction Cost shall be the total cost or estimated cost to the Owner of all elements of the Project designed or specified by the Architect.

**5.1.2** The Construction Cost shall include the cost at current market rates of labor and materials furnished by the Owner and equipment designed, specified, selected or specially provided for by the Architect, plus a reasonable allowance for the Contractor's overhead and profit. In addition, a reasonable allowance for contingencies shall be included for market conditions at the time of bidding and for changes in the Work during construction.

**5.1.3** Construction Cost does not include the compensation of the Architect and Architect's consultants, the costs of the land, rights-of-way, financing or other costs which are the responsibility of the Owner as provided in Article 4.

### 5.2  RESPONSIBILITY FOR CONSTRUCTION COST

**5.2.1** It is recognized that neither the Architect nor the Owner has control over the cost of labor, materials or equipment, over the Contractor's methods of determining bid prices, or over competitive bidding, market or negotiating conditions. Accordingly, the Architect cannot and does not warrant or represent that bids or negotiated prices will not vary from any estimate of Construction Cost or evaluation prepared or agreed to by the Architect.

**5.2.2** No fixed limit of Construction Cost shall be established as a condition of this Agreement by the furnishing, proposal or establishment of a Project budget, unless a fixed limit has been agreed upon in writing and signed by the parties hereto. Fixed limits, if any, shall be increased in the amount of an increase in the Contract Sum occurring after execution of the Contract for Construction.

**5.2.3** Any Project budget or fixed limit of Construction Cost may be adjusted to reflect changes in the general level of prices in the construction industry between the date of submission of the Construction Documents to the Owner and the date on which proposals are sought.

**5.2.4** If a fixed limit of Construction Cost is exceeded by the lowest bona fide bid or negotiated proposal, the Owner shall:

- **.1**  give written approval of an increase in such fixed limit;
- **.2**  authorize rebidding or renegotiating of the Project within a reasonable time;
- **.3**  if the Project is abandoned, terminate in accordance with Paragraph 8.3; or
- **.4**  cooperate in revising the Project scope and quality as required to reduce the Construction Cost.

**5.2.5** If the Owner chooses to proceed under Clause 5.2.4.4, the Architect, without additional charge, shall modify the Contract Documents as necessary to comply with the fixed limit, if established as a condition of this Agreement. The modification of Contract Documents shall be the limit of the Architect's responsibility arising out of the establishment of a fixed limit. The Architect shall be entitled to compensation in accordance with this Agreement for all services performed whether or not the Construction Phase is commenced.

## ARTICLE 6
## USE OF ARCHITECT'S DRAWINGS, SPECIFICATIONS AND OTHER DOCUMENTS

**6.1** The Drawings, Specifications and other documents prepared by the Architect for this Project are instruments of the Architect's service for use solely with respect to this Project, and the Architect shall be deemed the author of these documents and shall retain all common law, statutory and other reserved rights, including the copyright. The Owner shall be permitted to retain copies, including reproducible copies, of the Architect's Drawings, Specifications and other documents for information and reference in connection with the Owner's use and occupancy of the Project. The Architect's Drawings, Specifications or other documents shall not be used by the Owner or others on other projects, for additions to this Project or for completion of this Project by others, unless the Architect is adjudged to be in default under this Agreement, except by agreement in writing and with appropriate compensation to the Architect.

**6.2** Submission or distribution of documents to meet official regulatory requirements or for similar purposes in connection with the Project is not to be construed as publication in derogation of the Architect's reserved rights.

## ARTICLE 7
## ARBITRATION

**7.1** Claims, disputes or other matters in question between the parties to this Agreement arising out of or relating to this Agreement or breach thereof shall be subject to and decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect unless the parties mutually agree otherwise. No arbitration arising out of or relating to this Agreement shall include, by consolidation, joinder or in any other manner, an additional person or entity not a party to this Agreement, except by written consent containing a specific reference to this Agreement signed by the Owner, Architect, and any other person or entity sought to be joined. Consent to arbitration involving an additional person or entity shall not constitute consent to arbitration of any claim, dispute or other matter in question not described in the written consent. The foregoing agreement to arbitrate and other agreements to arbitrate with an additional person or entity duly consented to by the parties to this Agreement shall be specifically enforceable in accordance with applicable law in any court having jurisdiction thereof.

**7.2** In no event shall the demand for arbitration be made after the date when institution of legal or equitable proceedings based on such claim, dispute or other matter in question would be barred by the applicable statutes of limitations.

**7.3** The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

## ARTICLE 8
## TERMINATION, SUSPENSION OR ABANDONMENT

**8.1** This Agreement may be terminated by either party upon not less than seven days' written notice should the other party

WARNING: Unlicensed photocopying violates U.S. copyright laws and is subject to legal prosecution.

fail substantially to perform in accordance with the terms of this Agreement through no fault of the party initiating the termination.

**8.2** If the Project is suspended by the Owner for more than 30 consecutive days, the Architect shall be compensated for services performed prior to notice of such suspension. When the Project is resumed, the Architect's compensation shall be equitably adjusted to provide for expenses incurred in the interruption and resumption of the Architect's services.

**8.3** This Agreement may be terminated by the Owner upon not less than seven days' written notice to the Architect in the event that the Project is permanently abandoned. If the Project is abandoned by the Owner for more than 90 consecutive days, the Architect may terminate this Agreement by giving written notice.

**8.4** Failure of the Owner to make payments to the Architect in accordance with this Agreement shall be considered substantial nonperformance and cause for termination.

**8.5** If the Owner fails to make payment when due the Architect for services and expenses, the Architect may, upon seven days' written notice to the Owner, suspend performance of services under this Agreement. Unless payment in full is received by the Architect within seven days of the date of the notice, the suspension shall take effect without further notice. In the event of a suspension of services, the Architect shall have no liability to the Owner for delay or damage caused the Owner because of such suspension of services.

**8.6** In the event of termination not the fault of the Architect, the Architect shall be compensated for services performed prior to termination, together with Reimbursable Expenses then due and all Termination Expenses.

**8.7** Termination Expenses are in addition to compensation for Basic and Additional Services, and include expenses which are directly attributable to termination.

## ARTICLE 9
## MISCELLANEOUS PROVISIONS

**9.1** Unless otherwise provided, this Agreement shall be governed by the law of the principal place of business of the Architect.

**9.2** Terms in this Agreement shall have the same meaning as those in AIA Document A201, General Conditions of the Contract for Construction, current as of the date of this Agreement.

**9.3** Causes of action between the parties to this Agreement pertaining to acts or failures to act shall be deemed to have accrued and the applicable statutes of limitations shall commence to run not later than either the date of Substantial Completion for acts or failures to act occurring prior to Substantial Completion, or the date of issuance of the final Certificate for Payment for acts or failures to act occurring after Substantial Completion.

**9.4** The Owner and Architect waive all rights against each other and against the contractors, consultants, agents and employees of the other for damages, but only to the extent covered by property insurance during construction, except such rights as they may have to the proceeds of such insurance as set forth in the edition of AIA Document A201, General Con-

ditions of the Contract for Construction, current as of the date of this Agreement. The Owner and Architect each shall require similar waivers from their contractors, consultants and agents.

**9.5** The Owner and Architect, respectively, bind themselves, their partners, successors, assigns and legal representatives to the other party to this Agreement and to the partners, successors, assigns and legal representatives of such other party with respect to all covenants of this Agreement. Neither Owner nor Architect shall assign this Agreement without the written consent of the other.

**9.6** This Agreement represents the entire and integrated agreement between the Owner and Architect and supersedes all prior negotiations, representations or agreements, either written or oral. This Agreement may be amended only by written instrument signed by both Owner and Architect.

**9.7** Nothing contained in this Agreement shall create a contractual relationship with or a cause of action in favor of a third party against either the Owner or Architect.

**9.8** The Architect and Architect's consultants shall have no responsibility for the discovery, presence, handling, removal or disposal of or exposure of persons to hazardous materials in any form at the Project site, including but not limited to asbestos, asbestos products, polychlorinated biphenyl (PCB) or other toxic substances.

## ARTICLE 10
## PAYMENTS TO THE ARCHITECT

### 10.1    DIRECT PERSONNEL EXPENSE

**10.1.1** Direct Personnel Expense is defined as the direct salaries of the Architect's personnel engaged on the Project and the portion of the cost of their mandatory and customary contributions and benefits related thereto, such as employment taxes and other statutory employee benefits, insurance, sick leave, holidays, vacations, pensions and similar contributions and benefits.

### 10.2    REIMBURSABLE EXPENSES

**10.2.1** Reimbursable Expenses include expenses incurred by the Architect in the interest of the Project for:

    **.1**  expense of transportation and living expenses in connection with out-of-town travel authorized by the Owner;

    **.2**  long-distance communications;

    **.3**  fees paid for securing approval of authorities having jurisdiction over the Project;

    **.4**  reproductions;

    **.5**  postage and handling of Drawings and Specifications;

    **.6**  expense of overtime work requiring higher than regular rates, if authorized by the Owner;

    **.7**  renderings and models requested by the Owner;

    **.8**  expense of additional insurance coverage or limits, including professional liability insurance, requested by the Owner in excess of that normally carried by the Architect and Architect's consultants; and

    **.9**  ~~expense of computer-aided design and drafting equipment time when used in connection with the Project.~~



AIA DOCUMENT B151 • ABBREVIATED OWNER-ARCHITECT AGREEMENT • THIRD EDITION • AIA® • ©1987
THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C. 20006

WARNING: Unlicensed photocopying violates U.S. copyright laws and is subject to legal prosecution.

**10.3   PAYMENTS ON ACCOUNT OF BASIC SERVICES**

**10.3.1**  An initial payment as set forth in Paragraph 11.1 is the minimum payment under this Agreement.

**10.3.2**  Subsequent payments for Basic Services shall be made monthly and, where applicable, shall be in proportion to services performed within each phase of service.

**10.3.3**  If and to the extent that the time initially established in Subparagraph 11.5.1 of this Agreement is exceeded or extended through no fault of the Architect, compensation for any services rendered during the additional period of time shall be computed in the manner set forth in Subparagraph 11.3.2.

**10.3.4**  When compensation is based on a percentage of Construction Cost and any portions of the Project are deleted or otherwise not constructed, compensation for those portions of the Project shall be payable to the extent services are performed on those portions, in accordance with the schedule set forth in Sub-

paragraph 11.2.2, based on (1) the lowest bona fide bid or negotiated proposal, or (2) if no such bid or proposal is received, the most recent preliminary estimate of Construction Cost or detailed estimate of Construction Cost for such protions of the Project.

**10.4   PAYMENTS ON ACCOUNT OF ADDITIONAL SERVICES AND REIMBURSABLE EXPENSES**

**10.4.1**  Payments on account of the Architect's Additional Services and for Reimbursable Expenses shall be made monthly upon presentation of the Architect's statement of services rendered or expenses incurred.

**10.4   PAYMENTS WITHHELD**

**10.5.1**  No deductions shall be made from the Architect's compensation on account of sums withheld from payments to contractors.

## ARTICLE 11
## BASIS OF COMPENSATION

The owner shall compensate the Architect as follows:

11.1   AN INITIAL PAYMENT OF                    Three Thousand                    Dollars (     $3,000.00     )
shall be made upon execution of this Agreement and credited to the Owner's account at final payment.

**11.2   BASIC COMPENSATION**

11.2.1   FOR BASIC SERVICES, as described in Article 2, and any other services included in Article 12 as part of Basic Services, Basic Compensation shall be computed as follows:
*(Insert basis of compensation, including stipulated sums, multiples or percentages, and identify phases to which particular methods of compensation apply, if necessary.)*

The Base Fee for Architectural Services shall be $9.00 per gross square foot area of the Project.

See Article 12 for Engineering Services        $_3 sq/ft   unfinished space   (basement, attic)
                                                          or
                                                          empty & COVERED EXTERIOR

11.2.2   Where compensation is based on a stipulated sum or percentage of Construction Cost, progress payments for Basic Services in each phase shall total the following percentages of the total Basic Compensation payable:

| | | |
|---|---|---|
| Programming | @ | $1,500.00 |
| Design Phase: | @ | 35% of Total Base Fee  less ($1,500.00) (i.e. 35% x $9.00 x s. f. area of Approved Project Program) |
| Construction Documents Phase | @ | 50% of Total Base Fee (i.e. 50% x $9.00 x s. f. area of Approved Project Floor Plan) |
| Construction Phase | @ | 15% of Total Base Fee (i.e. 15% x $9.00 x s.f. area of Project under construction) |
| Total Basic Compensation | @ | 100% of Total Base Fee |

AIA DOCUMENT B151 • ABBREVIATED OWNER-ARCHITECT AGREEMENT• THIRD ADDITION • AIA® • © 1987
THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C. 20006

WARNING: Unlicensed photocopying vioulates U.S. copyright laws and is subject to legal prosecution.

## 11.3   COMPENSATION FOR ADDITIONAL SERVICES

**11.3.1**  FOR PROJECT REPRESENTATION BEYOND BASIC SERVICES, as described in paragraph 3.2, compensation shall be computed as follows:

| | | |
|---|---|---|
| Principal Time | @ | $120.00 per Hour |
| Associate Time | @ | 110.00 per Hour |
| Project Manager Time | @ | 100.00 per Hour |
| Technical Designer Time | @ | 90.00 per Hour |
| Draftsman Time | @ | 80.00 per Hour |
| Secretarial Time | @ | 70.00 per Hour |
| Consultant Time | @ | 1.2x Direct Expense |

**11.3.2**  FOR ADDITIONAL SERVICES OF THE ARCHITECT provided under Article 3 or identified in Article 12, compensation shall be computed as follows:

*(Insert basis of compensation, including rates and/or multiples of Direct Personnel Expense for Principals and employees, and identify Principals and classify employees, if required. Identify specific services to which particular methods of compensation apply, if necessary.)*

| | | |
|---|---|---|
| Principal Time | @ | $120.00 per Hour |
| Associate Time | @ | 110.00 per Hour |
| Project Manager Time | @ | 100.00 per Hour |
| Technical Designer Time | @ | 90.00 per Hour |
| Draftsman Time | @ | 80.00 per Hour |
| Secretarial Time | @ | 70.00 per Hour |
| Consultant Time | @ | 1.2x Direct Expense |
| Principal Consultation Time | @ | 200.00 per Hour (For consultation not related to an ongoing project) |

**11.3.3**  FOR ADDITIONAL SERVICES OF CONSULTANTS, including additional structural, mechanical and electrical engineering services and those provided under Article 3 or identified in Article 12 as part of Additional Services, a multiple of
(   1.2   ) times the amounts billed to the Architect for such services.

*(Identify specific types of consultants in Article 12, if required.)*

## 11.4   REIMBURSABLE EXPENSES

**11.4.1**  FOR REIMBURSABLE EXPENSES, as described in Paragraph 10.2, and any other items included in Article 12 as Reimbursable Expenses, a multiple of         One & 2/10         (   1.2   ) times the expenses incurred by the Architect, the Architect's employees and consultants in the interest of the Project.

## 11.5 ADDITIONAL PROVISIONS

**11.5.1**  IF THE BASIC SERVICES covered by this Agreement have not been completed within         Twelve EIGHTEEN
(   18   ) months of the date hereof, through no fault of the Architect, extension of the Architect's services beyond that time shall be compensated as provided in Subparagraphs 10.3.3 and 11.3.2.

**11.5.2**  Payments are due and payable         Ten         (   10   ) days from the date of the Architect's invoice. Amounts unpaid         Thirty         (   30   ) days after the invoice date shall bear interest at the rate entered below, or in the absence thereof at the legal rate prevailing from time to time at the principal place of business of the Architect.
*(Insert rate of interest agreed upon.)*

Interest Rate shall be 1.8% per month

*(Usury laws and requirements under the Federal Truth in Lending Act, similar state and local consumer credit laws and other regulations at the Owner's and Architect's principal places of business, the location of the Project and elsewhere may affect the validity of this provision. Specific legal advice should be obtained with respect to deletions or modifications, and also regarding requirements such as written disclosures or waivers.)*

**11.5.3**  The rates and multiples set forth for Additional Services shall be annually adjusted in accordance with normal salary review practices of the Architect.

## ARTICLE 12
## OTHER CONDITIONS OR SERVICES

**12.1    SCHEMATIC DESIGN PHASE**

Once the Project Program is approved, the Schematic Design Drawings shall be developed and shall consist of Floor Plans of all levels, Exterior Elevations, and a Site Plan, if applicable. A Construction Cost Estimate, based on square foot area of the Project, shall be included. The Fee for Schematic Design shall be based on the Project Program approved by the Owner. If the Project Program is reduced by the Owner after Schematic Design has begun, then the necessary revisions to the Schematic Design Drawings shall be made as an Additional Service on an hourly basis, in addition to the initial Schematic Design Fee. If the Project Program is increased, the Schematic Design Fee shall be adjusted to include the additional square foot area of the project.

**12.2    EXISTING CONDITIONS**

The Owner shall provide the Architect with Drawings of all existing conditions of the Project. The Architect shall be entitled to rely upon the accuracy and completeness of such Drawings. If the Architect must record and document existing conditions, then such work shall be considered an Additional Service and shall be provided in accordance with Article 11.3.

**12.3    ENGINEERING SERVICES**

The Architect shall provide normal Structural Engineering Services at a not-to-exceed fee of $2,000. The Architect shall provide normal Mechanical, Plumbing and Electrical Engineering Services in either one of two (2) ways at the Owner's option.
Option 1: the Architect shall provide performance criteria for a design/build system by the Contractor at no additional fee.
Option 2: the Architect shall provide full Engineering Services for each engineering discipline at an additional fee of not-to-exceed $2,000 per discipline.

**12.4    FEE FOR CONSTRUCTION ADMINISTRATION**

The fee for Construction Administration shall be divided into equal weekly amounts over the period of time set aside for Construction as stipulated in the Owner and Contractor Agreement. If the Construction Period goes beyond that which is stipulated in the Owner and Contractor Agreement, then the Architect shall be reimbursed for each additional week of Construction in an amount equal to each previous weekly amount until such time as Final Completion of the Project is reached. Billing for Construction Administration shall occur monthly.

**12.5    SITEWORK & SITE IMPROVEMENTS**

As part of the Architect's Basic Services, the Architect shall design an overall site plan, including a layout for vehicular parking and pedestrian walkways. However, Construction Documents for all sitework and site improvement work, outside the limit of the building perimeter foundation walls, shall be provided as an Additional Services on an hourly basis in accordance with Article 11.3.

**12.6    DISPUTE RESOLUTION LOCALE**

The locale for the resolution of any dispute between the parties to this Agreement shall be in the principal place of business of the Architect.

**12.7    PROJECT APPROVAL APPEARANCES**

One (1) appearance before local agencies that have jurisdiction over the approval of the Project is included in the Architect's fee for Basic Services. Any additional appearances shall be provided as required as an Additional Service on an hourly basis in accordance with Article 11.3.

**12.8    TAXES OR FEES ENACTED BY THE GOVERNMENT**

Any taxes or fees enacted by local, state, or Federal Government, based on gross receipts or revenues which must be paid by the Architect, will be added to amounts due under this Agreement.

**12.9    UNPAID ARCHITECTURAL FEES**

If the Architect must make a claim for unpaid architectural fees, then such claim shall be heard in arbitration, in accordance with Article 7. All other claims of any nature, including any counterclaims and/or crossclaims, shall be heard in a court of law of proper jurisdiction. The American Arbitration Association shall not have jurisdiction over any such other claims. If the Architect must expend legal fees to collect unpaid architectural fees, then such expenditures shall be considered a Reimbursable Expense in accordance with Article 11.4.

This Agreement entered into as of the day and year first written above.

OWNER:

_(Signature)_ Mike McTigue, DVM

ARCHITECT

_(Signature)_ Warren Freedenfeld, AIA, President

GARDNER ANIMAL HOSPITAL
_(Printed name and title)_

WARREN FREEDENFELD & ASSOCIATES, INC.
_(Printed name and title)_

AIA DOCUMENT B151 • ABBREVIATED OWNER-ARCHITECT AGREEMENT • THIRD ADDITION • AIA® • © 1987
THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C. 20006

**B151-1987   8**

WARNING: Unlicensed photocopying vioulates U.S. copyright laws and is subject to legal prosecution.

## EXHIBIT 1

### FREEDENFELD AIA STATE AND TERRITORIAL REGISTRATIONS

| State | License # |
|---|---|
| Arizona | 33183 |
| California | C-24580 |
| Colorado | C-4749 |
| Connecticut | ARI.6497 |
| Florida | AR-0011410 |
| Georgia | RA008233 |
| Illinois | 001-010867 |
| Indiana | AR19600133 |
| Kansas | 4546 |
| Kentucky | 4355 |
| Louisiana | 5366 |
| Maine | AN10001281 |
| Maryland | 9888 |
| Massachusetts | AR3538 |
| Michigan | 13010-38998 |
| Mississippi | 3221 |
| Montana | 2722 |
| Missouri | 2000160073 |
| Montana | 2722 |
| Nevada | 3524 |
| New Hampshire | 01068 |
| New Jersey | AI-0742200 |
| New York | 014160-1 |
| North Carolina(c) | 50710 |
| North Carolina | 6863 |
| Ohio | A-00-12462 |
| Oklahoma | 4146 |
| Pennsylvania | RA008976B |
| Puerto Rico | 19850 |
| Rhode Island | 1567 |
| South Carolina | 4998 |
| Tennessee | 100876 |
| Texas | 14095 |
| Utah | 380348-0301 |
| Vermont | 003-000966 |
| Virginia | 0401009406 |
| Washington | 6218 |
| Wisconsin | 8415 |
| NCARB | 15026 |

Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**FORM VA**
For a Work of the Visual Arts
UNITED STATES COPYRIGHT OFFICE



VAu 653–940

**EFFECTIVE DATE OF REGISTRATION**

JAN 21 2005
Month    Day    Year

**ARATE CONTINUATION SHEET**

---

**1**

**Title of This Work ▼**

Willow Pet Hotel (WFA Project #9938)

**Previous or Alternative Titles ▼**

**NATURE OF THIS WORK ▼** See instructions

Architectural Drawings

Publication as a Contribution If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared. Title of Collective Work ▼

N/A

If published in a periodical or serial give Volume ▼    Number ▼    Issue Date ▼    On Pages ▼

N/A

---

**2**

**NOTE**

Under the law the author of a work made for hire is generally the employer not the employee (see instructions) For any part of this work that was made for hire check Yes in the space provided give the employer (or other person for whom the work was prepared) as Author of that part and leave the space for dates of birth and death blank

**a** **NAME OF AUTHOR ▼**

Warren Freedenfeld & Associates Inc.

**DATES OF BIRTH AND DEATH**
Year Born ▼    Year Died ▼
N/A    N/A

Was this contribution to the work a "work made for hire"?
■ Yes
☐ No

**Author's Nationality or Domicile**
Name of Country
OR { Citizen of __USA__
Domiciled in __USA__

**Was This Author's Contribution to the Work**
Anonymous?    ☐ Yes  ■ No
Pseudonymous?  ☐ Yes  ■ No

If the answer to either of these questions is "Yes" see detailed instructions

**Nature of Authorship** Check appropriate box(es) See Instructions
☐ 3 Dimensional sculpture    ☐ Map    ■ Technical drawing    (See enclosed material)*
☐ 2 Dimensional artwork    ☐ Photograph    ☐ Text
☐ Reproduction of work of art    ☐ Jewelry design    ☐ Architectural work

**b** **Name of Author ▼**

**Dates of Birth and Death**
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**Author's Nationality or Domicile**
Name of Country
OR { Citizen of _____
Domiciled in _____

**Was This Author's Contribution to the Work**
Anonymous?    ☐ Yes  ☐ No
Pseudonymous?  ☐ Yes  ☐ No

If the answer to either of these questions is "Yes" see detailed instructions

**Nature of Authorship** Check appropriate box(es) See Instructions
☐ 3 Dimensional sculpture    ☐ Map    ☐ Technical drawing
☐ 2 Dimensional artwork    ☐ Photograph    ☐ Text
☐ Reproduction of work of art    ☐ Jewelry design    ☐ Architectural work

---

**3**

**a** **Year in Which Creation of This Work Was Completed**
2000    This information must be given Year in all cases

**b** **Date and Nation of First Publication of This Particular Work**
Complete this information ONLY if this work has been published
Month _____ Day _____ Year _____
Nation _____

---

**4**

See instructions before completing this space

**COPYRIGHT CLAIMANT(S)** Name and address must be given even if the claimant is the same as the author given in space 2 ▼

Warren Freedenfeld & Associates Inc
39 Church Street
Boston, MA 02116

**Transfer** If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2 give a brief statement of how the claimant(s) obtained ownership of the copyright ▼

**DO NOT WRITE HERE**
**OFFICE USE ONLY**

APPLICATION RECEIVED
**JAN 2 1 2005**
ONE DEPOSIT RECEIVED
**JAN 2 1 2005**
TWO DEPOSITS RECEIVED

FUNDS RECEIVED

---

MORE ON BACK ▶    Complete all applicable spaces (numbers 5-9) on the reverse side of this page
See detailed instructions    Sign the form at line 8

DO NOT WRITE HERE
Page 1 of ___2___ pages

EXAMINED BY

CHECKED BY

☐ CORRESPONDENCE
Yes

FORM VA

FOR
COPYRIGHT
OFFICE
USE
ONLY

*enclosure refers to drawings
submitted for deposit

DO NOT WRITE ABOVE THIS LINE IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET

**PREVIOUS REGISTRATION** Has registration for this work or for an earlier version of this work already been made in the Copyright Office?

☐ Yes  ■ No  If your answer is Yes  why is another registration being sought? (Check appropriate box )▼

a  ☐ This is the first published edition of a work previously registered in unpublished form.

b  ☐ This is the first application submitted by this author as copyright claimant

c  ☐ This is a changed version of the work as shown by space 6 on this application

If your answer is Yes  give  Previous Registration Number ▼          Year of Registration ▼

**5**

**DERIVATIVE WORK OR COMPILATION** Complete both space 6a and 6b for a derivative work  complete only 6b for a compilation.

a. Preexisting Material  Identify any preexisting work or works that this work is based on or incorporates ▼

N/A

b  Material Added to This Work  Give a brief general statement of the material that has been added to this work and in which copyright is claimed ▼

N/A

**6**

**a** See instructions before completing this space

**b**

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office  give name and number of Account
Name ▼                                              Account Number ▼

N/A                                              N/A

**7**
**a**

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent  Name/Address/Apt/City/State/ZIP ▼

Warren Freedenfeld, AIA, President
Warren Freedenfeld & Associates, Inc
39 Church Street
Boston, MA  02116

Area code and daytime telephone number   (617)338-0050          Fax number   (617)426-2557

Email   warren@freedenfeld com

**b**

**CERTIFICATION*** I the undersigned hereby certify that I am the

check only one ▶

☐ author
☐ other copyright claimant
☐ owner of exclusive right(s)
■ authorized agent of   Warren Freedenfeld & Associates, Inc
Name of author or other copyright claimant  or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge

**8**

Typed or printed name and date ▼ If this application gives a date of publication in space 3  do not sign and submit it before that date

Warren Freedenfeld, AIA, President          Date   05 January 2005

Handwritten signature (X) ▼

X

**Certificate will be mailed in window envelope to this address**

Name ▼
Warren Freedenfeld & Associates, Inc

Number/Street/Apt ▼
39 Church Street

City/State/ZIP ▼
Boston, MA  02116

**YOU MUST:**
Complete all necessary spaces
Sign your application in space 8
**SEND ALL 3 ELEMENTS IN THE SAME PACKAGE:**
1 Application form
2 Nonrefundable filing fee in check or money order payable to Register of Copyrights
3 Deposit material
**MAIL TO:**
Library of Congress
Copyright Office
101 Independence Avenue  S E
Washington  D C  20559-6000

**9**

17 U S C § 506(e)  Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409  or in any written statement filed in connection with the application  shall be fined not more than $2 500

Certificate of Registration



# FORM VA
For a Work of the Visual Arts
UNITED STATES COPYRIGHT OFFICE

REG **VAu 653 – 939**



This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

EFFECTIVE DATE OF REGISTRATION

JAN 21 2005
Month    Day    Year

ARATE CONTINUATION SHEET

---

**1** Title of This Work ▼

Asheville Highway Animal Hospital (WFA Project #0318

NATURE OF THIS WORK ▼ See Instructions

Architectural Design

Previous or Alternative Titles ▼

Publication as a Contribution If this work was published as a contribution to a periodical, serial or collection, give information about the collective work in which the contribution appeared. Title of Collective Work ▼

N/A

If published in a periodical or serial give   Volume ▼      Number ▼      Issue Date ▼      On Pages ▼

N/A

---

**2** NAME OF AUTHOR ▼

**a** Warren Freedenfeld & Associates Inc

DATES OF BIRTH AND DEATH
Year Born ▼      Year Died ▼
N/A            N/A

Was this contribution to the work a "work made for hire"?
■ Yes
□ No

Author's Nationality or Domicile
Name of Country
OR { Citizen of  USA
     Domiciled in  USA

Was This Author's Contribution to the Work
Anonymous?    □ Yes  ■ No
Pseudonymous? □ Yes  ■ No
If the answer to either of these questions is "Yes" see detailed instructions

Nature of Authorship Check appropriate box(es) See Instructions
□ 3-Dimensional sculpture    □ Map         Technical drawing  (See enclosed material)*
□ 2-Dimensional artwork      □ Photograph  □ Text
□ Reproduction of work of art □ Jewelry design ■ Architectural work

**NOTE**
Under the law the author of a work made for hire is generally the employer not the employee (see instructions) For any part of this work that was made for hire check Yes in the space provided give the employer (or other person for whom the work was prepared) as Author of that part and leave the space for dates of birth and death blank

**b** Name of Author ▼

Dates of Birth and Death
Year Born ▼      Year Died ▼

Was this contribution to the work a "work made for hire"?
□ Yes
□ No

Author's Nationality or Domicile
Name of Country
OR { Citizen of  _____
     Domiciled in _____

Was This Author's Contribution to the Work
Anonymous?    □ Yes  □ No
Pseudonymous? □ Yes  □ No
If the answer to either of these questions is "Yes" see detailed instructions

Nature of Authorship Check appropriate box(es) See Instructions
□ 3-Dimensional sculpture    □ Map         Technical drawing
□ 2-Dimensional artwork      □ Photograph  □ Text
□ Reproduction of work of art □ Jewelry design  Architectural work

---

**3** **a** Year in Which Creation of This Work Was Completed
2004    Year  This information must be given in all cases

**b** Date and Nation of First Publication of This Particular Work
Complete this information Month _____ Day _____ Year _____
ONLY if this work has been published    Nation

---

**4** COPYRIGHT CLAIMANT(S) Name and address must be given even if the claimant is the same as the author given in space 2 ▼

Warren Freedenfeld & Associates Inc
39 Church Street
Boston, MA 02116

Transfer If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2 give a brief statement of how the claimant(s) obtained ownership of the copyright ▼

APPLICATION RECEIVED
JAN 2 1 2005
ONE DEPOSIT RECEIVED
JAN 2 1 2005
TWO DEPOSITS RECEIVED

FUNDS RECEIVED

DO NOT WRITE HERE OFFICE USE ONLY

---

MORE ON BACK ▶ Complete all applicable spaces (numbers 5-9) on the reverse side of this page
See detailed instructions    Sign the form at line 8

DO NOT WRITE HERE
Page 1 of 2 pages

EXAMINED BY

CHECKED BY

CORRESPONDENCE
☐ Yes

FORM VA

FOR
COPYRIGHT
OFFICE
USE
ONLY

\* enclosure refers to drawings
submitted for deposit

DO NOT WRITE ABOVE THIS LINE IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET

**PREVIOUS REGISTRATION** Has registration for this work or for an earlier version of this work already been made in the Copyright Office?
☐ Yes ☑ No  If your answer is Yes  why is another registration being sought? (Check appropriate box) ▼
a ☐ This is the first published edition of a work previously registered in unpublished form
b ☐ This is the first application submitted by this author as copyright claimant
c ☐ This is a changed version of the work, as shown by space 6 on this application
If your answer is Yes  give Previous Registration Number ▼          Year of Registration ▼

**5**

**DERIVATIVE WORK OR COMPILATION** Complete both space 6a and 6b for a derivative work  complete only 6b for a compilation
a Preexisting Material  Identify any preexisting work or works that this work is based on or incorporates ▼

N/A

**6**

a
See instructions
before completing
this space

b Material Added to This Work  Give a brief general statement of the material that has been added to this work and in which copyright is claimed ▼

N/A

**b**

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office  give name and number of Account.
Name ▼                                     Account Number ▼

N/A                                          N/A

**7**

a

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent. Name/Address/Apt/City/State/ZIP ▼

Warren Freedenfeld, AIA, President
Warren Freedenfeld & Associates Inc
39 Church Street
Boston, MA 02116
Area code and daytime telephone number    (617) 338-0050          Fax number    (617) 426-2557
Email  warren@freedenfeld com

**b**

**CERTIFICATION\*** I the undersigned hereby certify that I am the

check only one ▶

☐ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☑ authorized agent of  Warren Freedenfeld & Associates Inc
   Name of author or other copyright claimant  or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge

**8**

Typed or printed name and date ▼ If this application gives a date of publication in space 3  do not sign and submit it before that date

Warren Freedenfeld, AIA, President                          Date  04 Jan 2005

Handwritten signature (X) ▼

X

| Certificate will be mailed in window envelope to this address | Name ▼ |
|---|---|
| | Warren Freedenfeld, AIA |
| | Number/Street/Apt ▼ |
| | 39 Church Street |
| | City/State/ZIP ▼ |
| | Boston, MA 02116 |

YOU MUST:
Complete all necessary spaces
Sign your application in space 8
SEND ALL 3 ELEMENTS
IN THE SAME PACKAGE
1 Application form
2 Nonrefundable filing fee in check or money
order payable to Register of Copyrights
3 Deposit material
MAIL TO:
Library of Congress
Copyright Office
101 Independence Avenue S E
Washington D C 20559 6000

**9**

17 U S C § 506(e)  Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409  or in any written statement filed in connection with the application  shall be fined not more than $2 500

# CERTIFICATE OF REGISTRATION



This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

REGISTER OF COPYRIGHTS
United States of America

OFFICIAL SEAL

For a Work of the Visual Arts
UNITED STATES COPYRIGHT OFFICE



VAu 347–382

EFFECTIVE DATE OF REGISTRATION

MAR. 24 1997

| Month | Day | Year |

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**1**

**TITLE OF THIS WORK ▼**

Three Lakes Animal Care Center (WFA Project #9216)

**NATURE OF THIS WORK ▼** See Instructions

Architectural Design

**PREVIOUS OR ALTERNATIVE TITLES ▼**

Town & Country Veterinary Hospital (WFA Project #9214)

**PUBLICATION AS A CONTRIBUTION** If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared. **Title of Collective Work ▼**

N/A

If published in a periodical or serial give: **Volume ▼** N/A **Number ▼** **Issue Date ▼** **On Pages ▼**

**2**

**NAME OF AUTHOR ▼**

Warren Freedenfeld & Associates Inc.

**DATES OF BIRTH AND DEATH**
**Year Born ▼** N/A **Year Died ▼** N/A

Was this contribution to the work a "work made for hire"?
☒ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶ U.S.A.
Domiciled in ▶ U.S.A.

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous? ☐ Yes ☒ No
Pseudonymous? ☐ Yes ☒ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Check appropriate box(es). **See instructions**
☐ 3-Dimensional sculpture ☐ Map ☐ Technical drawing
☐ 2-Dimensional artwork ☐ Photograph ☐ Text
☐ Reproduction of work of art ☐ Jewelry design ☒ Architectural work (See enclosed material)
☐ Design on sheetlike material

**NAME OF AUTHOR ▼**

**DATES OF BIRTH AND DEATH**
**Year Born ▼** **Year Died ▼**

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶
Domiciled in ▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous? ☐ Yes ☐ No
Pseudonymous? ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Check appropriate box(es). **See instructions**
☐ 3-Dimensional sculpture ☐ Map ☐ Technical drawing
☐ 2-Dimensional artwork ☐ Photograph ☐ Text
☐ Reproduction of work of art ☐ Jewelry design ☒ Architectural work
☐ Design on sheetlike material

**3**

**YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED** This information must be given in all cases.
1993 ◀ Year

**DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK**
Complete this information ONLY if this work has been published.
Month ▶ Day ▶ Year ▶ Nation ◀

**4**

**COPYRIGHT CLAIMANT(S)** Name and address must be given even if the claimant is the same as the author given in space 2. ▼

Warren Freedenfeld & Associates Inc.
39 Church Street
Boston, MA 02116

**TRANSFER** If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

APPLICATION RECEIVED
MAR 24 1997
ONE DEPOSIT RECEIVED
MAR 24 1997
TWO DEPOSITS RECEIVED
FUNDS RECEIVED

**MORE ON BACK ▶** • Complete all applicable spaces (numbers 5-9) on the reverse side of this page.
• See detailed instructions. • Sign the form at line 6.

DO NOT WRITE HERE
Page 1 of ____ pages

086739566

*enclosure refers to drawings submitted for deposit

EXAMINED BY

CHECKED BY

☐ CORRESPONDENCE
  Yes

FOR
COPYRIGHT
OFFICE
USE
ONLY

---

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?

☐ Yes  ☒ No  If your answer is "Yes," why is another registration being sought? (Check appropriate box) ▼

a. ☐ This is the first published edition of a work previously registered in unpublished form.

b. ☐ This is the first application submitted by this author as copyright claimant.

c. ☐ This is a changed version of the work, as shown by space 6 on this application.

If your answer is "Yes," give: Previous Registration Number ▼          Year of Registration ▼

**5**

---

**DERIVATIVE WORK OR COMPILATION** Complete both space 6a and 6b for a derivative work; complete only 6b for a compilation.

a. **Preexisting Material** Identify any preexisting work or works that this work is based on or incorporates. ▼

N/A

b. **Material Added to This Work** Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

N/A

See instructions
before completing
this space.

**6**

---

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.

Name ▼                              Account Number ▼

N/A                                N/A

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent.  Name/Address/Apt/City/State/ZIP ▼

Warren Freedenfeld, AIA, President
Warren Freedenfeld & Associates Inc.
39 Church Street
Boston, MA  02116

Be sure to
give your
daytime phone
◄ number

Area Code and Telephone Number ▶  (617) 338-0050

**7**

---

**CERTIFICATION*** I, the undersigned, hereby certify that I am the

check only one ▼

☐ author

☐ other copyright claimant

☐ owner of exclusive right(s)

☒ authorized agent of ..Warren Freedenfeld & Associates Inc.

Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made
by me in this application are correct to the best of my knowledge.

Typed or printed name and date ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.

Warren Freedenfeld, AIA, President        Date▶  19 March 1997

Handwritten signature (X) ▼

**8**

---

Mail
certificate
to:

Name ▼
          Warren Freedenfeld, AIA

Number/Street/Apt ▼
          39 Church Street

City/State/ZIP ▼
          Boston, MA  02116

Certificate
will be
mailed in
window
envelope

**• YOU MUST:**
• Complete all necessary spaces
• Sign your application in space 8

**SEND ALL 3 ELEMENTS
IN THE SAME PACKAGE:**
1. Application form
2. Nonrefundable $20 filing fee
   in check or money order
   payable to Register of Copyrights
3. Deposit material

**MAIL TO:**
Register of Copyrights
Library of Congress
Washington, D.C. 20559-6000

**9**

---

*17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

March 1995—300,000    ♻ PRINTED ON RECYCLED PAPER    ☆U.S. GOVERNMENT PRINTING OFFICE: 1995-387-237/43