THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| WARREN FREEDENFELD ASSOCIATES, INC. as successor in interest to WARREN FREEDENFELD & ASSOCIATES, INC., <br>                                   Plaintiff, <br> v. <br> MICHAEL P. MCTIGUE, DVM individually and as Trustee of THE MCTIGUE FAMILY TRUST, NANCY A. MCTIGUE, as Trustee of the MCTIGUE FAMILY TRUST, BRIAN C. HURLEY, DVM, GARDNER ANIMAL CARE CENTER, LLC d/b/a GARDNER ANIMAL HOSPITAL, EDWARD D. CORMIER, ASSOCIATES INC., and BENNETT BUILDING CORPORATION, <br>                                   Defendants. | CIVIL ACTION <br> NO. 05 11573 RGS |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION
OF WARREN FREEDENFELD ASSOCIATES, INC.
FOR SUMMARY JUDGMENT ON THE
<u>COUNTERCLAIM OF DEFENDANT, MICHAEL P. MCTIGUE</u>**

Warren Freedenfeld Associates, Inc., as successor in interest to Warren Freedenfeld & Associates, Inc. ("Freedenfeld") seeks summary judgment on the Counterclaim of Defendant, Michael P. McTigue ("McTigue"). McTigue's Counterclaim is legally unsubstantiated and raises no triable issues.

<u>INTRODUCTION</u>

This is an action originally brought by Freedenfeld for copyright and trademark infringement. Freedenfeld is an architectural firm which McTigue retained for the design of a veterinary facility. McTigue terminated Freedenfeld after Freedenfeld had prepared plans and drawings for the project. Freedenfeld registered his work with the Copyright Office. McTigue,

without consent of Freedenfeld, completed the project based upon Freedenfeld's plans and drawings. Shortly after Freedenfeld became aware of the illegitimate use of the plans and drawings, this suit was filed.

The undisputed agreements between the parties and McTigue's own filings demonstrate that, as a matter of law, Freedenfeld is entitled to summary judgment on all four counts of the Counterclaim: copyright infringement; violation of the Federal Trade Commission Act ("FTCA"); common law conversion; and violation of M.G.L. c.93A.

First, by contract, McTigue agreed that he has no ownership or authorship interest in any work subject to copyright protection. Second, there is no private right of action under the FTCA. Third, the conversion and Chapter 93A claims are wholly derivative of McTigue's fatally defective copyright claim. Fourth, the claims for conversion and violation of Chapter 93A are preempted by the Copyright Act. Finally, McTigue can show neither a conversion of protected property nor actionable conduct under Chapter 93A.

## UNDISPUTED FACTS

1.      On or about March 24, 1998, Freedenfeld and McTigue, on behalf of Gardner Animal Hospital ("Hospital"), executed an American Institute of Architects ("AIA") Abbreviated Form of Agreement Between Owner and Architect ("Agreement"). See Affidavit of Warren Chase Freedenfeld ("Freedenfeld Affidavit") ¶ 2; Freedenfeld Affidavit, Exhibit A.

2.      Freedenfeld was retained to perform architectural services for the design of a new veterinary facility for the Hospital ("Project"). See Freedenfeld Affidavit, Exhibit A.

3.      Section 2.2.1 of the Agreement provides that:

> The Architect [Freedenfeld] shall review with the Owner [Hospital/McTigue] alternative approaches to design and construction of the Project.

Id.

4.  Section 2.2.2 of the Agreement states in part that:

    [T]he Architect shall prepare, for approval by the Owner, Design Documents consisting of drawings and other documents appropriate for the Project . . .

Id.

5.  Section 2.3.1 of the Agreement also states in part that:

    Based upon the approved Design Documents, the Architect shall prepare, for approval by the Owner, Construction Documents consisting of Drawings and Specifications . . .

Id.

6.  Section 4.1 of the Agreement further provides that:

    The Owner shall provide full information, including a program which shall set forth the Owner's objectives, schedule, constraints, budget with reasonable contingencies, and criteria.

Id.

7.  Section 6.1 states that:

    The Drawings, Specifications and other documents prepared by the Architect for this Project are instruments of the Architect's service for use solely with respect to this Project, and the Architect shall be deemed the author of these documents and shall retain all common law, statutory and other reserved rights, including the copyright. The Owner shall be permitted to retain copies, including reproducible copies, of the Architect's Drawings, Specifications and other documents for information and reference in connection with the Owner's use and occupancy of the Project. The Architect's Drawings, Specifications or other documents shall not be used by the Owner or others on other projects, for additions to this Project or for completion of this Project by others, unless the Architect is adjudged to be in default under this Agreement, except by agreement in writing and with appropriate compensation to the Architect.

Id.

8.  Finally, Section 9.5 provides that:

    This Agreement represents the entire and integrated agreement between the Owner and Architect and supersedes all prior

3

>       negotiations, representations or agreements, either written or oral.
>       This Agreement may be amended only by written instrument
>       signed by both Owner and Architect.

Id.

9.   On or about September 2, 1999, Freedenfeld entered into a Termination and Mutual Release Agreement ("Termination") with the Hospital/McTigue.  See Freedenfeld Affidavit, ¶ 6, Freedenfeld Affidavit, Exhibit C.

10.  The Termination acknowledged that "the Schematic Design and partial Construction Documents for such Project has been substantially completed."  Freedenfeld Affidavit, Exhibit C.

11.  The Termination provided that:

>       GAH [Hospital] agrees not to use any of the work solely produced
>       by WFA [Freedenfeld].  Article 6 [quoted above] of the Owner and
>       Architect Agreement shall remain in full force and affect.

Id.

12.  McTigue did not personally prepare any drawings or plans whatsoever.  McTigue did not ever, at any time, provide Freedenfeld with any drawings, plans or sketches.  See Freedenfeld Affidavit, ¶ 5.  McTigue, however, asserts that the Plans were transcribed by Freedenfeld as a collaborative effort.[1]  See Counterclaim of Defendant Michael P. McTigue, ¶ 4.

13.  On or about August 11, 1999, Freedenfeld applied to the Register of Copyrights for a Certificate of Registration with the U.S. Copyright Office.  See Freedenfeld Affidavit, ¶ 6; Freedenfeld Affidavit, Exhibit B.  A copyright was subsequently granted to Freedenfeld.  Id.

---

[1] Solely for purposes of this summary judgment motion, Freedenfeld does not challenge the notion that McTigue was a collaborator on some level, but only by providing his goals and objectives for the project.

4

ARGUMENT

I.      The Court should grant summary judgment on Count I for copyright infringement.

Congress amended the Copyright Act (17 U.S.C. §§ 101 et seq.) to extend explicitly copyright protection to architects and their work product:

> In 1990, the Architectural Works Copyright Protection Act ("AWCPA") codified the copyright prophylaxis of architectural plans and architectural works. See Pub. L. No. 101-650, Tit. VI. 104 Stat. 5133 (1990) (codified in scattered sections of 17 U.S.C.). The AWCPA makes an "architectural work" an "original work of authorship" eligible for copyright protection. 17 U.S.C. § 102(a)(8). The Copyright Act defines an architectural work as "the design of a building as embodied in any tangible medium of expression, including a building, architectural plans, or drawings. The work includes the overall form as well as the arrangement and composition of spaces and elements in the design, but does not include individual standard features." 17 U.S.C. § 101.

Yankee Candle Co. v. New England Candle Co., 14 F.Supp.2d 154, 158 (D. Mass.), vacated pursuant to settlement, 29 F.Supp.2d (D. Mass. 1998). Architectural plans and drawings, while now within the scope of architectural works under Section 102(a)(8), also retain protection as pictorial, graphical or sculptural works under Section 102(a)(5). See T-Peg, Inc. v. Vermont TimberWorks, Inc., __ F.3d __, 2006 U.S. Dist. LEXIS 21153 (1st Cir. 2006).

By asserting his Counterclaim, McTigue necessarily concedes the copyright protection afforded to the plans and drawings prepared by and registered by Freedenfeld. There are three reasons to grant summary judgment on Count I for copyright infringement: (1) the presumptive validity of Freedenfeld's copyright registration; (2) Freedenfeld's contractual rights of ownership and authorship; and (3) McTigue's total inability to demonstrate joint authorship.

        A.      McTigue cannot overcome the presumptive validity of Freedenfeld's copyright registration.

Freedenfeld, as the registered owner, has a presumptively superior right over McTigue to

the copyright protected material.  Federal copyright law provides that:

> In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate.

11 U.S.C. § 410(c).  See, e.g., Spilman v. Mosby-Yearbook, Inc., 115 F.Supp.2d 148, 154 (D. Mass. 2000).  The certificate of registration creates a presumption of ownership over plans in favor of an architectural firm.  Ronald Mayotte & Associates v. MGC Building Co., 885 F. Supp. 148, 152 (E.D. Mich. 1994).  McTigue must show more than technical defects in the registration, which he cannot, to invalidate the presumption in favor of Freedenfeld's ownership of the architectural work.  See, e.g., Arthur Rutenberg Homes, Inc. v. Drew Homes, Inc., 29 F.3d 1529, 1532 (11th Cir. 1994).  McTigue must prove (which he cannot), and not merely allege, that Freedenfeld knowingly failed to advise the Copyright Office of his purported joint authorship.  See Spilman, 115 F.Supp.2d at 154; Franklin v. Ciroli, 865 F.Supp. 940, 943 (D. Mass. 1994).  Therefore, McTigue must not only prove his affirmative claim of infringement, but he must also overcome the legal presumption in favor of Freedenfeld.  As explained below, McTigue cannot overcome this presumption in favor of Freedenfeld's rights.

### B.   Freedenfeld contractually owns the copyright and McTigue's rights, if any, arise out of a limited license.

The parties entered into an AIA form of Agreement which stipulated that Freedenfeld was the author and copyright holder of all plans and drawings prepared by Freedenfeld.  The Termination specifically did not alter those rights and further provided that the Hospital was not to use "work solely produced by" Freedenfeld.  The Counterclaim concedes that the only expression of the ideas for the design were transcribed (drawn) by Freedenfeld.  In other words, Freedenfeld prepared all the plans and drawings.  The Termination does not purport to change, in

any way, the designation of Freedenfeld as owner and author and certainly does not assign such rights to the Hospital or McTigue. Rather, at most McTigue may argue that the Hospital may have obtained some license to use work not "solely produced by" Freedenfeld.

While McTigue may argue that there are a number of reasonable inferences to be drawn from the language of the Termination, particularly the term "use" and "solely produced by," none of those include a transfer, assignment or acknowledgement of ownership or authorship rights in favor of McTigue and/or the Hospital. The concept of "use" of architectural works, particularly by a project owner, implies a license; conversely in the case of "not to use" the concept implies a negative covenant not to exceed the scope of any agreed to license.

McTigue may also argue that the phrase "solely produced by" Freedenfeld may present an ambiguity. Whether it is ambiguous and may mean (1) to exclude that work produced by Freedenfeld which was a result of collaboration with McTigue or the Hospital or (2) to exclude that work produced by Freedenfeld which was derivative of other architectural works are immaterial to the Counterclaim.[2] The bottom line is that there is no reasonable inference which remotely suggests that the Agreement and/or Termination granted, transferred, designated or acknowledged any authorship or copyright rights in favor of McTigue and/or the Hospital.

Moreover, courts have uniformly upheld the AIA documents or similar provisions as reserving such rights solely in favor of the architect. See, e.g., John G. Danielson, Inc. v. Winchester-Conant Properties, Inc., 186 F. Supp. 2d 1, 11-13 (D. Mass. 2002), aff'd in part, 322 F. 3d 26 (1st Cir. 2003) (AIA form) (summary judgment); McCormick v. Amir Construction,

---

[2] While such a purported ambiguity may or may not be material to the Complaint, Freedenfeld denies the premises of either interpretation; Freedenfeld solely produced all the copyrighted architectural works on this project.

Inc., 2006 U.S. Dist. LEXIS 17737 (D. C.D. Cal. 2006) (agreement stated "Architect shall be deemed author of these documents and shall retain all copyrights thereto") (motion to dismiss); Joseph J. Legat Architects, P.C. v. U.S. Development Corp., 625 F. Supp. 293 (N.D. Ill. 1985) (AIA form) (summary judgment); Schuchart & Associates, P.E., Inc. v. Solo Serve Corp., 1983 U.S. Dist. LEXIS 15936 (W.D. Tex. 1983) (AIA form).  Commentators have recognized the risk that clients may claim rights under the Copyright Act and have acknowledged that the AIA forms address this problem:

> To avoid this interpretation, many architects include in their contract a standard American Institute of Architects (AIA) clause which explicitly states that the drawings and specifications are to remain the property of the architect.

N. Wargo, Note:  Copyright Protection for Architecture and the Berne Convention, 65 N.Y.U.L. Rev. 403, 446-447 (1990) (footnote omitted).  See also A. Vacca, Comment:  The Architectural Works Copyright Act:  Much Ado about Something, 9 Marq. Intell. Prop. L. Rev. 111, 117-118 (2005).

There is no basis to depart from the clear and unambiguous language of the Agreement, case law and commentators.  In sum, the Court should dismiss McTigue's copyright infringement claim.

### C. McTigue cannot establish the prerequisites to joint authorship of a copyright work.

McTigue asserts joint authorship without the ability to meet the standards under the Copyright Act:

> The authors of a joint work are co-owners of the copyright in the work.  17 U.S.C. § 201(a).  A joint work is defined as a work prepared by two or more authors with the intention that their contributions be merged into inseparable or independent parts of a unitary whole.  17 U.S.C. § 101.  Joint authorship requires that the respective contributions of each alleged joint author must be

>independently copyrightable and that the alleged co-authors intend, at the time of creation of the work, to regard themselves as co-authors. Erickson v. Trinity Theatre, Inc., 13 F.3d 1061 (7th Cir. 1994); Childress v. Taylor, 945 F.2d 500 (2d Cir. 1991); Ashton-Tate Corporation v. Ross, 916 F.2d 516 (9th Cir. 1990).

Fred Riley Home Building Corp. v. Cosgrove, 864 F. Supp. 1034, 1037 (D. Kan. 1994). In other words, the joint author must show (1) intent to create a work of joint authorship and (2) his or her copyright contribution to a joint work. See Cabrera v. Teatro del Sesente, Inc., 914 F. Supp. 743, 765 (D. P.R. 1995).

The evidence of the parties' intent is clear, unqualified and controlling. Freedenfeld, by terms of the Agreement, retained ab initio all authorship rights. McTigue and the Hospital agreed that "the Architect shall be deemed the author of these documents." As explained above, courts have treated the AIA language as binding. Other provisions of the Agreement contemplated that the owner would have active input in Freedenfeld's preparation of the drawings without any change to the vesting of authority and ownership rights in favor of Freedenfeld.

Finally, the Agreement represented the integrated expression of the parties' intent, superceded any prior understandings and trumped any subsequent understanding unless they were reduced to writing.

In the absence of a contract, courts have held that the nature of the architect client relationship demonstrates a lack of intent to create joint authorship:

>In this relationship, it is quite normal for the client to supply the engineer or architect with general design features which the client expects to be incorporated into the architectural plans and for the professional then to create the design drawings incorporating those features.

9

Aitken, Hazen, Hoffman, Miller, P.C. v. Empire Construction Co., 542 F. Supp. 252, 259 (D. Neb. 1982). See also M.G.B. Homes, Inc. v. American Homes, Inc., 903 F.2d 1486, 1493 (11th Cir. 1993).

Most of the reported cases on joint authorship of architectural works do not involve explicit contractual works and do not involve explicit contractual provisions. Accordingly, the weight of reported cases turns on the second element: the failure of the non-architect or non-design professional to make a copyrightable contribution. McTigue's own words demonstrate a failure to make such a contribution.

> McTigue and Freedenfeld worked jointly on the design process, with McTigue providing numerous ideas for the Hospital and Freedenfeld, working as a scribe, reducing the ideas of the collaboration to a unified set of plans for the Project ("the Work").

The law is clear that a joint author must do more than communicate ideas to the other author:

> The foundation of federal copyright law is that only expressions of ideas, not the ideas themselves, give rise to protected interests. Frybarger v. International Business Machines Corp., 812 F.2d 525, 530 (9th Cir. 1987); Landsberg v. Scrabble Crossword Games Players, Inc., 736 F.2d 485, 488 (9th Cir.), cert. denied, 469 U.S. 1037, 83 L.Ed.2d 403, 105 St. Ct. 513 (1984); 17 U.S.C. § 102(b) (1977).

Ashton-Tate Corp. v. Ross, 728 F.Supp. 597, 601 (N.D. Cal. 1989), aff'd, 916 F.2d 516 (9th Cir. 1997). See also John G. Danielson, Inc. v. Winchester-Conant Properties, Inc., 322 F.2d 26, 42 (1st Cir. 2003) ("while no author may copyright his ideas or facts he narrates, an author may copyright the expression of those ideas").

Courts have repeatedly held that, if the architect alone reduces the ideas of the client or others into drawings and plans, no joint authorship exists. See, e.g., M.G.B. Homes, Inc., 903

10

F.2d at 1493 (conveyances of ideas and preparation of a thumbnail sketch by builder did not create joint authorship); Home Design Services, Inc. v. Park Square Enterprises, Inc., 2005 U.S. Dist LEXIS 33627 (M.D. Fla. 2005) (provision of design criteria did not create a joint authorship) (summary judgment); Aitken, Hazen, Hoffman, Miller, P.C., 542 F. Supp. at 259 (contribution of ideas, direction to make changes, exercise of approval power and preparation of sketches by builder did not create joint authorship); Meltzer v. Zoller, 520 F. Supp. 847, 856-857 (D. N.J. 1981) (preparation of sketches, contribution of ideas, direction to make changes and exercise of approval power by client did not create joint authorship).

In each case, the court has ruled that, as a matter of law, no joint authorship existed. McTigue's claim is even weaker. He did not express his alleged ideas in a fixed medium such as drawings or sketches; rather, he concedes that Freedenfeld prepared all the drawings. At most, McTigue asserts, whether true or not, that he "narrated" ideas and facts. Therefore, the Court should reject any claims of joint authorship and should dismiss his copyright infringement claim.

II.   The Court should dismiss Count II because there is no private right of action under the FTCA.

McTigue has asserted a claim under 15 U.S.C. § 45, the FTCA. The FTCA grants the Federal Trade Commission authority to prosecute civil actions for statutory violations but does not explicitly create any private right of action. 15 U.S.C. § 45. Courts have repeatedly held that there is no implied private right of action for violations of the FTCA. See, e.g., Carlson v. Coca-Cola Co., 483 F.2d 279 (9th Cir. 1973); Symmes v. Bahama Joe's, 1988 U.S. Dist. LEXIS 9611 (D. Mass. 1988); U.S. v. Philip Morris, Inc., 263 F.Supp.2d 72 (D.D.C. 2003); Waldo v. North American Van Lines, Inc., 669 F. Supp 722 (W.D. Pa. 1987).

As the law is settled in this area, Count II of the Counterclaim should be dismissed.

III.  The Court should grant summary judgment on Count III for conversion.

    A.  Dismissal of the copyright claim necessitates dismissal of the wholly derivative conversion claim.

The elements of a conversion claim are straight forward:

> The elements of conversion require that a defendant be proved to have "intentionally or wrongfully exercise[d] acts of ownership, control or dominion over personal property to which he has no right of possession at the time . . . ." Abington Natl. Bank v. Ashwood Homes, Inc., 19 Mass. App. Ct. 503, 507 (1985).

Grand Pacific Finance Corp. v. Brauer, 57 Mass. App. Ct. 407, 412 (2003).

Thus, the common law conversion claim by McTigue turns on his alleged rights of authorship and ownership in the plans and drawings. The failure to establish these rights is a fatal wound to the conversion claim. Accordingly, the Court should dismiss Count II for common law conversion.

    B.  McTigue's claim for conversion is preempted by federal copyright law.

McTigue has, in essence, repleaded his statutory copyright violation claim as a common law conversion claim. The Copyright Act provides that "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright . . . are governed exclusively by this title." 11 U.S.C. § 301(a). This provision preempts state law claims. There is a very straightforward two part test to determine whether a state law claim is preempted:

> For the Copyright Act to preempt a state-law claim: (1) the subject of the state claim must constitute a work protected under the Copyright Act, and (2) the state-law claim must provide a right equivalent to those provided by the Copyright Act.

Henry v. National Geographic Society, 147 F.Supp.2d 16, 20 (D. Mass. 2001) (summary judgment).

First, the parties do not dispute that the architectural works at issue are copyright protected. Second, a number of cases stand for the proposition that the Massachusetts common law action for conversion provides a right equivalent to those provided by the Copyright Act. See, e.g., Henry, 147 F. Supp. 2d at 20 (summary judgment); Quincy Cablesystems, Inc. v. Sully's Bar, Inc., 650 F. Supp. 838, 849-850 (D. Mass. 1986) (motion to dismiss). This is especially true, as here, where the rights to be vindicated involve reproduction, derivative use or other distribution of the copyright protected work. In contrast, a conversion claim may survive preemption where it solely seeks a remedy for a physical taking of a copy of the work. See, John G. Danielson, Inc. v. Winchester-Conant Properties, Inc., 186 F. Supp. 2d 1, 28-29 (D. Mass. 2002), aff'd in part, 322 F. 3d 26 (1st Cir. 2003); Data General Corp. v. Grumman Systems Supply Corp., 795 F. Supp. 501, 505 (D. Mass. 1992). As McTigue does not seek return of the plans and drawings, the Court should dismiss the conversion claim as preempted by the Copyright Act.

### C. McTigue has not established the conversion of any property protected at common law.

McTigue has no right to assert a common law conversion claim because his purported joint authorship rights in the architectural work is not an interest subject to conversion. As explained above, McTigue must prove that Freedenfeld had "no right of possession" to the architectural works. Grand Pacific Finance Corp., 57 Mass. App. Ct. at 412. McTigue makes no such claim but rather asserts joint ownership. Moreover, this very type of property interest is not recognized at common law as within the ambit of conversion.

> It is elementary that at common law the plaintiff, in order to support this action, must at the time of the conversion have had a complete property either general or special in the chattel and also the actual possession, or the right to immediate possession of it. Chitty on Pl. 167, and cases cited in the notes on that page. And

13

> such always has been the law in this state, both before and since the practice act. Vincent v. Cornell, 13 Pick, 294, 23 Am Dec. 683; Newhall v. Kingsbury, 131 Mass. 445; Robinson v. Bird, 158 Mass. 357, 33 N. E. 391, 35 Am. St. Rep. 495; Winship v. Neale, 10 Gray, 382. And the plaintiff must show that at the date of the writ he had the right to immediate possession. Newhall v. Kingsbury, ubi supra, and cases cited. If there be an outstanding special property in another so that the general owner has not the right to immediate possession, then the latter should sue in case for the injury to his reversion, not in trover for the value of his goods. Chitty on Pl. 167.

Bacon v. George, 206 Mass. 566, 570 (1910). See also Marshall Vessels, Inc. v. Wright, 331 Mass. 487, 489 (1954).

Because McTigue asserts joint authorship rights over the plans and drawings and not a possessory right to the actual plans and drawings, there is no conversion. Rather, the authorship rights asserted involve special property for which there is no conversion remedy. Therefore, the Court should dismiss Count III for conversion.

IV.   The Court should dismiss Count IV for violation of Chapter 93A.

    A.   Dismissal of the copyright claim necessitates dismissal of the wholly derivative Chapter 93A claim.

McTigue's entire Chapter 93A claim turns on whether Freedenfeld's conduct was unfair and deceptive because of McTigue's alleged joint authorship rights. As those purported rights never existed, Freedenfeld's conduct in derogation of those rights cannot form the basis of a Chapter 93A claim. Therefore, the Court should dismiss Count IV for violation of Chapter 93A.

    B.   McTigue's Chapter 93A claim is preempted by federal copyright law.

As with the conversion claim, the Chapter 93A claim is a recast of the copyright claim. Specifically, paragraph 29 of the Counterclaim even uses the word "infringed". As explained above, preemption requires a simple two-part test. Judges in this District have not hesitated to

grant summary judgment on Chapter 93A claims based upon copyright preemption. See, e.g., John G. Danielson, Inc., 186 F. Supp. 2d at 29 (summary judgment); Henry, 147 F.Supp.2d at 23 (summary judgment); Patricia Kennedy & Co. v. Zam-Cul Enterprises, Inc., 830 F. Supp. 53, 56-57 (D. Mass. 1993). The Court should have no reluctance to dismiss Count IV on preemption grounds.

### C. McTigue has not established any actionable conduct subject to Chapter 93A.

McTigue may assert that his Chapter 93A count must survive because he avers more than copyright infringement. That argument cannot save the claim. The only other problems which McTigue has with Freedenfeld focus on Freedenfeld's conduct in the copyright infringement litigation. For example, paragraphs 29 and 30 of the Counterclaim charge that Freedenfeld "filed a knowing and frivolous lawsuit," and "further instructed his counsel to issues [sic] unlawful threats . . . in order to thwart discovery."

The Supreme Judicial Court has held that Chapter 93A does not apply to the conduct of a party (other than an insurer) in litigation because it does not involve "actions taken in the course of 'trade or commerce.'" Morrison v. Toys "R" Us, Inc., 441 Mass. 451, 457 (2004) (summary judgment). A party is not liable under Chapter 93A "on the ground that its litigation tactics are perceived by the opposing party to be unfair." Id. at 458.

To the extent that prior opinions in this Circuit have suggested otherwise,[3] the Supreme Judicial Court has stated that "G.L. c. 93A . . . has never been read so broadly as to establish an independent remedy for unfair or deceptive dealings in the context of litigations, with the statutory exception as to those 'engaged in the business of insurance.'" Id. at 457.

---

[3] See, e.g., Refuse & Environmental Systems, Inc. v. Industrial Services of America, Inc., 932 F.2d 37, 43 (1st Cir. 1991); Skinder-Strauss Associates v. Massachusetts Continuing Legal Educations, Inc., 870 F. Supp. 8, 11 (D. Mass. 1994).

Therefore, the Court should dismiss the Chapter 93A claim.

## CONCLUSION

For the foregoing reasons, the Court should grant Freedenfeld summary judgment on the Counterclaim.

Respectfully submitted,

Warren Freedenfeld Associates, Inc.
As successor in Interest to Warren
Freedenfeld & Associates, Inc.,
Defendant-in-Counterclaim

By its attorneys,

/s/ Robert A. McCall
Michael J. Stone, BBO #482060
Robert A. McCall BBO #552682
Peabody & Arnold LLP
30 Rowes Wharf
Boston, MA 02110
(617) 951-2100

## CERTIFICATE OF SERVICE

    I, Robert A. McCall, attorney for the plaintiff, Warren Freedenfeld Associates, Inc. as successor in interest to Warren Freedenfeld & Associates, Inc., hereby certify that on this 3rd day of October 2006 a true copy of the foregoing was served on all counsel record by first-class mail postage pre-paid, addressed to:

| | |
|---|---|
| Robert N. Meltzer, Esquire<br>P.O. Box 1459<br>Framingham, MA 01701 | Stephen D. Rosenberg, Esquire<br>The McCormack Firm, LLC<br>One International Place<br>7th Floor<br>Boston, MA 02110 |
| F. Joseph Gentili, Esquire<br>Capobianco & Gentili, PC<br>15 West Central Street<br>Natick, MA 01760 | Robert D. City, Esquire<br>Michael J. Dissette, Esquire<br>City, Hayes & Dissette, PC<br>50 Congress Street<br>Boston, MA 02109 |
| Mary C. Casey, Esquire<br>Harbor Law Group<br>385 South Street<br>Shrewsbury, MA 01545 | Barry S. Scheer, Esquire<br>Garrett J. Lee, Esquire<br>Parker/Scheer, LLP<br>One Constitution Center<br>Boston, MA 02129 |

                                                     /s/ Robert A. McCall
                                                   Robert A. McCall

645450