THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WARREN FREEDENFELD ASSOCIATES, INC. )<br>as successor in interest to WARREN FREEDENFELD )<br>& ASSOCIATES, INC., )<br>                                  Plaintiff, )<br> )<br>v.                                           )<br> )<br>MICHAEL P. MCTIGUE, DVM individually and as )<br>Trustee of THE MCTIGUE FAMILY TRUST, )<br>NANCY A. MCTIGUE, as Trustee of the )<br>MCTIGUE FAMILY TRUST, BRIAN C. HURLEY, DVM, )<br>GARDNER ANIMAL CARE CENTER, LLC )<br>d/b/a GARDNER ANIMAL HOSPITAL, EDWARD D. )<br>CORMIER, ASSOCIATES INC., and BENNETT )<br>BUILDING CORPORATION, )<br>                                Defendants. ) | CIVIL ACTION<br>NO. 05 11573 RGS |

## AFFIDAVIT OF WARREN CHASE FREEDENFELD

I, Warren Chase Freedenfeld, hereby depose and state as follows:

1.  I have been a professional architect for over thirty years, and I am a member of the American Institute of Architects ("AIA"). I am licensed as an architect in Massachusetts and in at least thirty other states.

2.  I am the president of Warren Freedenfeld Associates, Inc. which is the successor in interest to Warren Freedenfeld & Associates, Inc. ("Freedenfeld").

3.  On or about March 24, 2008, Freedenfeld entered into an AIA Abbreviated Form of Agreement Between Owner and Architect ("Agreement") with Gardner Animal Hospital

("Hospital"). Attached hereto as Exhibit A is a true and accurate copy of the Agreement as executed by Michael P. McTigue ("McTigue") on behalf of the Hospital.

4. I was personally responsible for the services provided by Freedenfeld pursuant to the Agreement. I am also personally familiar with the services provided by Freedenfeld pursuant to the Agreement.

5. Pursuant to the Agreement, Freedenfeld prepared a number of plans and drawings. Although McTigue, on behalf of the Hospital, conveyed comments regarding the plans and drawings as contemplated in the Agreement, McTigue did not, at any time, prepare any portion of those plans and drawings. McTigue did not, at any time, provide Freedenfeld with any plans, drawings or sketches prepared by McTigue in connection with the scope of work set forth in the Agreement.

6. On or about August 11, 1999, Freedenfeld applied to the Register of Copyrights for a Certificate of Registration with the U.S. Copyright Office for the plans and drawings prepared by Freedenfeld pursuant to the Agreement. Attached hereto as Exhibit B is a true and accurate copy of the Certificate of Registration.

7. On or about September 2, 1999, Freedenfeld entered into a Termination and Mutual Release Agreement ("Termination") with the Hospital/McTigue. Attached hereto as Exhibit C is a true and accurate copy of the Termination.

8. Other than the Termination, Freedenfeld did not enter into any other agreements with McTigue and/or the Hospital regarding either the services provided in connection with the Agreement or the plans and drawings.

Signed under the pains and penalties of perjury this 28th day of September 2006.

/s/ Warren Chase Freedenfeld
Warren Chase Freedenfeld

645875

## CERTIFICATE OF SERVICE

I, Robert A. McCall, attorney for the plaintiff, Warren Freedenfeld Associates, Inc. as successor in interest to Warren Freedenfeld & Associates, Inc., hereby certify that on this _____ day of October 2006 a true copy of the foregoing was served on all counsel record by first-class mail postage pre-paid, addressed to:

Robert N. Meltzer, Esquire
P.O. Box 1459
Framingham, MA 01701

Stephen D. Rosenberg, Esquire
The McCormack Firm, LLC
One International Place
7th Floor
Boston, MA 02110

F. Joseph Gentili, Esquire
Capobianco & Gentili, PC
15 West Central Street
Natick, MA 01760

Robert D. City, Esquire
Michael J. Dissette, Esquire
City, Hayes & Dissette, PC
50 Congress Street
Boston, MA 02109

Mary C. Casey, Esquire
Harbor Law Group
385 South Street
Shrewsbury, MA 01545

Barry S. Scheer, Esquire
Garrett J. Lee, Esquire
Parker/Scheer, LLP
One Constitution Center
Boston, MA 02129

/s/ Robert A. McCall
Robert A. McCall

# EXHIBIT A



AIA Document B151

# Abbreviated Form of Agreement Between Owner and Architect

*for Construction Projects of Limited Scope*

## 1987 EDITION

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES; CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION.*

## AGREEMENT

made as of the 24th day of March in the year of Nineteen Hundred and Ninety Eight

**BETWEEN** the Owner:
*(Name and address)*

Mike McTigue, DVM
GARDNER ANIMAL HOSPITAL
7 Pearson Boulevard
Gardner, MA  01440

and the Architect:
*(Name and address)*

WARREN FREEDENFELD & ASSOCIATES INC.
39 Church Street
Boston, MA  02116

For the following Project:   GARDNER ANIMAL HOSPITAL
*(Include detailed description of Project, location, address and scope.)*

Project Location:     2 acres of existing 19 acre lot
                      Typanny Road / Route 68
                      (Across from Walmart)
                      Gardner, Massachusetts

Scope of Work    :    New veterinary facility

The Owner and Architect agree as set forth below.

Copyright 1974, 1978, ©1987 by The American Institute of Architects, 1735 New York Avenue, N.W., Washington, D.C. 20006. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will be subject to legal prosecution.

AIA DOCUMENT B151 • ABBREVIATED OWNER-ARCHITECT AGREEMENT • THIRD EDITION • AIA® • ©1987
THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON. D.C. 20006          **B151-1987    1**

WARNING: Unlicensed photocopying violates U.S. copyright laws and is subject to legal prosecution.

| TERMS AND CONDITIONS OF AGREEMENT BETWEEN OWNER AND ARCHITECT |
|---|

## ARTICLE 1
### ARCHITECT'S RESPONSIBILITIES

**1.1  ARCHITECT'S SERVICES**

**1.1.1** The Architect's services consist of those services performed by the Architect, Architect's employees and Architect's consultants as enumerated in Articles 2 and 3 of this Agreement and any other services included in Article 12.

**1.1.2** The Architect's services shall be performed as expeditiously as is consistent with professional skill and care and the orderly progress of the Work.

**1.1.3** The services covered by this Agreement are subject to the time limitations contained in Subparagraph 11.5.1.

## ARTICLE 2
### SCOPE OF ARCHITECT'S BASIC SERVICES

**2.1  DEFINITION**

**2.1.1.** The Architect's Basic Services consist of those described under the three phases identified below, any other services identified in Article 12, and include normal structural, mechanical and electrical engineering services.

**2.2  DESIGN PHASE**

**2.2.1** The Architect shall review with the Owner alternative approaches to design and construction of the Project.

**2.2.2** Based on the mutually agreed-upon program, schedule and construction budget requirements, the Architect shall prepare, for approval by the Owner, Design Documents consisting of drawings and other documents appropriate for the Project, and shall submit to the Owner a preliminary estimate of Construction Cost.

**2.3  CONSTRUCTION DOCUMENTS PHASE**

**2.3.1** Based on the approved Design Documents, the Architect shall prepare, for approval by the Owner, Construction Documents consisting of Drawings and Specifications setting forth in detail the requirements for the construction of the Project and shall advise the Owner of any adjustments to previous preliminary estimates of Construction Cost.

**2.3.2** The Architect shall assist the Owner in connection with the Owner's responsibility for filing documents required for the approval of governmental authorities having jurisdiction over the Project.

**2.3.3** Unless provided in Article 12, the Architect, following the Owner's approval of the Construction Documents and of the latest preliminary estimate of Construction Cost, shall assist the Owner in obtaining bids or negotiated proposals and assist in awarding and preparing contracts for construction.

**2.4  CONSTRUCTION PHASE—ADMINISTRATION OF THE CONSTRUCTION CONTRACT**

**2.4.1** The Architect's responsibility to provide Basic Services for the Construction Phase under this Agreement commences with the award of the Contract for Construction and terminates at the earlier of issuance to the Owner of the final Certificate for Payment or 60 days after the date of Substantial Completion of the Work.

**2.4.2** The Architect shall provide administration of the Contract for Construction as set forth below and in the edition of AIA Document A201, General Conditions of the Contract for Construction, current as of the date of this Agreement.

**2.4.3** Duties, responsibilities and limitations of authority of the Architect shall not be restricted, modified or extended without written agreement of the Owner and Architect with consent of the Contractor, which consent shall not be unreasonably withheld.

**2.4.4** The Architect shall be a representative of and shall advise and consult with the Owner (1) during construction until final payment to the Contractor is due and (2) as an Additional Service at the Owner's direction from time to time during the correction period described in the Contract for Construction.

**2.4.5** The Architect shall visit the site at intervals appropriate to the stage of construction or as otherwise agreed by the Owner and Architect in writing to become generally familiar with the progress and quality of the Work completed and to determine in general if the Work is being performed in a manner indicating that the Work when completed will be in accordance with the Contract Documents. However, the Architect shall not be required to make exhaustive or continuous on-site inspections to check the quality or quantity of the Work. On the basis of on-site observations as an architect, the Architect shall keep the Owner informed of the progress and quality of the Work, and shall endeavor to guard the Owner against defects and deficiencies in the Work. *(More extensive site representation may be agreed to as an Additional Service, as described in Paragraph 3.2.)*

**2.4.6** The Architect shall not have control over or charge of and shall not be responsible for construction means, methods, techniques, sequences or procedures, or for safety precautions and programs in connection with the Work, since these are solely the Contractor's responsibility under the Contract for Construction. The Architect shall not be responsible for the Contractor's schedules or failure to carry out the Work in accordance with the Contract Documents. The Architect shall not have control over or charge of acts or omissions of the Contractor, Subcontractors, or their agents or employees, or of any other persons performing portions of the Work.

**2.4.7** The Architect shall at all times have access to the Work wherever it is in preparation or progress.

**2.4.8** Based on the Architect's observations and evaluations of the Contractor's Applications for Payment, the Architect shall review and certify the amounts due the Contractor.

**2.4.9** The Architect's certification for payment shall constitute a representation to the Owner, based on the Architect's observations at the site as provided in Subparagraph 2.4.5 and on the

data comprising the Contractor's Application for Payment, that the Work, to the best of the Architect's knowledge, information and belief, has progressed to the point indicated and that quality of the Work is in accordance with the Contract Documents. The issuance of a Certificate for Payment shall not be a representation that the Architect has (1) made exhaustive or continuous on-site inspections to check the quality or quantity of the Work, (2) reviewed construction means, methods, techniques, sequences or procedures, (3) reviewed copies of requisitions received from Subcontractors and material suppliers and other data requested by the Owner to substantiate the Contractor's right to payment or (4) ascertained how or for what purpose the Contractor has used money previously paid on account of the Contract Sum.

**2.4.10** The Architect shall have authority to reject Work which does not conform to the Contract Documents and will have authority to require additional inspection or testing of the Work whenever, in the Architect's reasonable opinion, it is necessary or advisable for the implementation of the intent of the Contract Documents.

**2.4.11** The Architect shall review and approve or take other appropriate action upon Contractor's submittals such as Shop Drawings, Product Data and Samples, but only for the limited purpose of checking for conformance with information given and the design concept expressed in the Contract Documents. The Architect's action shall be taken with such reasonable promptness as to cause no delay. The Architect's approval of a specific item shall not indicate approval of an assembly of which the item is a component. When professional certification of performance characteristics of materials, systems or equipment is required by the Contract Documents, the Architect shall be entitled to rely upon such certification to establish that the materials, systems or equipment will meet the performance criteria required by the Contract Documents.

**2.4.12** The Architect shall prepare Change Orders and Construction Change Directives, with supporting documentation and data if authorized or confirmed in writing by the Owner as provided in Paragraphs 3.1 and 3.3, for the Owner's approval and execution in accordance with the Contract Documents, and may authorize minor changes in the Work not involving an adjustment in the Contract Sum or an extension of the Contract Time which are not inconsistent with the intent of the Contract Documents.

**2.4.13** The Architect shall conduct inspections to determine the dates of Substantial Completion and final completion and shall issue a final Certificate for Payment.

**2.4.14** The Architect shall interpret and decide matters concerning performance of the Owner and Contractor under the requirements of the Contract Documents on written request of either the Owner or Contractor. The Architect's response to such requests shall be made with reasonable promptness and within any time limits agreed upon. When making such interpretations and initial decisions, the Architect shall endeavor to secure faithful performance by both Owner and Contractor, shall not show partiality to either, and shall not be liable for results of interpretations or decisions so rendered in good faith.

## ARTICLE 3
## ADDITIONAL SERVICES

**3.1** Additional Services shall be provided if authorized or confirmed in writing by the Owner or if included in Article 12, and they shall be paid for by the Owner as provided in this Agreement. Such Additional Services shall include, in addition to those described in Paragraphs 3.2 and 3.3, budget analysis, financial feasibility studies, planning surveys, environmental studies, measured drawings of existing conditions, coordination of separate contractors or independent consultants, coordination of construction or project managers, detailed Construction Cost estimates, quantity surveys, interior design, planning of tenant or rental spaces, inventories of materials or equipment, preparation of record-drawings, and any other services not otherwise included in this Agreement under Basic Services or not customarily furnished in accordance with generally accepted architectural practice.

**3.2** If more extensive representation at the site than is described in Subparagraph 2.4.5 is required, such additional project representation shall be provided and paid for as set forth in Articles 11 and 12.

**3.3** As an Additional Service in connection with Change Orders and Construction Change Directives, the Architect shall prepare Drawings, Specifications and other documentation and data, evaluate Contractor's proposals, and provide any other services made necessary by such Change Orders and Construction Change Directives.

## ARTICLE 4
## OWNER'S RESPONSIBILITIES

**4.1** The Owner shall provide full information, including a program which shall set forth the Owner's objectives, schedule, constraints, budget with reasonable contingencies, and criteria.

**4.2** The Owner shall furnish surveys describing physical characteristics, legal limitations and utility locations for the site of the Project, a written legal description of the site and the services of geotechnical engineers or other consultants when such services are requested by the Architect.

**4.3** The Owner shall furnish structural, mechanical, chemical, air and water pollution tests, tests for hazardous materials, and other laboratory and environmental tests, inspections and reports required by law or the Contract Documents.

**4.4** The Owner shall furnish all legal, accounting and insurance counseling services as may be necessary at any time for the Project, including auditing services the Owner may require to verify the Contractor's Applications for Payment or to ascertain how or for what purposes the Contractor has used the money paid by the Owner.

**4.5** The foregoing services, information, surveys and reports shall be furnished at the Owner's expense, and the Architect shall be entitled to rely upon the accuracy and completeness thereof.

**4.6** Prompt written notice shall be given by the Owner to the Architect if the Owner becomes aware of any fault or defect in the Project or nonconformance with the Contract Documents.

**4.7** The proposed language of certificates or certifications requested of the Architect or Architect's consultants shall be submitted to the Architect for review and approval at least 14 days prior to execution.

## ARTICLE 5
## CONSTRUCTION COST

### 5.1  DEFINITION

**5.1.1** The Construction Cost shall be the total cost or estimated cost to the Owner of all elements of the Project designed or specified by the Architect.

**5.1.2** The Construction Cost shall include the cost at current market rates of labor and materials furnished by the Owner and equipment designed, specified, selected or specially provided for by the Architect, plus a reasonable allowance for the Contractor's overhead and profit. In addition, a reasonable allowance for contingencies shall be included for market conditions at the time of bidding and for changes in the Work during construction.

**5.1.3** Construction Cost does not include the compensation of the Architect and Architect's consultants, the costs of the land, rights-of-way, financing or other costs which are the responsibility of the Owner as provided in Article 4.

### 5.2  RESPONSIBILITY FOR CONSTRUCTION COST

**5.2.1** It is recognized that neither the Architect nor the Owner has control over the cost of labor, materials or equipment, over the Contractor's methods of determining bid prices, or over competitive bidding, market or negotiating conditions. Accordingly, the Architect cannot and does not warrant or represent that bids or negotiated prices will not vary from any estimate of Construction Cost or evaluation prepared or agreed to by the Architect.

**5.2.2** No fixed limit of Construction Cost shall be established as a condition of this Agreement by the furnishing, proposal or establishment of a Project budget, unless a fixed limit has been agreed upon in writing and signed by the parties hereto. Fixed limits, if any, shall be increased in the amount of an increase in the Contract Sum occurring after execution of the Contract for Construction.

**5.2.3** Any Project budget or fixed limit of Construction Cost may be adjusted to reflect changes in the general level of prices in the construction industry between the date of submission of the Construction Documents to the Owner and the date on which proposals are sought.

**5.2.4** If a fixed limit of Construction Cost is exceeded by the lowest bona fide bid or negotiated proposal, the Owner shall:

   .1  give written approval of an increase in such fixed limit;

   .2  authorize rebidding or renegotiating of the Project within a reasonable time;

   .3  if the Project is abandoned, terminate in accordance with Paragraph 8.3; or

   .4  cooperate in revising the Project scope and quality as required to reduce the Construction Cost.

**5.2.5** If the Owner chooses to proceed under Clause 5.2.4.4, the Architect, without additional charge, shall modify the Contract Documents as necessary to comply with the fixed limit, if established as a condition of this Agreement. The modification of Contract Documents shall be the limit of the Architect's responsibility arising out of the establishment of a fixed limit. The Architect shall be entitled to compensation in accordance with this Agreement for all services performed whether or not the Construction Phase is commenced.

## ARTICLE 6
## USE OF ARCHITECT'S DRAWINGS, SPECIFICATIONS AND OTHER DOCUMENTS

**6.1** The Drawings, Specifications and other documents prepared by the Architect for this Project are instruments of the Architect's service for use solely with respect to this Project, and the Architect shall be deemed the author of these documents and shall retain all common law, statutory and other reserved rights, including the copyright. The Owner shall be permitted to retain copies, including reproducible copies, of the Architect's Drawings, Specifications and other documents for information and reference in connection with the Owner's use and occupancy of the Project. The Architect's Drawings, Specifications or other documents shall not be used by the Owner or others on other projects, for additions to this Project or for completion of this Project by others, unless the Architect is adjudged to be in default under this Agreement, except by agreement in writing and with appropriate compensation to the Architect.

**6.2** Submission or distribution of documents to meet official regulatory requirements or for similar purposes in connection with the Project is not to be construed as publication in derogation of the Architect's reserved rights.

## ARTICLE 7
## ARBITRATION

**7.1** Claims, disputes or other matters in question between the parties to this Agreement arising out of or relating to this Agreement or breach thereof shall be subject to and decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect unless the parties mutually agree otherwise. No arbitration arising out of or relating to this Agreement shall include, by consolidation, joinder or in any other manner, an additional person or entity not a party to this Agreement, except by written consent containing a specific reference to this Agreement signed by the Owner, Architect, and any other person or entity sought to be joined. Consent to arbitration involving an additional person or entity shall not constitute consent to arbitration of any claim, dispute or other matter in question not described in the written consent. The foregoing agreement to arbitrate and other agreements to arbitrate with an additional person or entity duly consented to by the parties to this Agreement shall be specifically enforceable in accordance with applicable law in any court having jurisdiction thereof.

**7.2** In no event shall the demand for arbitration be made after the date when institution of legal or equitable proceedings based on such claim, dispute or other matter in question would be barred by the applicable statutes of limitations.

**7.3** The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

## ARTICLE 8
## TERMINATION, SUSPENSION OR ABANDONMENT

**8.1** This Agreement may be terminated by either party upon not less than seven days' written notice should the other party

**AIA DOCUMENT B151** • ABBREVIATED OWNER-ARCHITECT AGREEMENT • THIRD EDITION • AIA® • ©1987
THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C. 20006

**B151-1987   4**

**WARNING: Unlicensed photocopying violates U.S. copyright laws and is subject to legal prosecution.**

fail substantially to perform in accordance with the terms of this Agreement through no fault of the party initiating the termination.

**8.2** If the Project is suspended by the Owner for more than 30 consecutive days, the Architect shall be compensated for services performed prior to notice of such suspension. When the Project is resumed, the Architect's compensation shall be equitably adjusted to provide for expenses incurred in the interruption and resumption of the Architect's services.

**8.3** This Agreement may be terminated by the Owner upon not less than seven days' written notice to the Architect in the event that the Project is permanently abandoned. If the Project is abandoned by the Owner for more than 90 consecutive days, the Architect may terminate this Agreement by giving written notice.

**8.4** Failure of the Owner to make payments to the Architect in accordance with this Agreement shall be considered substantial nonperformance and cause for termination.

**8.5** If the Owner fails to make payment when due the Architect for services and expenses, the Architect may, upon seven days' written notice to the Owner, suspend performance of services under this Agreement. Unless payment in full is received by the Architect within seven days of the date of the notice, the suspension shall take effect without further notice. In the event of a suspension of services, the Architect shall have no liability to the Owner for delay or damage caused the Owner because of such suspension of services.

**8.6** In the event of termination not the fault of the Architect, the Architect shall be compensated for services performed prior to termination, together with Reimbursable Expenses then due and all Termination Expenses.

**8.7** Termination Expenses are in addition to compensation for Basic and Additional Services, and include expenses which are directly attributable to termination.

## ARTICLE 9
## MISCELLANEOUS PROVISIONS

**9.1** Unless otherwise provided, this Agreement shall be governed by the law of the principal place of business of the Architect.

**9.2** Terms in this Agreement shall have the same meaning as those in AIA Document A201, General Conditions of the Contract for Construction, current as of the date of this Agreement.

**9.3** Causes of action between the parties to this Agreement pertaining to acts or failures to act shall be deemed to have accrued and the applicable statutes of limitations shall commence to run not later than either the date of Substantial Completion for acts or failures to act occurring prior to Substantial Completion, or the date of issuance of the final Certificate for Payment for acts or failures to act occurring after Substantial Completion.

**9.4** The Owner and Architect waive all rights against each other and against the contractors, consultants, agents and employees of the other for damages, but only to the extent covered by property insurance during construction, except such rights as they may have to the proceeds of such insurance as set forth in the edition of AIA Document A201, General Conditions of the Contract for Construction, current as of the date of this Agreement. The Owner and Architect each shall require similar waivers from their contractors, consultants and agents.

**9.5** The Owner and Architect, respectively, bind themselves, their partners, successors, assigns and legal representatives to the other party to this Agreement and to the partners, successors, assigns and legal representatives of such other party with respect to all covenants of this Agreement. Neither Owner nor Architect shall assign this Agreement without the written consent of the other.

**9.6** This Agreement represents the entire and integrated agreement between the Owner and Architect and supersedes all prior negotiations, representations or agreements, either written or oral. This Agreement may be amended only by written instrument signed by both Owner and Architect.

**9.7** Nothing contained in this Agreement shall create a contractual relationship with or a cause of action in favor of a third party against either the Owner or Architect.

**9.8** The Architect and Architect's consultants shall have no responsibility for the discovery, presence, handling, removal or disposal of or exposure of persons to hazardous materials in any form at the Project site, including but not limited to asbestos, asbestos products, polychlorinated biphenyl (PCB) or other toxic substances.

## ARTICLE 10
## PAYMENTS TO THE ARCHITECT

**10.1    DIRECT PERSONNEL EXPENSE**

**10.1.1** Direct Personnel Expense is defined as the direct salaries of the Architect's personnel engaged on the Project and the portion of the cost of their mandatory and customary contributions and benefits related thereto, such as employment taxes and other statutory employee benefits, insurance, sick leave, holidays, vacations, pensions and similar contributions and benefits.

**10.2    REIMBURSABLE EXPENSES**

**10.2.1** Reimbursable Expenses include expenses incurred by the Architect in the interest of the Project for:

   .1  expense of transportation and living expenses in connection with out-of-town travel authorized by the Owner;
   .2  long-distance communications;
   .3  fees paid for securing approval of authorities having jurisdiction over the Project;
   .4  reproductions;
   .5  postage and handling of Drawings and Specifications;
   .6  expense of overtime work requiring higher than regular rates, if authorized by the Owner;
   .7  renderings and models requested by the Owner;
   .8  expense of additional insurance coverage or limits, including professional liability insurance, requested by the Owner in excess of that normally carried by the Architect and Architect's consultants; and
   .9  ~~expense of computer-aided design and drafting equipment time when used in connection with the Project.~~



**10.3  PAYMENTS ON ACCOUNT OF BASIC SERVICES**

**10.3.1** An initial payment as set forth in Paragraph 11.1 is the minimum payment under this Agreement.

**10.3.2** Subsequent payments for Basic Services shall be made monthly and, where applicable, shall be in proportion to services performed within each phase of service.

**10.3.3** If and to the extent that the time initially established in Subparagraph 11.5.1 of this Agreement is exceeded or extended through no fault of the Architect, compensation for any services rendered during the additional period of time shall be computed in the manner set forth in Subparagraph 11.3.2.

**10.3.4** When compensation is based on a percentage of Construction Cost and any portions of the Project are deleted or otherwise not constructed, compensation for those portions of the Project shall be payable to the extent services are performed on those portions, in accordance with the schedule set forth in Subparagraph 11.2.2, based on (1) the lowest bona fide bid or negotiated proposal, or (2) if no such bid or proposal is received, the most recent preliminary estimate of Construction Cost or detailed estimate of Construction Cost for such protions of the Project.

**10.4  PAYMENTS ON ACCOUNT OF ADDITIONAL SERVICES AND REIMBURSABLE EXPENSES**

**10.4.1** Payments on account of the Architect's Additional Services and for Reimbursable Expenses shall be made monthly upon presentation of the Architect's statement of services rendered or expenses incurred.

**10.4  PAYMENTS WITHHELD**

**10.5.1** No deductions shall be made from the Architect's compensation on account of sums withheld from payments to contractors.

## ARTICLE 11
### BASIS OF COMPENSATION

The owner shall compensate the Architect as follows:

**11.1   AN INITIAL PAYMENT OF**      Three Thousand      Dollars (   $3,000.00   ) shall be made upon execution of this Agreement and credited to the Owner's account at final payment.

**11.2   BASIC COMPENSATION**

**11.2.1** FOR BASIC SERVICES, as described in Article 2, and any other services included in Article 12 as part of Basic Services, Basic Compensation shall be computed as follows:
*(Insert basis of compensation, including stipulated sums, multiples or percentages, and identify phases to which particular methods of compensation apply, if necessary.)*

The Base Fee for Architectural Services shall be $9.00 per gross square foot area of the Project.

See Article 12 for Engineering Services    *$3 sq/ft unfinished space (basement, attic) or empty & covered exterior*

**11.2.2** Where compensation is based on a stipulated sum or percentage of Construction Cost, progress payments for Basic Services in each phase shall total the following percentages of the total Basic Compensation payable:

| | | |
|---|---|---|
| Programming | @ | $1,500.00 |
| Design Phase: | @ | 35% of Total Base Fee  less ($1,500.00) |
| | | (i.e. 35% x $9.00 x s. f. area of Approved Project Program) |
| Construction Documents Phase | @ | 50% of Total Base Fee |
| | | (i.e. 50% x $9.00 x s. f. area of Approved Project Floor Plan) |
| Construction Phase | @ | 15% of Total Base Fee |
| | | (i.e. 15% x $9.00 x s.f. area of Project under construction) |
| Total Basic Compensation | @ | 100% of Total Base Fee |

**11.3  COMPENSATION FOR ADDITIONAL SERVICES**

**11.3.1** FOR PROJECT REPRESENTATION BEYOND BASIC SERVICES, as described in paragraph 3.2, compensation shall be computed as follows:

| | | |
|---|---|---|
| Principal Time | @ | $120.00 per Hour |
| Associate Time | @ | 110.00 per Hour |
| Project Manager Time | @ | 100.00 per Hour |
| Technical Designer Time | @ | 90.00 per Hour |
| Draftsman Time | @ | 80.00 per Hour |
| Secretarial Time | @ | 70.00 per Hour |
| Consultant Time | @ | 1.2x Direct Expense |



**11.3.2** FOR ADDITIONAL SERVICES OF THE ARCHITECT provided under Article 3 or identified in Article 12, compensation shall be computed as follows:
*(Insert basis of compensation, including rates and/or multiples of Direct Personnel Expense for Principals and employees, and identify Principals and classify employees, if required. Identify specific services to which particular methods of compensation apply, if necessary.)*

| | | |
|---|---|---|
| Principal Time | @ | $120.00 per Hour |
| Associate Time | @ | 110.00 per Hour |
| Project Manager Time | @ | 100.00 per Hour |
| Technical Designer Time | @ | 90.00 per Hour |
| Draftsman Time | @ | 80.00 per Hour |
| Secretarial Time | @ | 70.00 per Hour |
| Consultant Time | @ | 1.2x Direct Expense |
| Principal Consultation Time | @ | 200.00 per Hour (For consultation not related to an ongoing project) |

**11.3.3** FOR ADDITIONAL SERVICES OF CONSULTANTS, including additional structural, mechanical and electrical engineering services and those provided under Article 3 or identified in Article 12 as part of Additional Services, a multiple of ( 1.2 ) times the amounts billed to the Architect for such services.
*(Identify specific types of consultants in Article 12, if required.)*

**11.4  REIMBURSABLE EXPENSES**

**11.4.1** FOR REIMBURSABLE EXPENSES, as described in Paragraph 10.2, and any other items included in Article 12 as Reimbursable Expenses, a multiple of    One & 2/10    ( 1.2 ) times the expenses incurred by the Architect, the Architect's employees and consultants in the interest of the Project.

**11.5 ADDITIONAL PROVISIONS**

**11.5.1** IF THE BASIC SERVICES covered by this Agreement have not been completed within ~~Twelve~~ EIGHTEEN ( ~~12~~ 18 ) months of the date hereof, through no fault of the Architect, extension of the Architect's services beyond that time shall be compensated as provided in Subparagraphs 10.3.3 and 11.3.2.

**11.5.2** Payments are due and payable    Ten    ( 10 ) days from the date of the Architect's invoice. Amounts unpaid    Thirty    ( 30 ) days after the invoice date shall bear interest at the rate entered below, or in the absence thereof at the legal rate prevailing from time to time at the principal place of business of the Architect.
*(Insert rate of interest agreed upon.)*

Interest Rate shall be 1.8% per month
*(Usury laws and requirements under the Federal Truth in Lending Act, similar state and local consumer credit laws and other regulations at the Owner's and Architect's principal places of business, the location of the Project and elsewhere may affect the validity of this provision. Specific legal advice should be obtained with respect to deletions or modifications, and also regarding requirements such as written disclosures or waivers.)*

**11.5.3** The rates and multiples set forth for Additional Services shall be annually adjusted in accordance with normal salary review practices of the Architect.

---

## ARTICLE 12
## OTHER CONDITIONS OR SERVICES

**12.1  SCHEMATIC DESIGN PHASE**
Once the Project Program is approved, the Schematic Design Drawings shall be developed and shall consist of Floor Plans of all levels, Exterior Elevations, and a Site Plan, if applicable. A Construction Cost Estimate, based on square foot area of the Project, shall be included. The Fee for Schematic Design shall be based on the Project Program approved by the Owner. If the Project Program is reduced by the Owner after Schematic Design has begun, then the necessary revisions to the Schematic Design Drawings shall be made as an Additional Service on an hourly basis, in addition to the initial Schematic Design Fee. If the Project Program is increased, the Schematic Design Fee shall be adjusted to include the additional square foot area of the project.

**12.2  EXISTING CONDITIONS**
The Owner shall provide the Architect with Drawings of all existing conditions of the Project. The Architect shall be entitled to rely upon the accuracy and completeness of such Drawings. If the Architect must record and document existing conditions, then such work shall be considered an Additional Service and shall be provided in accordance with Article 11.3.

**12.3  ENGINEERING SERVICES**
The Architect shall provide normal Structural Engineering Services at a not-to-exceed fee of $2,000. The Architect shall provide normal Mechanical, Plumbing and Electrical Engineering Services in either one of two (2) ways at the Owner's option.
Option 1: the Architect shall provide performance criteria for a design/build system by the Contractor at no additional fee.
Option 2: the Architect shall provide full Engineering Services for each engineering discipline at an additional fee of not-to-exceed $2,000 per discipline.

**12.4  FEE FOR CONSTRUCTION ADMINISTRATION**
The fee for Construction Administration shall be divided into equal weekly amounts over the period of time set aside for Construction as stipulated in the Owner and Contractor Agreement. If the Construction Period goes beyond that which is stipulated in the Owner and Contractor Agreement, then the Architect shall be reimbursed for each additional week of Construction in an amount equal to each previous weekly amount until such time as Final Completion of the Project is reached. Billing for Construction Administration shall occur monthly.

**12.5  SITEWORK & SITE IMPROVEMENTS**
As part of the Architect's Basic Services, the Architect shall design an overall site plan, including a layout for vehicular parking and pedestrian walkways. However, Construction Documents for all sitework and site improvement work, outside the limit of the building perimeter foundation walls, shall be provided as an Additional Services on an hourly basis in accordance with Article 11.3.

**12.6  DISPUTE RESOLUTION LOCALE**
The locale for the resolution of any dispute between the parties to this Agreement shall be in the principal place of business of the Architect.

**12.7  PROJECT APPROVAL APPEARANCES**
One (1) appearance before local agencies that have jurisdiction over the approval of the Project is included in the Architect's fee for Basic Services. Any additional appearances shall be provided as required as an Additional Service on an hourly basis in accordance with Article 11.3.

**12.8  TAXES OR FEES ENACTED BY THE GOVERNMENT**
Any taxes or fees enacted by local, state, or Federal Government, based on gross receipts or revenues which must be paid by the Architect, will be added to amounts due under this Agreement.

**12.9  UNPAID ARCHITECTURAL FEES**
If the Architect must make a claim for unpaid architectural fees, then such claim shall be heard in arbitration, in accordance with Article 7. All other claims of any nature, including any counterclaims and/or crossclaims, shall be heard in a court of law of proper jurisdiction. The American Arbitration Association shall not have jurisdiction over any such other claims. If the Architect must expend legal fees to collect unpaid architectural fees, then such expenditures shall be considered a Reimbursable Expense in accordance with Article 11.4.

This Agreement entered into as of the day and year first written above.

OWNER:

(Signature) Mike McTigue, DVM

GARDNER ANIMAL HOSPITAL
*(Printed name and title)*

ARCHITECT:

(Signature) Warren Freedenfeld, AIA, President

WARREN FREEDENFELD & ASSOCIATES, INC.
*(Printed name and title)*

# EXHIBIT B

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America



Form VA
For a Work of the Visual Arts

VAu 656-366

EFFECTIVE DATE OF REGISTRATION

8 / 11 / 1999
Month / Day / Year

ATE CONTINUATION SHEET

---

**1** **Title of This Work ▼**  * NOT YET CONSTRUCTED
Gardner Animal Care Center (WFA Project #9818)

**NATURE OF THIS WORK ▼** See Instructions
Architectural Drawings

**Previous or Alternative Titles ▼**
Gardner Animal Care Center (WFA Project #9323)

**Publication as a Contribution** If this work was published as a contribution to a periodical, serial or collection, give information about the collective work in which the contribution appeared. **Title of Collective Work ▼**
N/A

If published in a periodical or serial give **Volume ▼** N/A  **Number ▼**  **Issue Date ▼**  **On Pages ▼**

---

**2 a** **NAME OF AUTHOR ▼**
Warren Freedenfeld & Associates, Inc

**DATES OF BIRTH AND DEATH**
Year Born ▼ N/A    Year Died ▼ N/A

**Was this contribution to the work a "work made for hire"?**
☒ Yes
☐ No

**Author's Nationality or Domicile** Name of Country
OR { Citizen of USA
     { Domiciled in USA

**Was This Author's Contribution to the Work**
Anonymous? ☐ Yes ☒ No
Pseudonymous? ☐ Yes ☒ No
If the answer to either of these questions is "Yes" see detailed instructions.

**NOTE**
Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions) For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

**Nature of Authorship** Check appropriate box(es) **See Instructions**
☐ 3 Dimensional sculpture    ☐ Map           ☒ Technical drawing
☐ 2-Dimensional artwork      ☐ Photograph    ☐ Text
☐ Reproduction of work of art ☐ Jewelry design ☐ Architectural work

**b** **Name of Author ▼**

**Dates of Birth and Death**
Year Born ▼    Year Died ▼

**Was this contribution to the work a "work made for hire"?**
☐ Yes
☐ No

**Author's Nationality or Domicile** Name of Country
OR { Citizen of _____
     { Domiciled in _____

**Was This Author's Contribution to the Work**
Anonymous? ☐ Yes ☐ No
Pseudonymous? ☐ Yes ☐ No

**Nature of Authorship** Check appropriate box(es) **See Instructions**
☐ 3-Dimensional sculpture    ☐ Map           ☒ Technical drawing
☐ 2-Dimensional artwork      ☐ Photograph    ☐ Text
☐ Reproduction of work of art ☐ Jewelry design ☐ Architectural work

---

**3 a** **Year in Which Creation of This Work Was Completed** 1999
This information must be given Year in all cases

**b** **Date and Nation of First Publication of This Particular Work**
Complete this information ONLY if this work has been published.
Month _____ Day _____ Year _____   Nation _____

---

**4** **COPYRIGHT CLAIMANT(S)** Name and address must be given even if the claimant is the same as the author given in space 2 ▼

Warren Freedenfeld & Associates Inc
39 Church Street
Boston MA 02116

**Transfer** If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2 give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

APPLICATION RECEIVED
FEB 0 4 2005  8/11/99
ONE DEPOSIT RECEIVED
FEB 0 4 2005  8/11/99
TWO DEPOSITS RECEIVED

FUNDS RECEIVED
8/11/99

---

**MORE ON BACK ▶** • Complete all applicable spaces (numbers 5-9) on the reverse side of this page
• See detailed instructions   • Sign the form at line 8

DO NOT WRITE HERE
Page 1 of ___ pages

EXAMINED BY ✓6/JH4

CHECKED BY

☒ CORRESPONDENCE
Yes

FORM VA

FOR COPYRIGHT OFFICE USE ONLY

"Claim is in technical drawing, separate claim filed for architectural work

**DO NOT WRITE ABOVE THIS LINE IF YOU NEED MORE SPACE USE A SEPARATE CONTINUATION SHEET**

**PREVIOUS REGISTRATION** Has registration for this work or for an earlier version of this work already been made in the Copyright Office?
☐ Yes  ☒ No  If your answer is Yes why is another registration being sought? (Check appropriate box) ▼
a ☐ This is the first published edition of a work previously registered in unpublished form
b ☐ This is the first application submitted by this author as copyright claimant
c ☐ This is a changed version of the work as shown by space 6 on this application
If your answer is Yes give Previous Registration Number ▼        Year of Registration ▼

**5**

**DERIVATIVE WORK OR COMPILATION** Complete both space 6a and 6b for a derivative work complete only 6b for a compilation
a Preexisting Material Identify any preexisting work or works that this work is based on or incorporates ▼

N/A

**6**
a

See instructions before completing this space

b Material Added to This Work Give a brief general statement of the material that has been added to this work and in which copyright is claimed ▼

N/A

b

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office give name and number of Account
Name ▼                                    Account Number ▼

N/A                                       N/A

**7**
a

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent Name/Address/Apt/City/State/ZIP ▼

Warren Freedenfeld, AIA President
Warren Freedenfeld & Associates Inc
39 Church Street
Boston, MA 02116

b

Area code and daytime telephone number  ( 617 ) 338 0050        Fax number  ( 617 ) 426-2557

Email  warren@freedenfeld com

**CERTIFICATION*** I the undersigned hereby certify that I am the

check only one ▶
☐ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☒ authorized agent of  Warren Freedenfeld & Associates Inc
      Name of author or other copyright claimant or owner of exclusive right(s) ▲

**8**

o the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge

Typed or printed name and date ▼ If this application gives a date of publication in space 3 do not sign and submit it before that date
Warren Freedenfeld, AIA President                                        Date  21 Jan 2005

Handwritten signature (X) ▼
X [signature]

Certificate will be mailed in window envelope to this address

Name ▼
Warren Freedenfeld AIA

Number Street Apt ▼
39 Church Street

City/State/ZIP ▼
Boston MA 02116

**YOU MUST:**
Complete all necessary spaces
Sign your application in space 8
**SEND ALL 3 ELEMENTS IN THE SAME PACKAGE:**
1 Application form
2 Nonrefundable filing fee in check or money order payable to *Register of Copyrights*
3 Deposit material
**MAIL TO:**
Library of Congress
Copyright Office
101 Independence Avenue S E
Washington D C 20559 6000

**9**

Fees are subject to change. For current fees check the Copyright Office website at www copyright gov write the Copyright Office or call (202) 707 3000

17 U S C § 506(e) Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409 or in any written statement filed in connection with the application shall be fined not more than $2 500

Rev August 2003—30 000   Web Rev June 2002   ♻ Printed on recycled paper                                U S Government Printing Office 2003 496 605/60 029

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**Form VA**
For a Work of the Visual Arts

REI **VAu 656-367**

EFFECTIVE DATE OF REGISTRATION
8 / 11 / 1999
Month / Day / Year

---

**1** Title of This Work ▼ **NOT YET CONSTRUCTED**
Gardner Animal Care Center (WFA Project #9818)

NATURE OF THIS WORK ▼ See instructions
Architectural Design

Previous or Alternative Titles ▼
Gardner Animal Care Center (WFA Project #9323)

Publication as a Contribution If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared. Title of Collective Work ▼
N/A

If published in a periodical or serial give   Volume ▼   Number ▼   Issue Date ▼   On Pages ▼
N/A

**2** NAME OF AUTHOR ▼
a  Warren Freedenfeld & Associates, Inc

DATES OF BIRTH AND DEATH
Year Born ▼   Year Died ▼
N/A           N/A

**NOTE**
Under the law the author of a "work made for hire" is generally the employer, not the employee (see instructions) For any part of this work that was made for hire check "Yes" in the space provided give the employer (or other person for whom the work was prepared) as Author of that part and leave the space for dates of birth and death blank

Was this contribution to the work a "work made for hire"?
☑ Yes
☐ No

Author's Nationality or Domicile
Name of Country
OR { Citizen of  USA
     { Domiciled in USA

Was This Author's Contribution to the Work
Anonymous?     ☐ Yes  ☑ No
Pseudonymous?  ☐ Yes  ☑ No

If the answer to either of these questions is "Yes," see detailed instructions

Nature of Authorship Check appropriate box(es) See instructions
☐ 3-Dimensional sculpture    ☐ Map              ☐ Technical drawing
☐ 2-Dimensional artwork      ☐ Photograph       ☐ Text
☐ Reproduction of work of art ☐ Jewelry design  ☑ Architectural work

b  Name of Author ▼

Dates of Birth and Death
Year Born ▼   Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

Author's Nationality or Domicile
Name of Country
OR { Citizen of
     { Domiciled in

Was This Author's Contribution to the Work
Anonymous?     ☐ Yes  ☐ No
Pseudonymous?  ☐ Yes  ☐ No

Nature of Authorship Check appropriate box(es) See instructions
☐ 3-Dimensional sculpture    ☐ Map              ☐ Technical drawing
☐ 2-Dimensional artwork      ☐ Photograph       ☐ Text
☐ Reproduction of work of art ☐ Jewelry design  ☑ Architectural work

**3**
a  Year in Which Creation of This Work Was Completed
   1999  Year   This information must be given in all cases

b  Date and Nation of First Publication of This Particular Work
   Complete this information ONLY if this work has been published
   Month _____ Day _____ Year _____   Nation _____

**4** COPYRIGHT CLAIMANT(S) Name and address must be given even if the claimant is the same as the author given in space 2 ▼
Warren Freedenfeld & Associates Inc
39 Church Street
Boston MA 02116

APPLICATION RECEIVED
FEB 0 4 2015  8/11/99
ONE DEPOSIT RECEIVED
FEB 0 4 2015  8/11/99
TWO DEPOSITS RECEIVED

FUNDS RECEIVED
8/11/99

Transfer If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2 give a brief statement of how the claimant(s) obtained ownership of the copyright ▼

---

MORE ON BACK ▶ • Complete all applicable spaces (numbers 5-9) on the reverse side of this page
• See detailed instructions    • Sign the form at line 8

DO NOT WRITE HERE
Page 1 of 2 pages

|  |  |
|---|---|
| EXAMINED BY ✓/JH | FORM VA |
| CHECKED BY | |
| ☒ CORRESPONDENCE Yes | FOR COPYRIGHT OFFICE USE ONLY |

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET**

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?
☐ Yes ☒ No If your answer is "Yes," why is another registration being sought? (Check appropriate box ) ▼
a ☐ This is the first published edition of a work previously registered in unpublished form
b ☐ This is the first application submitted by this author as copyright claimant
c ☐ This is a changed version of the work, as shown by space 6 on this application
If your answer is "Yes," give Previous Registration Number ▼ _____ Year of Registration ▼ _____

**5**

**DERIVATIVE WORK OR COMPILATION** Complete both space 6a and 6b for a derivative work, complete only 6b for a compilation
a Preexisting Material Identify any preexisting work or works that this work is based on or incorporates ▼

N/A

b Material Added to This Work Give a brief, general statement of the material that has been added to this work and in which copyright is claimed ▼

N/A

**6**
a
b
See instructions before completing this space

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account
Name ▼             Account Number ▼
N/A                N/A

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent Name/Address/Apt/City/State/ZIP ▼

Warren Freedenfeld, AIA, President
Warren Freedenfeld & Associates, Inc
39 Church Street
Boston, MA 02116

Area code and daytime telephone number (617) 338-0050       Fax number (617) 426-2557
Email  warren@freedenfeld.com

**7**
a
b

**CERTIFICATION*** I, the undersigned, hereby certify that I am the
check only one ▶
☐ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☒ authorized agent of  Warren Freedenfeld & Associates, Inc
Name of author or other copyright claimant, or owner of exclusive right(s) ▲
of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge

Typed or printed name and date ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date
Warren Freedenfeld, AIA, President                   Date  21 Jan 2005

Handwritten signature (X) ▼
X _[signature]_

**8**

| Certificate will be mailed in window envelope to this address | Name ▼ Warren Freedenfeld, AIA |
| | Number/Street/Apt ▼ 39 Church Street |
| | City/State/ZIP ▼ Boston, MA 02116 |

YOU MUST:
• Complete all necessary spaces
• Sign your application in space 8
SEND ALL 3 ELEMENTS IN THE SAME PACKAGE:
1. Application form
2. Nonrefundable filing fee in check or money order payable to Register of Copyrights
3. Deposit material
MAIL TO:
Library of Congress
Copyright Office
101 Independence Avenue, S E
Washington, D C 20559-6000

**9**

17 U S C § 506(e) Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500

Rev August 2003—30,000   Web Rev June 2002   ⓔ Printed on recycled paper              U S Government Printing Office 2003-496-605/60,029

# EXHIBIT C

## TERMINATION AND MUTUAL RELEASE AGREEMENT
## BETWEEN GARDNER ANIMAL HOSPITAL AND
## WARREN FREEDENFELD & ASSOCIATES INC.

WHEREAS Michael P. McTigue, DVM, and Gardner Animal Hospital, collectively ("GAH") and Warren Freedenfeld & Associates Inc. ("WFA") had previously entered into an Owner and Architect Agreement dated 24 March 1998 ("Agreement"), for the provision of architectural services in connection with the Gardner Animal Hospital, located at 73 Eaton Street, Gardner, Massachusetts ("the Project"), and

WHEREAS the Schematic Design and partial Construction Drawings for such Project has been substantially completed, and

WHEREAS the parties desire to terminate their Agreement without the provision of any further services by WFA,

NOW THEREFORE, in consideration of the mutual agreements contained herein, the parties agree as follows:

1. The Agreement is terminated and the parties shall have no further obligations except as set forth in this Termination and Mutual Release Agreement.

2. Upon execution of this Agreement, GAH shall pay WFA Seven Thousand Five Hundred Dollars ($7,500.00) as final and total payment for all services provided and expenses incurred to date. This amount shall be in addition to all previous amounts paid by GAH and/or received by WFA.

3. GAH agrees not to use any of the work produced SOLELY UP(W) by WFA. Article 6 of the Owner and Architect Agreement shall remain in full force and affect.

4. GAH and WFA agree to release each other of and from all loss, expense, claim, or action of any kind arising at any time from this date forward, whether arising out of the Agreement or otherwise, intending thereby to give each other a general release of all claims each may have against each other to date, and in the future, except as to the obligations under this Termination and Mutual Release Agreement, which are not being released.

Executed as a contract under seal this **2ND** day of **SEP**, 1999.

Owner:

Gardner Animal Hospital
7 Pearson Boulevard
Gardner, MA  01440

By _____
Michael P. McTigue, DVM

Witness:
By _____
Name: Brian C Hurley DVM

Architect:

Warren Freedenfeld & Associates Inc.
39 Church Street
Boston, MA  02116

By _____
Warren Freedenfeld AIA, President

Witness:
By _____
Name:  Sasha A. Chanaka