UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

.                                                    CIVIL ACTION NO. 05 11573 RGS

_____
                                                    )
WARREN FREEDENFELD ASSOCIATES, INC.                 )
as successor in interest to WARREN FREEDENFELD      )
& ASSOCIATES, INC.,                                 )
                    Plaintiff,                      )
                                                    )
v.                                                  )
                                                    )
MICHAEL P. MCTIGUE, DVM individually and as         )
Trustee of THE MCTIGUE FAMILY TRUST,                )
NANCY A. MCTIGUE, as Trustee of  the                )
MCTIGUE FAMILY TRUST, BRIAN C. HURLEY, DVM,         )
GARDNER ANIMAL CARE CENTER, LLC                     )
d/b/a GARDNER ANIMAL HOSPITAL, EDWARD D.            )
CORMIER, ASSOCIATES INC., and BENNETT               )
BUILDING CORPORATION,                               )
                    Defendants.                     )
_____)

## OPPOSITION OF COUNTERCLAIM PLAINTIFF, MICHAEL MCTIGUE TO THE MOTION FOR SUMMARY JUDGMENT OF COUNTERCLAIM DEFENDANT, WARREN FREEDENFELD & ASSOCIATES, INC.

Now comes the Counterclaim Plaintiff, Michael McTigue ("McTigue") and

opposes the summary judgment motion of Counterclaim Defendant, Warrant Freedenfeld

Associates, Inc. ("Freedenfeld"). As grounds for this opposition, McTigue notes that:

1.  McTigue's counterclaim is based entirely on documents either created or signed

    by Freedenfeld, including a contract modification, that clearly shows that

    Freedenfeld converted McTigue's work, and breached McTigue's copyright rights

   to an architectural work; at the very least, the meaning and interpretation of the contract modification is a question of fact[1]

2. McTigue's counterclaim is further based upon the notion that Freedenfeld waived the right to argue ownership of the copyright by signing a contract modification that delineated McTigue's joint authorship. Attempts to argue to the contrary six years later and after consideration was accepted by Freedenfeld is barred by both estoppel and waiver.

3. the argument propounded by Freedenfeld is predicated, entirely, upon ignoring the contract modification, and presents, in reality, an interesting law review article, subject of which is what Freedenfeld's rights would have been had the contract not been modified. As a speculative document, the Motion for Summary Judgment has no merit and ought to be summarily rejected; and

4. Freedenfeld engages in the curious practice of misrepresenting the counterclaim, and then arguing that summary judgment is appropriate because there are no facts to support the claim that Freedenfeld has imagined. For example, McTigue does not claim that the copyright is invalid and he does not claim to be acting as an enforcer of the FTCA under 15 U.S.C. § 45 in Count II.

For the purposes of this motion, the record consists of:

1. the Counterclaim

2. the attachments to Freedenfeld's Motion for Summary Judgment

3. this Opposition Memorandum

4. the Affidavit of Michael McTigue

---

[1] Although McTigue believes the language is not ambiguous, and clearly cuts in favor of McTigue

As further grounds for this Opposition, McTigue further notes as follows:

## I.    NATURE AND STATUS OF PROCEEDINGS

The Plaintiff filed this suit on or about July 27, 2005 alleging that the Defendants in this lawsuit infringed on protected copyright rights. The Plaintiff also raised allegations of violations of the Lanham Act which are clearly ancillary to the copyright claims.

On or about February 9, 2006, this Court dismissed the copyright claims, leaving the sole Lanham Act claim to be adjudicated. The dismissal of the copyright claims effectively eliminated the Lanham Act claim as well, which has no legal basis.

Defendant Michael McTigue subsequently filed a Counterclaim bringing four causes of action—one for copyright infringement, another for violations of the Lanham Act based upon the conduct of Freedenfeld in engaging in unfair commercial competition with McTigue's intellectual property, a third for conversion and a fourth for unfair and deceptive trade practices under M.G.L. c. 93A.

Freedenfeld has moved for summary judgment, and McTigue now opposes that motion.

## II.    RELEVANT FACTS

For the purposes of this opposition, the only relevant facts are as follows:

1. The parties signed an AIA contract on or about March 24, 1998 under which Freedenfeld agreed to perform certain architectural work and the Gardner Animal Hospital agreed to pay for that work. Affidavit of McTigue, ¶2

2. Over the course of the project, the project became collaborative between Freedenfeld and Michael McTigue, with the end result being a jointly authored work. Affidavit of McTigue, ¶5

3. The relationship between the parties soured based upon Freedenfeld's failure to perform his work competently, and based upon his demands for funds to which he was not entitled. Affidavit of McTigue, ¶3

4. Gardner Animal Hospital intended to build its hospital without Freedenfeld, and intended to use that portion of the work which was jointly authored by McTigue. Affidavit of McTigue, ¶6

5. Section 9.5 of the AIA contract provided for contract modification, stating that it "may be amended only by written instrument signed by both Owner and Architect." Affidavit of McTigue, ¶7, referring to the contract attached by Freedenfeld to his moving papers.

6. On September 2, 1999, the Owner and the Architect modified the contract by executing a Termination and Mutual Release Agreement. Affidavit of McTigue, ¶¶4,7

7. Gardner Animal Hospital paid consideration of $7,500. Affidavit of McTigue, ¶¶4,7, referring to the contract modification attached by Freedenfeld to his moving papers.

8.  Freedenfeld executed a document that recognized joint authorship, in a paragraph in which it was noted that "GAH agrees not to use any of the work solely produced by WFA." The Agreement acknowledged that the work was not solely produced by Freedenfeld. Consequently, McTigue possessed a current interest in a written work, with all of the appurtenant rights with all rights that come from such ownership. Freedenfeld retained his right to defend his portion of the work under Article 6 of the AIA contract. Affidavit of McTigue, ¶¶7-10

9.  McTigue is a possessory owner of rights—the work which he jointly authored with Freedenfeld. Affidavit of McTigue, ¶¶7-10

10. Freedenfeld registered a copyright over the entire work, failing to identify his joint author, Michael McTigue. See, Copyright Application, attached to the moving papers of Freedenfeld.

11. Freedenfeld proceeded to sell McTigue's work as his own, and otherwise palmed-off McTigue's work as his own. Affidavit of McTigue, ¶11

12. Freedenfeld also appropriated the common law rights owned by McTigue, including the right to sue over use of the plans and specifications. Affidavit of McTigue, ¶11

III.    ARGUMENT

A.  BECAUSE THE PRIMARY ISSUE INVOLVED IN THE COUNTERCLAIM,
THE INTENT AND MEANING OF THE CONTRACT MODIFICATION, IS A
CLEAR QUESTION OF FACT FOR THE TRIER OF FACT, THE MOTION
FOR SUMMARY JUDGMENT MUST BE DENIED AS A MATTER OF LAW

It is well accepted that issues of contract interpretation are questions of fact for

the trier of fact. The Court has held that when the cause of action involves

> …a contract, the meaning of which must be drawn from various letters, reports of
> conversations, and actions by the parties, all considered in the circumstances
> surrounding the parties' actions,…the interpretation of a contract, the terms of
> which are disputed, is very much a matter of the intent of the parties who entered
> into that contract. Questions of intent are particularly inappropriate for summary
> judgment. Fitzsimmons v. Best, 528 F. 2d 692,695 (7th Cir. 1976)

The Counterclaim, at its heart, involves a modification to a contract. Under the

law, it is noted that "…parties must expressly or impliedly agree to a modification."

Sargent v. Tenaska, 914 F. Supp. 722,727 (D.Mass. 1996), citing A. Leo Nash Steel

Corp. v. Southern New England Steel Erection Co., Inc, 9 Mass.App.Ct. 377, 383-84

(1980). Further, the Court notes that "such modification requires valid consideration."

Sargent, 914 F.Supp. at 722, citing Tri-City Concrete Co. v. A.L.A. Const. Co, 343 Mass.

425,427 (1962).

This is not a case that is appropriate for summary judgment. The issue upon

which this case turns is an unambiguous valid contractual modification in which

Freedenfeld, in exchange for acknowledged consideration, confirmed and verified that

McTigue was a joint author of work subject to copyright protection. Indeed, the contract

modification could even be viewed as a bill of sale of copyright ownership defined in the

underlying contract.[2] Under either theory (strict modification or bill of sale), there are sufficient questions of fact to defeat the Motion for Summary Judgment.

The Court should take note that Freedenfeld goes to extraordinary extremes to mislead the court as to the intent and meaning of the contractual modification. Notwithstanding Freedenfeld's attempt to gloss over the subject, the contractual provision invoked in this dispute is the language of section 9.5 of the original contract, which states that "this Agreement may be amended only by written instrument signed by both Owner and Architect."

In fact, the contract modification was appended to Freedenfeld's moving papers. The particular document, consistent with section 9.5, was a written instrument, and it was signed by both the Owner and the Architect. Consistent with the law, the parties confirm consideration, which McTigue states he was not otherwise required to pay to Freedenfeld.

Nonetheless, Freedenfeld spends from the bottom of page 5 all the way to page 11 totally ignoring the effect and meaning of the contract modification. Instead, on page 6, Freedenfeld baldly proclaims that "the Termination specifically did not alter those rights and further provided that the Hospital was not to use "work solely produced by"

---

[2] See, John G. Danielson, Inc. v. Winchester-Conant Properties, Inc., 186 F.Supp. 2d 1, 11-13 (D.Mass. 2002). Even if Freedenfeld was the owner under the AIA Contract, Judge Young noted that "an author of a work subject to copyright protection, may, however, transfer copyright held in the work. Such transfer must be effectuated by operation of law or in writing through an instrument of conveyance or a note or memorandum of transfer." John G. Danielson, Inc., 186 F.Supp. 2d at 11.

Judge Young then went on to elaborate how a copyright interest may be transferred, writing: To determine whether this contract suffices as an instrument of conveyance "… the Court reads the contract provisions recited above using the following principles of copyright law and contract construction. First, transfer of ownership of the material protected by copyright law…does not itself, amount to transfer of copyright ownership….Second, 'even though a written instrument may lack the terms 'transfer' and 'copyright,' it still may suffice to evidence the author's and the transferee's mutual intent to transfer the copyright interest….Third, in construing a written agreement, courts must consider every phrase and clause in light of all the others in the instrument, which must consider every phrase and clause in light of all the others in the instrument, which must be considered as a workable and harmonious means for carrying out the intent of the parties." John G. Danielson, Inc., 186 F.Supp. 2d at 11.

Freedenfeld. McTigue agrees with that point—it confirms that some portion of the work was not solely produced by Freedenfeld.

On page 9, Freedenfeld makes the feeble argument that "the evidence of the parties' intent is clear, unqualified and controlling…" admitting that the intent, which is a question of fact, is relevant, and in dispute.

Thus, Freedenfeld attempts, on one hand, to ignore the modification, and on the other to claim that the modification was so clear that no question of fact exists. In fact, Freedenfeld is attempting to wish away an agreement he made, for which he received consideration to which he was not otherwise entitled.[3]

As the Affidavit of Michael McTigue notes, the document was not signed as drafted. Rather, the parties negotiated a particular and specific change, inserting the word "solely" with relation to the word "work." As McTigue further notes in his affidavit, McTigue required that the word be inserted, and he required that Freedenfeld initial the change in the document. Freedenfeld did so. The purpose of the contract modification was to clarify the rights and responsibilities of the parties to the work. Freedenfeld admitted in 1999 that the work was jointly authored. McTigue need not provide any further evidence of this admission against interest in 1999 than documents produced by Freedenfeld himself.

McTigue wholeheartedly believes that the modification is so clear that he will likely be awarded summary judgment at the close of discovery. However, under no

---

[3] It has long been a tenet of Massachusetts law that parties cannot rely upon courts to relieve them from "a bad bargain because the agreement may be foolish or improvident." Chamberlain & Burnham, Inc. v. Cohn, 261 Mass. 322,325 (1927) More recently, the Court has noted that "courts have traditionally declined to relieve a party from the terms of a contract merely because he made what he regards as a bad or uneven bargain." Hancock Bank and Trust Company v. Shell Oil Company, 365 Mass. 629 (1974).
This is precisely what Freedenfeld is asking the court to do-to unwind a valid contractual modification that he now regrets.

circumstances can Freedenfeld claim that the documents support his position as a matter of law. As a matter of law, the contract was modified, in writing, by consent of both parties, for consideration given.

Michael McTigue further states in his affidavit that the inclusion of the change of language had a very specific purpose—Freedenfeld was admitting that the "work," not the ideas or expression, but the *work*, was not solely Freedenfeld's work.

The language is not ambiguous. Freedenfeld gave up valuable rights in exchange for consideration, and then reneged on his agreement and infringed on the rights he vested in McTigue.

In his Memorandum of Law, section B, Freedenfeld mangles both the facts and law of this case. Freedenfeld is now twisting unambiguous language in a lawsuit in which he faces substantial liability for his infringement on McTigue's rights.

Freedenfeld's subsequent conduct in seeking copyright protection in work that was not his own, and exploiting the work in light of his knowing violation, constitutes infringement as a matter of law.

Freedenfeld seems to want the Court to ignore the modification, to undo a transaction that Freedenfeld apparently now regrets. But his wishes do not change the facts of this case, they do not modify the clear law of the Commonwealth and they, emphatically, do not justify summary judgment in this case.

The Motion for Summary Judgment must be DENIED.

B.  MCTIGUE'S CONVERSION CLAIM AND 93A CLAIM ARE NOT BARRED
    BY THE FEDERAL DOCTRINE OF PREEMPTION

As with the main argument in the Motion for Summary Judgment, Freedenfeld
engages in the novel practice of rewriting the Counterclaim as he wishes it had been
drafted, and then argues that the Counterclaim, as he wishes it had been drafted, should
be the subject of summary judgment. Unfortunately for Freedenfeld, reality clashes with
this practice. His argument, for example, contains this statement worthy of Yogi Berra.
For example, he cites that McTigue does not claim possession of something subject to
copyright, "but rather asserts joint ownership." In the same way, Freedenfeld would
argue that McTigue said the sky was blue, when it was, in fact, cerulean.

In addition, Freedenfeld fails to fully cite a relevant case holding that dramatically
alters and undermines his own argument.  John G. Danielson, Inc. v Winchester-Conant
Properties, Inc. et al, 186 F.Supp.2d 1 (D.Mass. 2002) specifically addresses conversion
and preemption.  Freedenfeld only cites one small portion that claims to support the
notion of broad preemption. However, John G. Danielson, Inc. contains a more nuanced
discussion that favors McTigue.[4] The Court in that case noted "with respect to the state
law tort of conversion, the general rule is that 'conversion…relates to interference with
tangible rather than intangible property, and hence, should be held to be immune from
preemption'…Oddo v. Ries, 743 F.2d. 630,635 (9th Cir. 1984)(holding that a conversion
claim based on unlawful physical possession by defendant of copies of plaintiff's
software was not preempted by federal copyright law) " John G. Danielson, Inc. 186
F.Supp.2d at 28. The Court goes on to note that "[i]n Massachusetts, conversion focuses

---

[4] In fact, the sections on conversion were specifically drafted with the language of John G. Danielson, Inc.
in mind, and the Counterclaim was specifically pled to survive the challenge now before the Court.

on the wrongful possession of personal property of the owner, without the owner's consent." <u>John G. Danielson, Inc</u>, 186 F.Supp.2d at 28

The Court then goes on to note that pre-emption would exist "if contrary to the usual view of conversion, it is regarded as encompassing unauthorized reproductions, then the rights created are indeed 'equivalent to copyright, and the state law is preempted.". <u>John G. Danielson, Inc</u>, 186 F.Supp.2d at 28

Most importantly for the case at bar, the Court concludes as follows: "[w]hether a conversion claim is ultimately preempted depends on how the claim is pled, and on the facts that support the claim." <u>John G. Danielson, Inc.</u>, 186 F.Supp.2d at 28. Thus, the analysis of whether a claim for conversion exists, and whether it is preempted, is a question of fact, not law.

McTigue claims joint authorship of a physical, tangible work, based upon a writing signed by Freedenfeld. He was entitled to possessory and physical possession of that work. Freedenfeld was not. McTigue was entitled to all of the rights that accompany the possessory right to the work.

The Counterclaim was specifically drafted to draw a distinction between the two separate causes of action, and he has pled them distinctly.

In the first instance, McTigue has a claim for copyright infringement. He is the joint author of the work which was registered with the Copyright Office. Freedenfeld acknowledged that the Work was jointly authored in the Termination Agreement, yet he filed for copyright registration as sole author. He then proceeded to use the copyrighted material for personal profit in the area of architecture, apparently using McTigue's work

for commercial benefit. This cause of action is guided by the federal copyright statute, and McTigue seeks statutory damages for each violation of federal law.

The second cause of action does not involve intangible rights under federal law. The second cause of action involves what Freedenfeld did with the tangible property, the actual work, that does not involve the unlawful use of McTigue's intangible rights. The second cause of action involves the use of the plans, unlawfully held, in filing lawsuits against other veterinarians, and otherwise litigating claims against other veterinarians for use of McTigue's work, and otherwise enriching himself through conversion of the written work to his own benefit to reap gains that were outside the realm of federal copyright law.[5]

The application to the Copyright Office, which Freedenfeld himself has provided to this Court, shows a willful omission of his joint author on the forms and a willful and purposeful intent to convert the plans (physical property) to his own use.

Rather, McTigue is suing for the act of conversion, which Freedenfeld accurately states "that a defendant be proved to have 'intentionally or wrongfully exercised acts of ownership, control or dominion over personal property to which he has no right of possession at that time…'"[6] As the document filed with the Copyright Office clearly shows, Freedenfeld did just that, and he must pay for the consequences.

The consequences are damages that *are not* copyright damages, but rather distinct tort damages. McTigue seeks repayment and disgorgement of unlawfully received legal judgments and settlements, to which he is entitled, and which he will likely return to their

---

[5] Freedenfeld holds himself as being in the architecture business. As discovery will show, he is really in the business of setting up his clients and litigating against them. This lawsuit is not aberrational; Freedenfeld is poison to his customers, and has enriched himself by harassing litigation.

[6] It's not clear where this quote comes from, as Freedenfeld cites two cases. Nonetheless, McTigue accepts this formula.

lawful owners. The claim for conversion seeks to restore the status quo ante tort.

Copyright claims restore the value of the work itself.[7]

The two causes of action are not the same, and one does not pre-empt the other. The

acts are different—the copyright claim relates to the act of reselling the work. The

conversion claim relates to the act of falsely "enforcing" McTigue's claims and

fraudulently collecting judgments. When the facts are applied to the formula cited even

by Freedenfeld from <u>Henry v. National Geographic Society</u>, 147 F.Supp. 2d 16,20

(D.Mass. 2001), the frivolous nature of Freedenfeld's claim is glaringly revealed.[8]

Similarly, the claim under 93A is not preempted. The state cause of action is

unrelated, in its entirety, to the acts of infringement, and relate, instead, to the act of

identify theft for the purposes of false and frivolous lawsuits. Stealing one's property,

signing false agreements that the party has no right to respect, filing false lawsuits and

otherwise converting one's property are sufficiently egregious to warrant a claim under

93A.

Certainly, Freedenfeld has presented no basis for dismissing either the 93A claim or

the conversion claim. The Motion for Summary Judgment must be DENIED.


IV.    CONCLUSION


For the foregoing reasons, that the issue of contract interpretation is a question of fact,

that the cause of action for conversion is identified and disputed, that the cause of action

---

[7] Freedenfeld makes the odd argument that intellectual property is not subject to claims for conversion. He states no authority for such a proposition, and it is so lame an argument that it does not even warrant comment.

[8] What Freedenfeld has done is more accurately compared to identity theft. He has palmed himself off as McTigue in order to file false law suits. This is certainly distinct from copyright violations.

is not preempted by federal law and that McTigue has identified conduct which

constitutes violations of M.G.L. c. 93A which are not preempted, the Motion for

Summary Judgment must be DENIED

                                                  Respectfully Submitted,

                                                  Michael McTigue,

                                                  By his attorneys,

                                                  s/Robert N. Meltzer_____
                                                  The Mountain States Law Group
                                                  Robert N. Meltzer, BBO #564745
                                                  P.O. Box 1459
                                                  Framingham, MA 01701
                                                  Phone: (508) 872-7116

                                                  s/Mary C. Casey_____
                                                  Mary C. Casey, BBO #636250
                                                  Harbor Law Group
                                                  385 South Street
                                                  Shrewsbury, MA 01545
                                                  Phone: (508) 842-9244

Dated: October 12, 2006

<u>CERTIFICATE OF SERVICE</u>

I, Robert N. Meltzer, do hereby certify that on this day I have served the foregoing by providing a copy of the same by first class mail, postage prepaid, to:


Barry S. Scheer, Esq.
Parker Scheer, LLP
One Constitution Center
Boston, MA 02129

Stephen D. Rosenberg, Esq.
The McCormack Firm
One International Place
Seventh Floor
Boston, MA 02110

F. Joseph Gentili, Esq.
Capobianco & Gentili, PC
15 West Central Street
Natick, MA 01760

Robert D.City, Esq.
Michael J. Dissette, Esq.
City, Hayes & Dissette, PC
50 Congress Street
Boston, MA 02109

Robert A. McCall, Esq.
Peabody & Arnold, LLP
30 Rowes Wharf
Boston, MA 02110


s/Robert N. Meltzer_____


October 12, 2006

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

.                                                CIVIL ACTION NO. 05 11573 RGS

_____
                                                          )
WARREN FREEDENFELD ASSOCIATES, INC.                       )
as successor in interest to WARREN FREEDENFELD            )
& ASSOCIATES, INC.,                                       )
                Plaintiff,                                )
                                                          )
v.                                                        )
                                                          )
MICHAEL P. MCTIGUE, DVM individually and as               )
Trustee of THE MCTIGUE FAMILY TRUST,                      )
NANCY A. MCTIGUE, as Trustee of  the                      )
MCTIGUE FAMILY TRUST, BRIAN C. HURLEY, DVM, )
GARDNER ANIMAL CARE CENTER, LLC                           )
d/b/a GARDNER ANIMAL HOSPITAL, EDWARD D.                  )
CORMIER, ASSOCIATES INC., and BENNETT                     )
BUILDING CORPORATION,                                     )
                Defendants.                               )
_____)

### AFFIDAVIT OF MICHAEL MCTIGUE IN SUPPORT OF HIS OPPOSITION TO THE MOTION OF COUNTERCLAIM  DEFENDANT, WARREN FREEDENFELD FOR SUMMARY JUDGMENT

I, Michael P. McTigue do depose and swear as follows:

1. I am the Plaintiff in Counterclaim in this matter, and this affidavit is based upon my

personal knowledge.

2. I signed the contract with Warren Freedenfeld for design and construction drawings for

Gardner Animal Care Center, LLC d/b/a Gardner Animal Hospital.

3. By the time we terminated the contract, I was extremely dissatisfied with the work of

Warren Freedenfeld. He utterly refused to conform certain design features and elevations,

such as the roof line, to our design parameters. The design was also substantially above

budget, and was not acceptable.

4. By the time we terminated the contract in September , 1999, the designs, as they existed, consisted of three elements—my design input consisting of approximate number of rooms, type and placement of rooms, work flow for efficiency and to allow for superior patient care and medical viewing , elements of design that had been modified by Freedenfeld, and a portion, consisting mainly of external features such as exterior façade and roof design, that was solely the work of Freedenfeld.

5. I did not just contribute ideas; by the time the design drawings were created, the work, the flow and knowledge of my veterinary practice and my design research were my contributions and I  worked jointly with Freedenfeld to ensure that the drawings met my specification for internal design.

6. Even after Freedenfeld left the project, I intended to use my design portion for the hospital, and I had no intention of giving up what I had created and wanted and needed for my business just because Freedenfeld was leaving the project.

7. The Termination Agreement modified the contract to show the understanding at the time we canceled the contract, and it confirmed ownership of the work. The agreement memorialized that a portion of the work was solely mine, a portion was created jointly, and a portion was solely Freedenfeld's. Freedenfeld retained his ownership rights to the portion of the work that was solely his under paragraph 6 of the contract, and I retained the ownership rights in my portion and the ownership rights in the balance was jointly owned..

8. I do not understand Freedenfeld's contention that my subsequent use constituted a license. I did not license any of the work from this project; I owned my portion.  I did not seek to use the work solely created  by Freedenfeld, nor did I use the work solely created

by Freedenfeld. The agreement reflected there was work that was jointly authored and I would not lose my right to use that work or to even use the work in any way I saw fit . My goal was to be rid of Freedenfeld and to not have to deal with him again.

9. I paid money for the contract modification. I did not believe I owed money to Freedenfeld under the original contract. I paid to clarify and confirm the ownership rights under the contract.

10. The word "solely" was intentionally placed to modify the rights to the "work." It did not reflect some notion of just the "ideas." I am the one who insisted on this, and I made sure that Freedenfeld understood this, and I made sure that Freedenfeld initialed the change so that there would be no doubt and so that he wouldn't later argue that the word choice was ambiguous or contrary to our intent.

11. I proceeded to act in accordance with my ownership rights in building the hospital. I was surprised to learn that Freedenfeld, after having explicitly made an agreement with me that was fully understood, proceeded to take my work and copyright my work without paying me or otherwise respecting my exclusive rights to the work.


Sworn under the pains and penalties of perjury this __ day of October, 2006.


s/Michael McTigue

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

.                                             CIVIL ACTION NO. 05 11573 RGS

_____

)
WARREN FREEDENFELD ASSOCIATES, INC.         )
as successor in interest to WARREN FREEDENFELD )
& ASSOCIATES, INC.,                         )
              Plaintiff,                    )
                                            )
v.                                          )
                                            )
MICHAEL P. MCTIGUE, DVM individually and as )
Trustee of THE MCTIGUE FAMILY TRUST,        )
NANCY A. MCTIGUE, as Trustee of  the        )
MCTIGUE FAMILY TRUST, BRIAN C. HURLEY, DVM, )
GARDNER ANIMAL CARE CENTER, LLC             )
d/b/a GARDNER ANIMAL HOSPITAL, EDWARD D.     )
CORMIER, ASSOCIATES INC., and BENNETT       )
BUILDING CORPORATION,                       )
              Defendants.                   )
_____)

**L.R. 56.1 CONCISE STATEMENT IN SUPPORT OF THE
OPPOSITION OF COUNTERCLAIM PLAINTIFF, MICHAEL MCTIGUE TO
THE MOTION FOR SUMMARY JUDGMENT OF COUNTERCLAIM
DEFENDANT, WARREN FREEDENFELD & ASSOCIATES, INC.**

Now comes the Counterclaim Plaintiff, Michael McTigue ("McTigue")

and identifies the material facts of record as to which it is contended that there exists a

genuine issue to be tried

I.      PLAINTIFF'S FACTS

For the purposes of this opposition, the only relevant facts are as follows:

1. The parties signed an AIA contract on or about March 24, 1998 under which Freedenfeld agreed to perform certain architectural work and the Gardner Animal Hospital agreed to pay for that work. Affidavit of McTigue, ¶2

2. Over the course of the project, the project became collaborative between Freedenfeld and Michael McTigue, with the end result being a jointly authored work. Affidavit of McTigue, ¶5

3. The relationship between the parties soured based upon Freedenfeld's failure to perform his work competently, and based upon his demands for funds to which he was not entitled. Affidavit of McTigue, ¶3

4. Gardner Animal Hospital intended to build its hospital without Freedenfeld, and intended to use that portion of the work which was jointly authored by McTigue. Affidavit of McTigue, ¶6

5. Section 9.5 of the AIA contract provided for contract modification, stating that it "may be amended only by written instrument signed by both Owner and Architect." Affidavit of McTigue, ¶7, referring to the contract attached by Freedenfeld to his moving papers.

6. On September 2, 1999, the Owner and the Architect modified the contract by executing a Termination and Mutual Release Agreement. Affidavit of McTigue, ¶¶4,7

7. Gardner Animal Hospital paid consideration of $7,500. Affidavit of McTigue, ¶¶4,7, referring to the contract modification attached by Freedenfeld to his moving papers.

8. Freedenfeld executed a document that recognized joint authorship, in a paragraph in which it was noted that "GAH agrees not to use any of the work solely produced by WFA." The Agreement acknowledged that the work was not solely produced by Freedenfeld. Consequently, McTigue possessed a current interest in a written work, with all of the appurtenant rights with all rights that come from such ownership. Freedenfeld retained his right to defend his portion of the work under Article 6 of the AIA contract. Affidavit of McTigue, ¶¶7-10

9. McTigue is a possessory owner of rights—the work which he jointly authored with Freedenfeld. Affidavit of McTigue, ¶¶7-10

10. Freedenfeld registered a copyright over the entire work, failing to identify his joint author, Michael McTigue. See, Copyright Application, attached to the moving papers of Freedenfeld.

11. Freedenfeld proceeded to sell McTigue's work as his own, and otherwise palmed-off McTigue's work as his own. Affidavit of McTigue, ¶11

12. Freedenfeld also appropriated the common law rights owned by McTigue, including the right to sue over use of the plans and specifications. Affidavit of McTigue, ¶11

II.     REPLY TO THE DEFENDANT IN COUNTERCLAIM'S CONCISE

STATEMENT

1.  Admitted

2.  The contract speaks for itself

3.  The contract speaks for itself

4.  The contract speaks for itself

5.  The contract speaks for itself

6.  The contract speaks for itself

7.  The contract speaks for itself

8.  The contract speaks for itself

9.  Admitted

10. Admitted

11. Admitted

12. Denied. Affidavit of McTigue, ¶¶4,7. To the extent that Freedenfeld uses

the word "transcribed," this does not affect the law of joint authorship, just

as the typist does not hold sole copyright rights merely by tapping the

keyboard. Thus, this "fact" is without legal foundation and should be

stricken as a matter of law.

13. Admitted. However, as the Affidavit of McTigue ¶¶4,7, Freedenfeld

committed fraud and conversion by filing a knowingly false registration.

Respectfully Submitted,

Michael McTigue,

By his attorneys,


s/Robert N. Meltzer
The Mountain States Law Group
Robert N. Meltzer, BBO #564745
P.O. Box 1459
Framingham, MA 01701
Phone: (508) 872-7116


s/Mary C. Casey
Mary C. Casey, BBO #636250
Harbor Law Group
385 South Street
Shrewsbury, MA 01545
Phone: (508) 842-9244


Dated: October 12, 2006

<u>CERTIFICATE OF SERVICE</u>

I, Robert N. Meltzer, do hereby certify that on this day I have served the foregoing by providing a copy of the same by first class mail, postage prepaid, to:


Barry S. Scheer, Esq.
Parker Scheer, LLP
One Constitution Center
Boston, MA 02129

Stephen D. Rosenberg, Esq.
The McCormack Firm
One International Place
Seventh Floor
Boston, MA 02110

F. Joseph Gentili, Esq.
Capobianco & Gentili, PC
15 West Central Street
Natick, MA 01760

Robert D.City, Esq.
Michael J. Dissette, Esq.
City, Hayes & Dissette, PC
50 Congress Street
Boston, MA 02109

Robert A. McCall, Esq.
Peabody & Arnold, LLP
30 Rowes Wharf
Boston, MA 02110


s/Robert N. Meltzer_____


October 12, 2006