UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

.                                                                                 CIVIL ACTION NO. 05 11573 RGS

)
WARREN FREEDENFELD ASSOCIATES, INC.            )
as successor in interest to WARREN FREEDENFELD )
& ASSOCIATES, INC.,                            )
       Plaintiff,                              )
)
v.                                             )
)
MICHAEL P. MCTIGUE, DVM individually and as    )
Trustee of THE MCTIGUE FAMILY TRUST,           )
NANCY A. MCTIGUE, as Trustee of  the           )
MCTIGUE FAMILY TRUST, BRIAN C. HURLEY, DVM, )
GARDNER ANIMAL CARE CENTER, LLC                )
d/b/a GARDNER ANIMAL HOSPITAL, EDWARD D.       )
CORMIER, ASSOCIATES INC., and BENNETT          )
BUILDING CORPORATION,                          )
       Defendants.                             )
)

**REPLY BRIEF IN RESPONSE TO THE PLAINTIFF'S OPPOSITION TO THE MOTION OF DEFENDANTS MICHAEL MCTIGUE, NANCY A. MCTIGUE, AS TRUSTEE OF THE MCTIGUE FAMILY TRUST, BRIAN C. HURLEY, DVM AND GARDNER ANIMAL CARE CENTER, LLC  D/B/A/ GARDNER ANIMAL HOSPITAL FOR SUMMARY JUDGMENT PURSUANT TO F.R.C.P. 56(c)**

Now comes the Moving Defendants and Replies to the Opposition to the Motion for

Summary Judgment as follows:

A. THE PLAINTIFF HAS FAILED TO PROVIDE THE FORM OF ADMISSIBLE EVIDENCE NECESSARY TO DEFEAT THE MOTION FOR SUMMARY JUDGMENT

As is noted in the Motion for Summary Judgment, there is a total absence of admissible

evidence sufficient to defeat this motion for summary judgment.

At the time this motion was filed, the Moving Defendants had no inkling as what conduct allegedly gave rise to the claim under the Lanham Act.

Since the motion was filed, the Plaintiff has given some clues to its vague cause of action under the Lanham Act.

On November 8, 2006, in a letter as part of an ongoing meet and confer session, Plaintiff's counsel indicated that the cause of action accrued in November of 2004 when Gardner Animal Care Center mailed its contest entry to Veterinary Economics magazine, including Ed Cormier's plans for its facility. Ed Cormier was the architect who designed the building as it was built.

In the opposition to the Motion for Summary Judgment, the Plaintiff states that "the defendants removed the plaintiff's logos from the subject plans and caused them to be published in a national trade magazine without giving the plaintiff any credit whatsoever for their creation."

There is no dispute that Gardner Animal Care Center LLC sent the Cormier to Veterinary Economics magazine and that the magazine printed these plans. However, these plans were not created by Freedenfeld. They were Cormier's plans.

Thus, under Freedenfeld's theory, even if valid, Freedenfeld need only produce two documents:

1. his plans showing his "logo" on the plans
2. a copy of Veterinary Economics magazine showing *the same plans* without the logo

The first document is, apparently, under the control of Freedenfeld. The second is a matter of public record. Freedenfeld failed to produce these two documents which would, clearly, be the type of admissible evidence necessary to show the Court the existence of a cause of action. His failure to do so fatally defeats his opposition by entirely undercutting his argument, and leaving

him with nothing but self-serving and inadmissible statements which would be inadmissible as evidence.

Finally, Freedenfeld has failed to address a primary issue in his Opposition. The Motion for Summary Judgment was brought by a group of moving defendants, including Brian Hurley and both McTigues. However, the act now identified (sending the plans to Veterinary Economics) was an act of Gardner Animal Care Center, not the other defendants. Thus, even if Freedenfeld had provided evidence that identical plans, minus his logo, had been submitted, and even if Freedenfeld could surmount his lack of standing to bring this suit under the Nevyas holding, the Court *must* dismiss all remaining counts against Michael McTigue, Nancy McTigue and Brian Hurley as a matter of law.

Thus the Motion for Summary Judgment must be ALLOWED

B.  THE PLAINTIFF MISSTATES THE HOLDING AND SIGNIFICANCE OF NEVYAS, THE GUIDING CASE LAW IN THIS LAWSUIT

The Plaintiff's attempt to diminish the significance of the Nevyas holding must fail based upon a reading of that decision.[1] Nevyas increasingly represents the trend in Lanham Act litigation in shrinking the broad protections afforded to consumers under the Lanham Act. Nevyas specifically notes that the Third Circuit is joining the Second Circuit in its shrinkage of standing under the Lanham Act.  The mere fact that the First Circuit has not yet handed down an identical holding is irrelevant. The First Circuit has also not contested the holding of Nevyas.

---

[1] The Plaintiff tries to imply that Nevyas is just a defamation case. It clearly is not. It's holding pertaining to the Lanham Act broadly construes liability to those engaged in commercial activity as a competitor

Since <u>Nevyas</u> is a holding of a federal court, deciding federal law, there is no basis to demean its holding or to claim its lack of applicability.[2]

Interestingly enough, the <u>Nevyas</u> case specifically recognizes that <u>Thorn v. Reliance Van Co., Inc.</u> 736 F.2d 929 (3rd Cir. 1984), relied upon by the Plaintiff, was effectively overturned by <u>Serbin v. Ziebart International Corp., Inc</u>. 11 F.3d 1163 (3rd Cir. 1993). The Plaintiff indicates that he has *read* <u>Nevyas</u>. However, the Plaintiff's insistence on citing <u>Thorn,</u> which is no longer good case law, strongly suggests that the Plaintiff has not *understood* <u>Nevyas</u>.

The <u>Nevyas</u> case is not distinguishable from the case at bar, as the Plaintiff attempts to argue. <u>Nevyas</u> takes the position that even to bring a cause of action under the Lanham Act a party must demonstrate competitive harm or suffer the ignominy of dismissal under Rule 12(b)(6). If there is no commercial competition, and was not made "…for the purpose of influencing consumers to buy defendants' goods or services…" the suit will fail. <u>Nevyas v. Morgan</u>, 309 F.Supp. 2d 673,680 (E.D. Penn. 2004)

<u>Nevyas</u> is good law, well respected and precedential, and the most recent holding on the state of the law of the Lanham Act. It is dispositive of the case at bar, such that the Motion for Summary Judgment should be ALLOWED.

C. THE PLAINTIFF HAS PROVIDED A SUBSTANTIAL BODY OF IRRELEVANT CASE LAW THAT MUST BE DISREGARDED BY THIS COURT

In his Opposition, the Plaintiff devotes four pages to absolutely irrelevant or overturned case law, often veering off into a baffling discussion of trademark law that has absolutely no applicability to the case at bar.

---

[2] Just as the 2nd Circuit is well-respected for its decisions and banking, the 3rd Circuit is eminently respected for its decisions in intellectual property. Since both the Second and Third Circuit have taken the position identified in <u>Nevyas</u>, it is inevitable that the First Circuit will follow.

Most of the cases cited by the Plaintiff involve specific violations of trade and service marks, often marks that are subject to federal trademark registration. The balance of the cases which refer to the Lanham Act and standing to sue, never deal directly with the facts in the case at bar. The result is a confusing mélange of case law that reads like a law review article on unrelated and disjoined theories of trademark law.

Most importantly, the Plaintiff rarely mentions the holdings of the cases, the facts which were relevant or how the law applies to the facts of this case, the formula for legal analysis taught to first year law students.

A brief analysis of each case demonstrates the irrelevance of the cases cited.

The Plaintiff completely fails to identify both the context and the applicability of <u>Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, LTD</u>, 467 F.Supp. 366 (S.D. N.Y 1979).[3] The Plaintiff cites from page 374 of that holding for the proposition that "[t]here is no requirement that the defendant's services or product be in direct competition with, or be of the same type as, the product or service of the plaintiff. The owner of a service mark or trademark basically has the right, as far as commercial exploitation is concerned, to have that mark associated with his services and goods, rather than with the service or goods of another person. This is true whether or not the party who misappropriates the mark deals in competing or non-competing service or goods." This is a true statement of the law. It also has no applicability to this lawsuit.

First, this statement only applies to the owner of a service mark or trademark, which does not exist here; property rights to the Gardner Animal Care Center plans (which are different from

---

[3] In almost each case cited, the Moving Defendants do not disagree with the principles of law cited. Rather, the Moving Defendants are baffled by the inclusion of these cases and the bizarre statement that "no doubt the Court has to wonder how the Hospital Defendants could have overlooked the overwhelming weight of authority that is directly inapposite to their overreaching interpretation of <u>Reyvas</u> (sic)." The answer to the question is the <u>Nevyas</u> applies to this case, and the vast bulk of cases cited by the Plaintiff are entirely irrelevant.

the work registered by Freedenfeld), if any, may belong to Ed Cormier, not Freedenfeld, and they are not marks subject to ownership under trademark law.

Second, the law still stands for the proposition that the use of the "mark" must be in furtherance of trade or commerce to be actionable under the Lanham Act.

Third, even the statement of the law cited by the Plaintiff explicitly recognizes that a party subject to trademark infringement under this principle must be attempting to reap financial reward in his or her line of business as a result of the goodwill created in that mark through confusion by the use of the mark. As Dallas Cowboys Cheerleaders, Inc. makes clear, the violation occurs when a party uses the confusion he creates to suggest a connection between the goods and services of the plaintiff and the Defendant. In Dallas Cowboys Cheerleaders, Inc. the defendant was exploiting the trademarked appearance of the Dallas Cowboys Cheerleaders in a pornographic film in order to gain financial reward by suggesting a connection between the two companies.

None of this has any relevance to the case at bar. In the case at bar, the Moving Defendants submitted Cormier's as-built drawings for a veterinary hospital to a veterinary magazine and correctly identified the drawings as plans *created by Edward Cormier*. The Defendants are individuals who work as veterinarians, a trustee of a realty trust which owns the land upon which the animal hospital is located, and the hospital itself. The submission of the plans to Veterinary Economics magazine was not for profit and not in the furtherance of trade or commerce and it did not infringe upon any trade or service mark of the Plaintiff.[4]

Finally, Dallas Cowboys Cheerleaders, Inc. in entirely consistent with Nevyas, cited by the Moving Defendants and which was handed down twenty-five years after Dallas Cowboys

---

[4] Of course, even if the plans were the same, there would be no violation of the law caused by the use of the plans for a "show and tell" usage in an industry trade magazine under fair usage doctrine.

Cheerleaders, Inc.. Nevyas is the guiding case for dictating that no cause of action exists under the Lanham Act in circumstances such as are presented in the case at bar.

The Plaintiff then cites American Automobile Association v. AAA Insurance Agency, Inc., 618 F.Supp. 787 (W.D. Texas 1985), another case, like Dallas Cowboys Cheerleaders, Inc. which rest entirely about the law of infringement of registered trademarks and confusion sowed by use of the mark. However, the Court defines the potential of confusion to be defined as something that "suggests an affiliation or connection with a trademark owner, or that causes a likelihood of confusion as to sponsorship or endorsement…" American Automobile Association, 618 F.Supp. at 791. In short, in both Dallas Cowboys Cheerleaders, Inc. and American Automobile Association, the actionable conduct is an act of commission, not omission, and each involves a trademark. These conditions do not exist at the case at bar, such that the case law cited by the Plaintiff must be disregarded.

The Plaintiff cites Thorn v. Reliance Van Co., Inc. 736 F.2d 929 (3rd Cir. 1984) in its Opposition, but, apparently, only for the purpose of stating the text of the Lanham Act. The text of the Lanham Act is not in dispute. The Plaintiff seems to cite the Lanham Act text from Thorn for its reference to "non-competitors, those who believe they are damaged by false representations…" Again, the Moving Defendants do not quibble with this definition. Dallas Cowboys Cheerleaders, Inc. presents an example of a Lanham Act suit brought by non-competitors. Thorn, which was decided in 1984, did not change the law, did not define the law, and did not represent a fact pattern that has any relevance to this suit. Thorn involves a claim brought by an investor in a moving company, a commercial context which involved commercial advantage. Again, the case has no relevance to the case at bar. And, as noted, Thorn is not even good law any longer.

The Plaintiff also cites <u>Smith v. Montoro</u>, 648 F. 2d 602 (9th Cir. 1981), a case which has absolutely no relevance to the case at bar. Smith, again, requires that some form of commercial activity transpire which affects the business of the complaining party. In <u>Smith</u>, the Defendant exploited the service mark of the Plaintiff for its own benefit, again in a trademark context. The <u>Smith</u> case hinged upon the fact that the Defendant specifically used the plaintiff's mark in a manner which caused confusion. The <u>Smith</u> case still required that the plaintiff in that case have a service mark that was subject to trademark protection; the plaintiff had to own the mark in order to have standing.

In trying to analogize between the case at bar and <u>Smith</u>, The Plaintiff makes the rather odd statement that "the defendants removed the plaintiff's logos from the subject plans and caused them to be published in a national trade magazine without giving the plaintiff any credit whatsoever for their creation."[5] However, in the case at bar, the Plaintiff did not own the plans; the plans submitted were plans created by Ed Cormier, not Freedenfeld. Freedenfeld did not create these plans as published in the magazine, and provides no evidence to this Court that he has done so. Freedenfeld also had no right to plans which he did not create. Finally, since the Moving Defendants did not create the plans which were submitted to Veterinary Economics magazine, there is no cause of action against them. There is simply no basis for the bald statement that the Moving Defendants (all of them? One big eraser?) removed a logo, or had any ability to do so.

---

[5] As noted above, the Plaintiff has not provided any evidence of the existence of admissible evidence that would warrant rejection of a well pled motion for summary judgment. In the case at bar, the Plaintiff, if he is being truthful about this statement, should easily have been able to defeat this motion for summary judgment by presenting to the Court the drawing with his logo, and the published magazine article (which he has) without the logo. He has not done so. He cannot do so. The statement in the Smith case is therefore a bald assertion of fact without any basis in admissible evidence, and should not be considered as a "fact"

The Plaintiff is simply wrong in his analysis, attempting to argue backward from the holding, rather than forward from the reasoning tendered by the Court itself. <u>Smith</u> is standard trademark law, and has no applicability in the case at bar. Thus, the cited law has no relevance and should be disregarded.

Finally, as noted, it is unlikely that <u>Smith</u> retains any relevance at this time, as the law underpinning its holding is now seriously suspect.

The case law cited by the Plaintiff is outdated and irrelevant and does not reflect the current state of the law. Even if it did reflect the state of the law, it provides no remedy for Freedenfeld, who cannot demonstrate, and has presented no admissible evidence of, false statements, misrepresentations or fraud, or any evidence of "logo removal" and the Motion for Summary Judgment must be ALLOWED.

### D. THE PLAINTIFF'S REFERENCE TO THE COUNTERCLAIM IS BAFFLING AND IRRELEVANT

The Moving Defendants fail to understand the portion of the Opposition which refers to the Counterclaim, and which "reeks of direct competition…" and which has "hypocrisy" which is "self-evident."

Either the Plaintiff does not understand his own lawsuit, or he is misleading the Court.

It is now known that the Plaintiff bases his Lanham Act claim on an act in 2004 during which time Gardner Animal Care Center LLC sent Cormier's plans for the hospital to Veterinary Economics magazine. The claim is based upon a document not created by Freedenfeld, and the Moving Defendants argue in their Motion for Summary Judgment that the claim lacks any merit under any circumstances.

The Counterclaim is based upon an entirely different set of facts and documents. The Counterclaim revolves around the architectural plans jointly authored and admittedly jointly authored between Michael McTigue and Warren Freedenfeld, not the Cormier plans. In the Counterclaim, Freedenfeld admitted to joint authorship of valuable architectural work but deleted McTigue's authorship. Further, Freedenfeld then took the valuable architectural work owned by McTigue and used them in commerce. McTigue, as an owner of the work, had an ownership right that would permit him to use those plans, or sell them, as he wished. Thus, Freedenfeld undercut McTigue's rights to the work in commercial competition with McTigue. Nothing states that an individual must be an architect to be in commercial competition with an architect.

Indeed, it is not uncommon for owners of unique buildings to retain ownership of their plans, to sell or license or market as they see fit. Simply owning plans, with the ability to sell them, does not make one an architect. Equally, there is no support in the law for Freedenfeld's curious position that the ownership and sale of architectural work is not commerce, or that a non-architect cannot engage in the sale of such work. A non-architect cannot stamp plans and cannot hold himself out as an architect, but that is not what McTigue has done. However, by owning rights in architectural plans

The Counterclaim is distinguished by the fact that Freedenfeld engaged in commercial conduct undercutting the value of McTigue's commercial right to sell or use the work.

The Complaint is an attempt by Freedenfeld to hold a group of veterinarians liable for sending someone else's plans to a magazine.

There is no hypocrisy here. Freedenfeld violated traditional doctrines of false palming off under the Lanham Act. The claim against the Moving Defendants has no merit under the law. The cases involve different documents, different facts and different circumstances. The

Counterclaim is actionable under traditional doctrine. The Complaint is not actionable under any doctrine.

In addition, the entire discussion is irrelevant and should be disregarded by the Court.

For the foregoing reasons, the Motion for Summary Judgment must be ALLOWED

Respectfully Submitted,

The Moving Defendants

By their attorneys,

s/Robert N. Meltzer_____
The Mountain States Law Group
Robert N. Meltzer, BBO #564745
P.O. Box 1459
Framingham, MA 01701
Phone: (508) 872-7116


s/Mary C. Casey_____
Mary C. Casey, BBO #636250
Harbor Law Group
385 South Street
Shrewsbury, MA 01545
Phone: (508) 842-9244

Dated: November 17, 2006

Case 1:05-cv-11573-RGS    Document 75    Filed 11/28/2006    Page 12 of 15

CERTIFICATE OF COMPLIANCE WITH L.R. 7.1

      I, Robert N. Meltzer, do hereby certify that I advised opposing counsel of my intent to file the attached motion, and provided the Plaintiff with an opportunity to meet and confer by letter as to the issues at hand, or to assent to the motion to file a reply brief. Opposing counsel has declined to assent to the motion. I have attempted in good faith to address this issue with opposing counsel before filing this motion as required by LR 7.1

                                            s/Robert N. Meltzer

November 17, 2006

CERTIFICATE OF SERVICE

      I, Robert N. Meltzer, do hereby certify that on this day I have served the foregoing by providing a copy of the same by first class mail, postage prepaid, to:

Barry S. Scheer, Esq.
Parker Scheer, LLP
One Constitution Center
Boston, MA 02129

Stephen D. Rosenberg, Esq.
The McCormack Firm
One International Place
Seventh Floor
Boston, MA 02110

F. Joseph Gentili, Esq.
Capobianco & Gentili, PC
15 West Central Street
Natick, MA 01760

Robert D.City, Esq.
Michael J. Dissette, Esq.
City, Hayes & Dissette, PC
50 Congress Street
Boston, MA 02109

Robert A. McCall, Esq.
Peabody & Arnold, LLP
30 Rowes Wharf
Boston, MA 02110

                                              s/Robert N. Meltzer_____

November 17, 2006

Case 1:05-cv-11573-RGS   Document 75   Filed 11/28/2006   Page 15 of 15