THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05 11573 RGS

|  |  |
|---|---|
| WARREN FREEDENFELD ASSOCIATES, INC. as successor in interest to WARREN FREEDENFELD & ASSOCIATES, INC., Plaintiff, <br><br> v. <br><br> MICHAEL P. MCTIGUE, DVM individually and as Trustee of THE MCTIGUE FAMILY TRUST, NANCY A. MCTIGUE, as Trustee of the MCTIGUE FAMILY TRUST, BRIAN C. HURLEY, DVM, GARDNER ANIMAL CARE CENTER, LLC d/b/a GARDNER ANIMAL HOSPITAL, EDWARD D. CORMIER, ASSOCIATES INC., and BENNETT BUILDING CORPORATION, Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

**PLAINTIFF'S OPPOSITION TO THE EMERGENCY MOTION OF THE DEFENDANT GARDNER ANIMAL CARE CENTER, LLC d/b/a GARDNER ANIMAL HOSPITAL TO QUASH A DEPOSITION SUBPOENA SERVED ON DAN MCCARTY OR, IN THE ALTERNATIVE FOR A PROTECTIVE ORDER PURSUANT TO L.R. 37.1, F.R.CP. 33 AND F.R.C.P. 26 (c)**

In another effort to prevent the plaintiff from obtaining relevant discovery to

support the plaintiff's Lanham Act claim, the Gardner Animal Care Center ("GAH"), has

filed an emergency motion to quash the deposition subpoena directed to its project

planning consultant, Daniel J. McCarty.  The motion should be denied because it is

simply another tactic being employed by GAH to prevent the plaintiff from obtaining

information which may be detrimental to the defendant's position in the case.

As the Court knows, the Motion for Summary Judgment recently filed by GAH

and its principal, Michael McTigue ("McTigue") is the defendants' second attempt to

obtain a dismissal of the plaintiff's Lanham Act claim. The defendants' first attempt to dismiss the claim was heard on February 9, 2006 when the Court heard Motions to Dismiss. Despite the defendants' best efforts, the plaintiff's Lanham Act claim was allowed to stand. The only thing that has changed from the defendants' perspective since the Court ruled on the Motion to Dismiss is that McTigue on behalf of himself and GAH decided that he would engage in a calculated effort to thwart the plaintiff from prosecuting the Lanham Act claim by stonewalling on discovery.

Significantly, as the Court recalls, for more than six months, McTigue refused to produce any documents that were responsive to the plaintiff's First Request for Production of Documents and refused to supplement his answers to interrogatories. This was despite the fact the discovery directed to McTigue was reasonably calculated to lead to the discovery of admissible evidence relative to the plaintiff's Lanham Act claim. [1]

It was only after the Court ordered McTigue to produce the responsive documents and to supplement his interrogatories did he respond (although reluctantly after several months of subsequent negotiation between counsel). However, McTigue's responses are woefully inadequate. For example McTigue did not produce any of the project documents (no plans or contracts). Nor did he produce any correspondence between himself and the consultants that he hired to design and build the subject project (i.e. the plaintiff, Cormier, McCarty, Bennett). In fact, he did not produce and correspondence whatsoever. His answers to interrogatories are similarly inadequate. McTigue claims have no memory about any of the key events at issue in the case. See McTigue's Supplemental Answers to Interrogatories, attached hereto as **Exhibit A.**

---

[1] It should be noted that GAH, which is controlled by McTigue, has refused to produce and documents in this case.

Given McTigue's absolute refusal to provide any substantive discovery in the case whatsoever, the plaintiff has made efforts to gather information from McTigue's project consultants, including, McCarty, Cormier and Bennett.

Of significant interest, is a July 23, 1999 meeting that Cormier identified in his answers to the plaintiff's interrogatories. According to Cormier, the meeting took place at McCarty's offices and was attended by McCarty, Cormier, and McTigue. According, to Cormier, it was this meeting that McTigue told Cormier that he could use Freedenfeld's designs. Significantly, Cormier stated under the pains and penalties of perjury in his answer to Plaintiff's Interrogatory No. 2 that:

> On or about July 23, 1999, Edward Cormier attended a meeting with Dan McCarty, Michael McTigue and Walter Bennett at the office of McCarty Associates, Inc. *At that time, Cormier was advised by McTigue that Freedenfeld had been paid for his services, and that McTigue had the right to use the designs generated by Freedenfeld. In reliance upon these assurances, Cormier agreed to provide design services for the project*....

See Defendant, Edward D. Cormier Associates, Inc.'s Responses and Objections to Plaintiff's First Set of Interrogatories, attached hereto as **Exhibit B.**

McCarty is being deposed because he was witness to the statement made by McTigue to Cormier about use the plaintiff's designs. The plaintiff will prove that after this meeting, McTigue instructed Cormier to copy the plaintiff's architectural designs and submit them to the municipal planning board for approval. The copying had the intended effect of removing the plaintiff's logos from the original designs. As part of a scheme to disguise the fact that the designs were copied, Cormier made minor superficial changes to some aspects of the design and then placed his own logos on the copied plans.[2]

---

[2] It should be noted that in his responses to the Plaintiff's First Request for Production of Documents, Cormier produced copies of the plaintiff's plans with the plaintiff's logos "Warren Freedenfeld & Associates" thereon which contained handwritten notes made by either McTigue or Cormier referencing

It does not take an architectural expert to recognize that the "First Floor Plan" that the plaintiff created for the facility and which Cormier has admitted in this case was given to him by McTigue, is virtually identical to the "Main Level" plan contained on page 53 of the November 2004 *Veterinary Economics Magazine* article in all important aspects, including, but not limited to, the locations of the front vestibules and locations of the waiting area, medical records room, laundry room, food prep, consultation room, canine and feline exam rooms, surgery suite, doctor's work stations, surgery prep, treatment room, pharmacy, lab, canine hospital ward, feline/exotic hospital ward, storage rooms, and canine and feline boarding areas. [3]

McCarty is also being deposed because he would have knowledge about the events leading up to the publication of the plaintiff's designs in Veterinary Economics magazine since he was intimately involved in the project and worked closely with McTigue, Cormier, and Bennett. The plaintiff has a right to know what evidence McCarty has relative to the events leading up to publication of the subject article.

---

some of the superficial changes. Copies of theses marked up plans have been made available to the Hospital Defendants for inspection and copying.

[3]    GAH has attempted to mischaracterize the plaintiff's deposition testimony relative to the plan contained in the article. The plaintiff stated unequivocally at his deposition that the plan contained in the article is "virtually identical" to the plan that he created for the Gardner Animal Hospital Significantly, the plaintiff testified:

      Q.    ....Can you tell me..., what exactly McTigue did to "your drawings" for this hospital?

      Mr. McCall: Objection

      A.      He submitted drawings to "Veterinary Economics" magazine that was virtually identical to [Freedenfeld's] floor plans.

(Transcript page, 149).

By objecting to the taking McCarty's deposition, GAH is thwarting the plaintiff's discovery efforts and preparation for trial. Doubtless, the defendant is engaging in a classic stonewalling tactic which is contrary to the letter and spirit of the discovery rules which mandate full disclosure of all relevant facts prior to trial. This behavior should not be tolerated. If GAH (i.e. McTigue) is truly innocent of any wrongdoing, as it claims, the defendant should not be so worried about what McCarty has to say. The defendant's motivation for filing the motion the quash is obvious: the defendant does not want to McCarty to expose the weaknesses in the defendants' defenses

WHEREFORE, for the foregoing reasons, the Motion to Quash should be Denied.

Respectfully submitted

WARREN FREEDENFELD
ASSOCIATES, INC. as successor in
Interest to WARREN
FREEDENFELD & ASSOCIATES,
INC.,

By its attorneys,

/s/ Garrett J. Lee
Barry S. Scheer, BBO # 445100
Garrett J. Lee, BBO # 641876
PARKER│SCHEER LLP
One Constitution Center
Boston, MA 02129
(617) 886-0500
Email: bss@parkerscheer.com
        gjl@parkerscheer.com

Dated: January 18, 2007

5

## CERTIFICATE OF SERVICE

I, Garrett J. Lee, attorney for the plaintiff, Warren Freedenfeld Associates, Inc. as successor in interest to Warren Freedenfeld & Associates, Inc., hereby certify that on this 18th day of January, 2007 a true copy of the following was served on all counsel record:

**PLAINTIFF'S OPPOSITION TO THE EMERGENCY MOTION OF THE DEFENDANT GARDNER ANIMAL CARE CENTER, LLC d/b/a GARDNER ANIMAL HOSPITAL TO QUASH A DEPOSITION SUBPOENA SERVED ON DAN MCCARTY OR, IN THE ALTERNATIVE FOR A PROTECTIVE ORDER PURSUANT TO L.R. 37.1, F.R.CP. 33 AND F.R.C.P. 26 (c)**

By first-class mail postage pre-paid, addressed to:

Michael J. Stone,
Robert A. McCall
Peabody & Arnold LLP
30 Rowes Wharf
Boston, MA 02110

Robert N. Meltzer, Esq.
P.O. Box 1459
Framingham, MA 01701

Stephen D. Rosenberg
The McCormack Firm, LLC
One International Place
7th Floor
Boston, MA 02110

F. Joseph Gentili, Esq.
Capobianco & Gentili, PC
15 West Central Street
Natick, MA 01760

Robert D. City, Esq.
Michael J. Dissette, Esq.
City, Hayes & Dissette, PC
50 Congress Street
Boston, MA 02109
Mary C. Casey, Esq.
Harbor Law Group
385 South Street
Shrewsbury, MA 01545

/s/ Garrett J. Lee
Garrett J. Lee

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05 11573 RGS

| | |
|---|---|
| WARREN FREEDENFELD ASSOCIATES, INC. as successor in interest to WARREN FREEDENFELD & ASSOCIATES, INC., Plaintiff, <br><br> v. <br><br> MICHAEL P. MCTIGUE, DVM individually and as Trustee of THE MCTIGUE FAMILY TRUST, NANCY A. MCTIGUE, as Trustee of the MCTIGUE FAMILY TRUST, BRIAN C. HURLEY, DVM, GARDNER ANIMAL CARE CENTER, LLC d/b/a GARDNER ANIMAL HOSPITAL, EDWARD D. CORMIER, ASSOCIATES INC., and BENNETT BUILDING CORPORATION, Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

## SUPPLEMENTAL ANSWERS OF THE DEFENDANT, MICHAEL P. MCTIGUE, DVM TO THE PLAINTIFF'S INTERROGATORIES

Now comes the defendant, Michael P. McTigue, DVM, ("the Answering Defendant") and answers the Plaintiff's interrogatories as follows:

### INTERROGATORY NO. 1

Please state your full name, social security number, date of birth, country of birth, your

business address, your business phone number, your primary residential address and

phone number.

Answer 1 as supplemented: Michael P. McTigue, Manager, Gardner Animal Care Center, LLC, 73 Eaton Street, Gardner. I am a veterinarian for Gardner Animal Care Center, LLC. (978) 632-7110. I live at 2 Squire Road, Ashburnham.

## INTERROGATORY NO. 2

State in full detail your involvement in any of the following entities, including your role

as a trustee, shareholder, director, officer, and employee, specifying the dates between

which you served in each capacity, the hours worked, and identify all documents

concerning such employment or acts as a shareholder, director or officer, or trustee:

     a.     GAH;

     b.     Any other entity.

Answer 2: As a matter of public record, I am a manager of Gardner Animal Care Center,
LLC. The remaining questions have no any relevance to this lawsuit.

Supplemental Answer 2: I am also a Trustee of the McTigue Family Trust. I have been a
member of the hospital LLC since it was incorporated in May or June 2000. I have been a
Trustee since the trust was created in the early 1990's. I have no ability to calculate the
hours that I have worked on behalf of those entities in my various capacities. The only
documents I have in my possession are the declaration of trust, the deed of property to the
trust, the lease between the hospital and the trust, and the incorporation papers for the
LLC. My tax records also show the benefit I have received from these documents.

## INTERROGATORY NO. 3

Please state in detail how you came to be familiar with Warren Freedenfeld's work as an

architect, and identify the date when you first met Warren Freedenfeld or anyone from

his firm.

Answer 3: Objection. The Answering Defendant objects on the grounds that this question
is vague, unclear and unduly burdensome, and not reasonably calculated to lead to the
discovery of admissible evidence as required by F.R.C.P. 26.

Supplemental Answer 3: I first heard of him through Veterinary Economics Magazine
approximately twenty years ago. I first met him in early 1994.

## INTERROGATORY NO. 4

Please identify all persons or entities with whom you dealt with in connection with the

Project.

Answer 4: Objection. The Answering Defendant objects on the grounds that this question is vague, unclear and unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence as required by F.R.C.P. 26.

Supplementary Answer 4: I cannot answer this question, as the number of persons or entities involved in the construction of a complex veterinary hospital is too vast to recall. Also, after seven or eight years, I simply cannot recall the list of individuals or entities involved.

## INTERROGATORY NO. 5

If you or anyone on your behalf had any communication in any form, written or oral, with

The Publishers of Veterinary Economics Magazine or any person acting on its behalf

relating to or concerning any of the facts, events, occurrences or allegations set forth in

the Complaint, please state:

    a.    the specific date and time (if applicable) of each such communication;

    b.    the manner in which each such communication was made on each of the dates listed in your answer to subpart a. of this interrogatory, i.e., whether by telephone, letter, face-to-face conversation, etc.;

    c.    the name and address of all persons who engaged or in any way participated in each such communication listed in your answer to subpart a. of this interrogatory; and

    d.    in full and complete detail of the entire contents of each such communication made on each of the dates listed in your answer to subpart a. of this interrogatory, indicating what was said or communicated by each of the persons listed in your answer to subpart c.

If any of these communications were in written form, you may respond by attaching a

copy of such communications to your answers to these interrogatories.

Answer 5: Objection. The Answering Defendant objects on the grounds that this question is vague, unclear and unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence as required by F.R.C.P. 26.

Supplementary Answer 5: The hospital submitted a completed application for the hospital design competition in December of 2003.

## INTERROGATORY NO. 6

If you or anyone on your behalf had any communication in any form, written or oral, with

the U.S. Patent and Trademark Office or any person acting on its behalf relating to or

concerning any of the facts, events, occurrences or allegations set forth in the Complaint,

please state:

     a.    the specific date and time (if applicable) of each such communication;

     b.    the manner in which each such communication was made on each of the dates listed in your answer to subpart a. of this interrogatory, i.e., whether by telephone, letter, face-to-face conversation, etc.;

     c.    the name and address of all persons who engaged or in any way participated in each such communication listed in your answer to subpart a. of this interrogatory; and

     d.    in full and complete detail of the entire contents of each such communication made on each of the dates listed in your answer to subpart a. of this interrogatory, indicating what was said or communicated by each of the persons listed in your answer to subpart c.

If any of these communications were in written form, you may respond by attaching a

copy of such communications to your answers to these interrogatories.

Answer 6: Objection. The Answering Defendant objects on the grounds that this question is vague, unclear and unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence as required by F.R.C.P. 26.

Supplemental Answer 6: None

4

## INTERROGATORY NO. 7

If you or anyone on your behalf had any communication in any form, written or oral, with McCarty Associates, Inc. and/or Daniel J. McCarty or any person acting on their behalf relating to or concerning any of the facts, events, occurrences or allegations set forth in the Complaint, please state:

a.    the specific date and time (if applicable) of each such communication;

b.    the manner in which each such communication was made on each of the dates listed in your answer to subpart a. of this interrogatory, i.e., whether by telephone, letter, face-to-face conversation, etc.;

c.    the name and address of all persons who engaged or in any way participated in each such communication listed in your answer to subpart a. of this interrogatory; and

d.    in full and complete detail of the entire contents of each such communication made on each of the dates listed in your answer to subpart a. of this interrogatory, indicating what was said or communicated by each of the persons listed in your answer to subpart c.

If any of these communications were in written form, you may respond by attaching a copy of such communications to your answers to these interrogatories.

Answer 7: Objection. The Answering Defendant objects on the grounds that this question is vague, unclear and unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence as required by F.R.C.P. 26.

Supplemental Answer 7: There were communications related to the project on behalf of the hospital. I cannot recall specifics of the numerous conversations, which were too numerous to mention, all of which occurred prior to June of 2000. I mention a few in these interrogatories that I can recall because specific questions which have been asked have refreshed my recollection, but I cannot recall others generally.

## INTERROGATORY NO. 8

If you or anyone on your behalf had any communication in any form, written or oral, with Denis McLaughlin, III P.E or any person acting on his behalf relating to or concerning

5

any of the facts, events, occurrences or allegations set forth in the Complaint, please

state:

    a.    the specific date and time (if applicable) of each such communication;

    b.    the manner in which each such communication was made on each of the dates listed in your answer to subpart a. of this interrogatory, i.e., whether by telephone, letter; face-to-face conversation, etc.;

    c.    the name and address of all persons who engaged or in any way participated in each such communication listed in your answer to subpart a. of this interrogatory; and

    d.    in full and complete detail of the entire contents of each such communication made on each of the dates listed in your answer to subpart a. of this interrogatory, indicating what was said or communicated by each of the persons listed in your answer to subpart c.

If any of these communications were in written form, you may respond by attaching a

copy of such communications to your answers to these interrogatories.

Answer 8: Objection. The Answering Defendant objects on the grounds that this question is vague, unclear and unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence as required by F.R.C.P. 26.

Supplemental Answer 8: There were communications related to the project on behalf of the hospital. I cannot recall specifics of the numerous conversations, which were too numerous to mention, all of which occurred prior to June of 2000. I mention a few in these interrogatories that I can recall because specific questions which have been asked have refreshed my recollection, but I cannot recall others generally.

## INTERROGATORY NO. 9

Please identify the circumstances under which the Contract was terminated, and include:

    a.    your reasons for agreeing to terminate the Contract;

    b.    any outstanding balances billed by Freedenfeld under the Contract but not paid by the Hospital;

    c.    the reasons for refusing to pay Freedenfeld's invoices in total;

d.    the name and address of all parties involved in the termination of the Contract;

e.    the capacity in which all parties listed in subpart d. were involved; and

f.    your understanding of Article 6 of the Contract.


Answer 9: Objection. The Answering Defendant objects on the grounds that this question is vague, unclear and unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence as required by F.R.C.P. 26.

Supplemental Answer 9: The hospital terminated the contract because Freedenfeld utterly failed to perform its duties and was overbilling the hospital and otherwise not performing it work or earning the amounts claimed. I do not recall all of the details, most of which are found in the correspondence and termination agreement already attached by Freedenfeld to his various filings. Freedenfeld agreed to a reduced amount to be paid, which was paid. My understanding of Article 6 is that Freedenfeld would have copyright rights as to the portion of the work solely created by him. Freedenfeld acknowledged that Article 6 was limited when he initialed the termination agreement affirming joint copyright ownership rights in the balance of the work.


## INTERROGATORY NO. 10

Please identify all communication between you and Freedenfeld about the ownership, use, copyright, or disposition of the any of the design documents created by Freedenfeld relative to the Project or the Property and identify:

a.    the specific date and time (if applicable) of each such communication;

b.    the manner in which each communication was make on each of the dates listed in your answer to subpart a. of this interrogatory, i.e., whether by telephone, letter, face-to-face conversation, etc.;

c.    the name and address of all persons who engaged or in any way participated in each such communication listed in your answer to subpart a. of this interrogatory; and

c.    the full and complete detail of the entire contents of each such communication made on each of the dates listed in your answer to subpart a. of this interrogatory, indicating what was said or communicated by each of the persons listed in your answer to subpart c.

If any of these communications were in written form, you may respond by attaching a

copy of such communication to your answers to these interrogatories.

Answer 10: Objection. The Answering Defendant objects on the grounds that this
question is vague, unclear and unduly burdensome, and not reasonably calculated to lead
to the discovery of admissible evidence as required by F.R.C.P. 26.

Supplemental Answer 10: These communications took place seven years or eight years
ago and I cannot recall the details of meetings and conversations. Our understanding is
enshrined in the termination agreement, in which Freedenfeld acknowledged that I had
copyright ownership rights is the portion of the work that he did not solely create. We
signed an integrated agreement so that we would not have to recall conversations eight
years later.

## INTERROGATORY NO. 11

Please identify all communication between you and Cormier about the ownership, use,

copyright, or disposition of the any of the design documents created by Freedenfeld

relative to the Project or the Property and identify:

a.      the specific date and time (if applicable) of each such communication;

b.      the manner in which each communication was make on each of the dates
        listed in your answer to subpart a. of this interrogatory, i.e., whether by
        telephone, letter, face-to-face conversation, etc.;

c.      the name and address of all persons who engaged or in any way
        participated in each such communication listed in your answer to subpart
        a. of this interrogatory; and

d.      the full and complete detail of the entire contents of each such
        communication made on each of the dates listed in your answer to subpart
        a. of this interrogatory, indicating what was said or communicated by each
        of the persons listed in your answer to subpart c.

If any of these communications were in written form, you may respond by attaching a

copy of such communication to your answers to these interrogatories.

Answer 11: Objection. The Answering Defendant objects on the grounds that this question is vague, unclear and unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence as required by F.R.C.P. 26.

Supplemental Answer: I cannot recall precisely conversations that took place seven or eight years ago. I know that I showed Cormier the prior composite work, and pointed out the portions that were solely designed by Freedenfeld (specifically exterior elevations, roof lines and other worthless material). I made it clear that we could not use Freedenfeld's portion of the composite work, and we did not.

## INTERROGATORY NO. 12

Please identify all communication between you and Bennett about the ownership, use, copyright, or disposition of the any of the design documents created by Freedenfeld relative to the Project or the Property and identify:

  a.  the specific date and time (if applicable) of each such communication;

  b.  the manner in which each communication was make on each of the dates listed in your answer to subpart a. of this interrogatory, i.e., whether by telephone, letter, face-to-face conversation, etc.;

  c.  the name and address of all persons who engaged or in any way participated in each such communication listed in your answer to subpart a. of this interrogatory; and

  d.  the full and complete detail of the entire contents of each such communication made on each of the dates listed in your answer to subpart a. of this interrogatory, indicating what was said or communicated by each of the persons listed in your answer to subpart c.

If any of these communications were in written form, you may respond by attaching a copy of such communication to your answers to these interrogatories.

Answer 12: Objection. The Answering Defendant objects on the grounds that this question is vague, unclear and unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence as required by F.R.C.P. 26.

Supplemental Answer 12: None

## INTERROGATORY NO. 13

Please identify all communication between you and The Publishers of Veterinary

Economics Magazine about the ownership, use, copyright, or disposition of the any of the

design documents created relative to the Project or the Property and identify:

      a.  the specific date and time (if applicable) of each such communication;

      b.  the manner in which each communication was make on each of the dates
         listed in your answer to subpart a. of this interrogatory, i.e., whether by
         telephone, letter, face-to-face conversation, etc.;

      c.  the name and address of all persons who engaged or in any way
         participated in each such communication listed in your answer to subpart
         a. of this interrogatory; and

      d.  the full and complete detail of the entire contents of each such
         communication made on each of the dates listed in your answer to subpart
         a. of this interrogatory, indicating what was said or communicated by each
         of the persons listed in your answer to subpart c.

If any of these communications were in written form, you may respond by attaching a

copy of such communication to your answers to these interrogatories.

Answer 13: Objection. The Answering Defendant objects on the grounds that this
question is vague, unclear and unduly burdensome, and not reasonably calculated to lead
to the discovery of admissible evidence as required by F.R.C.P. 26.

Supplemental Answer 13. On these topics, none.

## INTERROGATORY NO. 14

Please state whether You gave any of the other defendants in this action the plans,

drawings, or other design documents created by Freedenfeld for the Project or the

Property and identify:

    a.     the title of each document;

b.      when such document was given to each of the defendants; and

c.      whether you ever notified Freedenfeld that you were providing such documents to the defendants or other parties relative to the Project or the Property and whether such notification was in oral or written form and the dates when such notification was given.

Answer 14: Objection. The Answering Defendant objects on the grounds that this question is vague, unclear and unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence as required by F.R.C.P. 26.

Supplemental Answer 14. I continue to object to the way this question is written. I showed Cormier the work that was jointly created, and pointed out my elements, as well as the useless elements from Freedenfeld that were scrapped. Freedenfeld did not need to be notified, as he had clarified the ownership in the termination agreement and I was not required to seek any kind of leave from Freedenfeld to use my own property.

## INTERROGATORY NO. 15

Please state whether you were named or covered under any policy of liability insurance effective on the date of the occurrence alleged in the Complaint and, if so, state the name of each such company, each such policy number, the effective period and the maximum liability limits for each such policy.

Answer 15: Objection. The Answering Defendant objects on the grounds that this question is vague, unclear and unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence as required by F.R.C.P. 26.

Supplemental Answer 15: I don't know the answer to this question. I do not know what incident supposedly gave rise to the Lanham Act claim. Since policies are year specific, I cannot provide an answer until the Plaintiff tells me what the act was that gave rise to the claim and when it occurred.

## INTERROGATORY NO. 16

Please identify all drawings, sketches, and plans that Freedenfeld produced under the

Contract that you had access to and state:

      a. what the access you had to such documents;

      b. the name, address and phone number of anyone else who had access to the documents;

      c. whether such access is ongoing or has been terminated;

      d. if such access has been terminated, how the access came to be terminated; and

      e. the disposition of all documents or copies of documents identified in subpart a. that you had access to or controlled.

Answer 16: Objection. The Answering Defendant objects on the grounds that this question is vague, unclear and unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence as required by F.R.C.P. 26.

Supplemental Answer 16: I don't know the answer to this question. Freedenfeld would have the plans and he controlled access to them. I believe that the hospital has composite plans and Cormier's plans, and may have earlier drafts. After seven or eight years, I simply can't answer this question in any greater detail.

### INTERROGATORY NO. 17

Please identify all design documents that you or other persons acting on your behalf created for the Project or the Property without Freedenfeld's input of assistance and the role that each such document played in City of Gardner's approval of the Project.

Answer 17: Objection. The Answering Defendant objects on the grounds that this question is vague, unclear and unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence as required by F.R.C.P. 26.

Supplemental Answer 17: Cormier designed the work that was ultimately performed, with several design elements that I had the legal right to use.

### INTERROGATORY NO. 18

Please state the name and address of each person whom you expect to call as a witness at the time of trial and include in your answer the anticipated subject matter of each such person's testimony.

Answer 18: The Answering Defendant has not yet determined what witnesses it intends to use, as it is unlikely this matter will proceed to trial. However, the Answering Defendant reserves the right to supplement this answer in a timely manner

Supplemental Answer 18. I still cannot answer this question and I continue to reserve my rights to answer in a timely manner.


**INTERROGATORY NO. 19**

If you expect to call an expert witness(es) at trial, please state:

    a. the name, business address and field of expertise of each such person;

    b. the subject matter on which each expert is expected to testify;

    c. the substance of the facts and opinions to which each expert is expected to testify; and

    d. a summary of the grounds for each such opinion.

Answer 19: The Answering Defendant has not yet determined what expert it intends to use, as it is unlikely this matter will proceed to trial. However, the Answering Defendant reserves the right to supplement this answer in a timely manner.

Supplemental Answer 19. I still cannot answer this question and I continue to reserve my rights to answer in a timely manner.


Sworn under the pains and penalties of perjury this 1st day of November, 2006

As to Objections,
The Answering Defendant,

By his attorneys,

Robert N. Meltzer, BBO #564745
P.O. Box 1459
Framingham, MA 01701
Phone: (508) 872-7116

13

Mary C. Casey, BBO #636250
Harbor Law Group
385 South Street
Shrewsbury, MA 01545
Phone: (508) 842-9244

Dated: November 1, 2006

## CERTIFICATE OF SERVICE

I, Robert N. Meltzer, do hereby certify that on this day I have served the foregoing by providing a copy of the same by first class mail, postage prepaid, to:

Barry S. Scheer, Esq.
Parker Scheer, LLP
One Constitution Center
Boston, MA 02129

Stephen D. Rosenberg, Esq.
The McCormack Firm
One International Place
Seventh Floor
Boston, MA 02110

F. Joseph Gentili, Esq.
Capobianco & Gentili, PC
15 West Central Street
Natick, MA 01760

Robert D.City, Esq.
Michael J. Dissette, Esq.
City, Hayes & Dissette, PC
50 Congress Street
Boston, MA 02109

Robert A. McCall, Esq.
Peabody & Arnold, LLP
30 Rowes Wharf
Boston, MA 02110



November 1, 2006
Dec 20

# Merrimak group

## FAX

**To:** BARRY

**From:** DAN GONYEA

**Fax:**

**Fax:** 508-302-4793

**Phone:**

**Phone:** 508-405-2605 x. 101

**Date:**

**Pages:** 2

**Subject:** New England Golf / Merrimak Group

**Notes:**

See ATTACHED

Dan

Corporate: 150 Speen Street • Framingham, MA 01701 • (508)405-2605 • (508)302-4793 Fax
NH Office: 112 Franklin Street • Rochester, NH 03867• (603) 369-3493 • (603) 369-3494 Fax
FL Office: 1661 Depot Street • Tampa FL 33602 • (813)-567-1548
www.Merrimakgroup.com

- 2 seats on the board for Rob and Kellie agreed
- 40% ownership in NEGO, Inc. Merrimakgroup will provide a tremendous amount of key personnel and financial resources to grow the company to a multi-million dollar organization (25% ownership for Rob S. seems to be a fair amount considering the company's valuation today) – Can this be 30%? yes
- Board member salary for Rob Snyder = $40K year 1 (paid quarterly), $30K year 2 and $25K year 3 and beyond from there as long as Rob is on the board (Board members are not compensated...the salary is just that a salary...1099) Salary @ $30K for all 3 years... - This is fine
- Separate and distinct from the board member compensation, an option for employment for Rob Snyder as NEGO, Inc. president with appropriate executive compensation plan should I decide full time employment is something I want. As mentioned above the board members are not compensated...an executive position will be offered at present market value for such position – This is fine
- Since you will have controlling ownership right up front, a back out option (at least for a period of time - maybe 3 years) should the Merrimack Group board decide to overrule Rob and Kellie Snyder on some key decision that does something to the business you don't agree with (e.g., shutting it down, changing it's direction significantly, etc.). This addresses the concern with giving you controlling ownership right up front. This is similar to a buy-out, but protects us if a buyout is not what Merrimak Group is offering with the drastic change. Could be a set dollar amount or a percentage of profit, whichever is higher. We don't want to be just on the board of something that we don't agree with or that tears my heart out as far as what Merrimak Group has done with the business. (I know this isn't anyone's intent, but I really think this addresses how we cover ourselves in giving you controlling ownership right up front). I have no problem talking further about an exit strategy for you in the event you are not happy with the progress of the company... - At some point we might want to visit this, but not a deal closer

I look forward to our Partnership and the opportunity to pursue the PGA Tour. As do I

In addition, can you not share whatever we agree to with terms in regards to the monies with Larry? We really want this to be confidential between us and the appropriate board members. Confidentiality is clear...agreed – Thank you

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| WARREN FREEDENFELD ASSOCIATES, INC., as successor in interest to Warren Freedenfeld & Associates, Inc., <br><br> **Plaintiff** <br><br> v. <br><br> MICHAEL P. MCTIGUE, DVM, individually and as Trustee of the McTigue Family Trust, NANCY A. MCTIGUE, as Trustee of the McTigue Family Trust, BRIAN C. HURLEY, DVM, GARDNER ANIMAL CARE CENTER, LLC d/b/a Gardner Animal Hospital, EDWARD D. CORMIER ASSOCIATES, INC., and BENNETT BUILDING CORPORATION, <br><br> **Defendants** | Civil Action No. 05-11573 RGS |

**DEFENDANT EDWARD D. CORMIER ASSOCIATES, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES**

I.    **General Objections**

1.    Cormier objects to the instructions and definitions set forth in the Plaintiff's First Set of Interrogatories to the extent they impose upon Cormier a burden that is greater than, or inconsistent with, the applicable Rules of Civil Procedure. Cormier will respond to the Plaintiff's First Set of Interrogatories in accordance with the Federal Rules of Civil Procedure and the relevant Local Rules.

2.    Cormier objects to the instructions and definitions set forth in the Plaintiff's First Set of Interrogatories to the extent that they are vague, ambiguous, and seek to define terms in an expansive and overly broad manner, beyond the meaning that is given to those terms in general usage.

3.    Cormier objects to the Plaintiff's First Set of Interrogatories to the extent they seek information that is protected from disclosure by the attorney-client privilege, the work product doctrine, the joint-defense privilege or any other applicable privileges.

4.    The answers below shall not be deemed to constitute a waiver of any claims of privilege or immunity Cormier may have as to any response, document, or thing, or of any right of objection to competency, relevancy, materiality, admissibility, or any other evidentiary objection Cormier may assert.

5.      Discovery in this matter is ongoing, and accordingly Cormier reserves the right to modify, amend, or supplement any of the answers below.

6.      The following answers and specific objections to the Interrogatories are made subject to these General Objections.

## II.    Interrogatory Responses

### INTERROGATORY NO. 1
*Please state your full name, residential address, business address, your occupation, the name and address of your employer and the duties in that position.*

**Response:**    Edward D. Cormier
113 Cedar Street, Suite S4
Milford, MA  01757

Administration Manager, Edward D. Cormier Associates, Inc., now retired.  In addition, Edward D. Cormier Associates, Inc. is now a voluntarily dissolved corporation.

### INTERROGATORY NO. 2
*If you or anyone on your behalf had any communication in any form, written or oral, with GAH or any person acting on its behalf relating to or concerning any of the facts, events, occurrences or allegations set forth in the Complaint, please state:*

a.      *The specific date and time (if applicable) of each such communication;*
b.      *The manner in which each such communication was made on each of the dates listed in your answer to subpart a. of this interrogatory, i.e., whether by telephone, letter, face-to-face conversation, etc.;*
c.      *The name and address of all persons who engaged or in any way participated in each such communication listed in your answer to subpart a. of this interrogatory; and*
d.      *In full and complete detail of the entire contents of each such communication made on each of the dates listed in your answer to subpart a. of this interrogatory, indicating what was said or communicated by each of the persons listed in your answer to subpart c.*

*If any of these communications were in written form, you may respond by attaching a copy of such communications to your answers to these interrogatories.*

**Response:**    Objection.  In the wake of the court's ruling of February 9, 2006 and the corresponding order of February 13, 2006, this interrogatory addresses matters that are irrelevant to what remains of the plaintiff's complaint, and is not reasonably calculated to lead to the discovery of admissible evidence.  To the extent that this interrogatory seeks communications between counsel for Cormier and counsel for GAH, Cormier further objects on the grounds of the attorney client and joint-defense privileges.  Cormier further objects that the request is unduly burdensome, in that the burden and expense of the discovery requested outweighs its likely benefit, and overbroad.  In addition, the interrogatory is vague and unclear as to certain points.

Without waiving any of the foregoing objections, Cormier answers that it is impossible to detail each communication that Cormier had in connection with the Project, in that Cormier had periodic conversations with McCarty, Bennett, or Michael McTigue (any of whom might be considered persons "acting on behalf" of GAH) regarding the progress of the hospital renovation and amendments to design drawings. However, Cormier can provide details as to the following conversations.

Cormier was first contacted telephonically by Dan McCarty of McCarty Associates, Inc. on or about July 1, 1999. At that time, McCarty advised that construction costs for the McTigue project had been determined to be in excess of $1.3 million, when only $1 million had been budgeted for the project by McTigue. On other unrelated projects, McCarty and Cormier had consulted with each other. On this project, McCarty asked Cormier to review building designs drafted by Freedenfeld to determine whether there were any areas for construction cost savings. McCarty also advised Cormier that McTigue was dissatisfied with Freedenfeld's performance and was considering terminating Freedenfeld's services. McCarty asked whether Cormier would be interested in carrying the project forward, and if so, whether Cormier could prepare a proposal. Cormier responded that it would be interested and could prepare a proposal, but only if McTigue confirmed that it had notified Freedenfeld that it had been terminated, that Freedenfeld had been paid for the design services to date, and that McTigue had the right to use the Freedenfeld design information.

On or about July 6, 1999, Cormier prepared and submitted a draft of a design proposal to McCarty for review and comment. The proposal was limited to architectural services only, including review of documents and savings, conceptual drawings, and construction documents and administration. Structural, mechanical, electrical, plumbing were a part of the draft proposal as estimated engineering fees.

On or about July 14, 1999, Cormier met with McCarty and Bennett, at which time Cormier was provided with a set of the drawings that had been prepared by Freedenfeld. The documents provided at that time appeared to be progress prints dated May 14, 1999 and June 21, 1999.

On or about July 23, 1999, Edward Cormier attended a meeting with Dan McCarty, Michael McTigue, and Walter Bennett at the office of McCarty Associates, Inc. At that time, Cormier was advised by McTigue that Freedenfeld had been notified in writing of the termination of his services, that Freedenfeld had been paid for his services, and that McTigue had the right to use the designs generated by Freedenfeld. In reliance upon these assurances, Cormier agreed to provide design services for the project. McTigue advised that many areas of the Freedenfeld layout did not meet McTigue's requirements. Therefore, Cormier agreed to design a plan that reflected those requirements.

Following Cormier's formal retention, Cormier had periodic meetings with McTigue, McCarty, and Bennett as the plans were reviewed and revised throughout the redesign, permitting, and construction phases of the project. The exact dates and the matters discussed cannot be stated with particularity at this time.

      c.    *Any other person, firm, or entity concerning or relating to the Project.*

**Response:**    Cormier did not provide any plans, drawings, or other documents created by Freedenfeld in connection with the Project to Bennett, the Publishers of Veterinary Economic Magazine, or any other person, firm, or entity.

## INTERROGATORY NO. 16

*Please state whether you incorporated any elements of the plans or design drawings created by Freedenfeld relative to Project in any plans or design documents that you created for the Project or for any of the structures on the Property, specifying each such element copied.*

**Response:**    Objection.   In the wake of the court's ruling of February 9, 2006 and the corresponding order of February 13, 2006, this interrogatory addresses matters that are irrelevant to what remains of the plaintiff's complaint, and is not reasonably calculated to lead to the discovery of admissible evidence. Further objecting, as all copyright infringement claims have been dismissed from this action and this information is not relevant to the only claim remaining in this litigation, this interrogatory is overbroad and unduly burdensome.

    Subject to and without waiving the foregoing and the general objections, Cormier answers further:  Although McCarty initially provided Cormier with progress prints apparently drafted by Freedenfeld for purposes of securing suggestions that might bring the proposed project under budget, it is Cormier's belief that McTigue was so dissatisfied with Freedenfeld's proposed designs that Freedenfeld was terminated. The entire Project was then reworked by Cormier independent of Freedenfeld. Although there are elements that are common to the Freedenfeld progress prints and the final design drawings by Cormier, i.e. both incorporate structures that have roofs, walls, windows, doors, etc. that would be common to any structure, in reality the entire project had to be redone from scratch to embody McTigue's vision for the renovated Gardner Animal Hospital.  No element of Freedenfeld's plans was specifically copied, and the final product of Cormier's efforts differs significantly from the progress prints of Freedenfeld.

## INTERROGATORY NO. 17

*Please state the name and address of each person whom you expect to call as a witness at the time of trial and include in your answer the anticipated subject matter of each such person's testimony.*

**Response:**    Cormier has not yet decided whom it will call as a witness at the time of trial, and reserves the right to supplement this answer in a timely fashion.

    Answering further, it is anticipated that Warren Freedenfeld, Edward D. Cormier, Michael McTigue, Dan McCarty, and Walter Bennett would be called as witnesses at trial.

**INTERROGATORY NO. 18**

*If you expect to call an expert witness(es) at trial, please state:*

    a.    *the name, business address and field of expertise of each such person;*

    b.    *the subject matter on which each expert is expected to testify;*

    c.    *the substance of the facts and opinions to which each expert is expected to testify; and*

    d.    *a summary of the grounds for each such opinion.*

**Response:**    Cormier has not yet decided what person or persons it will call as an expert witness or witnesses at the time of trial, and reserves the right to supplement this answer in a timely fashion.

Under penalties of perjury, the undersigned certifies that the foregoing answers are true.

Dated: April 2̸8̸ 2006

    Edward D. Cormier
    Administration Manager
    Edward D. Cormier Associates, Inc.

As to objections:

Dated: April 29, 2006

    Stephen D. Rosenberg  BBO#558415
    Eric L. Brodie  BBO#639833
    THE MCCORMACK FIRM, LLC
    One International Place - 7th Floor
    Boston, MA    02110
    Ph:  617•951•2929
    Fax:  617•951•2672

# CERTIFICATE OF SERVICE

I hereby certify that today, May **02**, 2006, I served a copy of Defendant Edward D. Cormier Associates, Inc.'s Responses and Objections to Plaintiff's First Set of Interrogatories upon all counsel of record via first class mail to:

Barry S. Scheer, Esq.
Garrett J. Lee, Esq.
**Parker Scheer, LLP**
One Constitution Center
Boston, MA    02129

Robert D. City, Esq.
Michael J. Dissette, Esq.
**City, Hayes & Dissette, PC**
50 Congress Street
Boston, MA    02109

Robert N. Meltzer, Esq.
P.O. Box 1459
Framingham, MA   01701

Mary C. Casey, Esq.
**Harbor Law Group**
385 South Street
Shrewsbury, MA    01545

_____
Eric L. Brodie

84167.1