UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

.                                                                CIVIL ACTION NO. 05 11573 RGS

|  |  |
|---|---|
| WARREN FREEDENFELD ASSOCIATES, INC. as successor in interest to WARREN FREEDENFELD & ASSOCIATES, INC., Plaintiff, v. MICHAEL P. MCTIGUE, DVM individually and as Trustee of THE MCTIGUE FAMILY TRUST, NANCY A. MCTIGUE, as Trustee of the MCTIGUE FAMILY TRUST, BRIAN C. HURLEY, DVM, GARDNER ANIMAL CARE CENTER, LLC d/b/a GARDNER ANIMAL HOSPITAL, EDWARD D. CORMIER, ASSOCIATES INC., and BENNETT BUILDING CORPORATION, Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

MOTION OF DEFENDANTS GARDNER ANIMAL CARE CENTER, LLC, MICHAEL P.MCTIGUE, INDIVIDUALLY AND AS TRUSTEE OF THE MCTIGUE FAMILY TRUST, NANCY A. MCTIGUE AS TRUSTEE OF THE MCTIGUE FAMILY TRUST AND BRIAN HURLEY TO REACH AND APPLY SETTLEMENT PROCEEDS TO BE PAID FROM DEFENDANT EDWARD CORMIER TO THE PLAINTIFF WARREN FREEDENFELD ASSOCIATES, INC

Now comes the Gardner Animal Care Center, LLC, Michael McTigue, Nancy McTigue, the McTigue Family Trust and Brian Hurley ("the Moving Defendants") and request that this Court enter a reach and apply order requiring the Plaintiff to pay the proceeds of an imminent settlement with Defendant, Edward Cormier, into a joint, interest-bearing account or escrow agent, up to and including the amount of $100,000,

pending the entry of final judgment in this case, and the award of attorney's fees pursuant to the Moving Defendants under 17 USC § 505.

As noted in this memorandum, 17 USC § 505 provides for payment of attorney's fees to the prevailing party in a copyright infringement suit. Because this Court has already dismissed the Plaintiff's copyright claim, the right of attorney's fees to the Moving Defendants as the prevailing party under the statute has been established.

As is also noted below, the copyright claim brought by the Plaintiff was both procedurally and substantively frivolous. In addition, the Plaintiff, with knowledge of the frivolous nature of the copyright claim, has stated clearly that it intends to appeal the Court's dismissal of the claim, a promise to engage in frivolous appellate activity.

Further, the Plaintiff apparently has no assets or insurance to pay the attorney's fees, other than the proceeds of the pending Cormier settlement. Thus, the Moving Defendants are entitled to the preservation of those proceeds pending final resolution of this claim and assessment of the appropriate fees to the Moving Defendants, who are the prevailing party.

As further grounds for this motion, the Moving Defendants state as follows:

I   RELEVANT FACTS

1. The Plaintiff is Warren Freedenfeld Associates, Inc., the successor to Warren Freedenfeld & Associates, Inc.

2. On or about March 24, 1998, Warren Freedenfeld & Associates entered into a contract with Michael McTigue, DVM, d/b/a Gardner Animal Hospital, for the design of an animal hospital to be located at the site of a historic house and barn

    on Eaton Road in Gardner. (The contract between the parties was authenticated as Exhibit 21 at the deposition of Michael McTigue)

3. Michael McTigue was the principal of Gardner Animal Hospital

4. Brian Hurley, during 1998 and 1999, was an employee of Gardner Animal Hospital, with no ownership or controlling interest or ability to control the business of Gardner Animal Hospital

5. The property on 73 Eaton Road was owned by the McTigue Family Trust. The property consisted of a historic house and barn, with a connecting breezeway. (The submission to the Gardner Planning Board was authenticated at the deposition of Michael Mctigue as Exhibit 22)

6. Prior to the construction of the Gardner Animal Hospital, Dr. Michael McTigue visited nearly thirty animal hospital and reviewed substantial literature to determine his needs and wants for his new veterinary facility. Dr. McTigue had a very definite idea as to what he wanted for this new facility.

7. Dr. McTigue testified that he visited nearly 30 hospitals between February of 1998 and June of 1998 to ascertain his needs and wants, and he was able to identify many of these facilities at his deposition. (Deposition of Michael McTigue, pages 66-68)

8. Aside from Dr. McTigue's requirements, the City of Gardner, for both historic and conservation purposes, provided strict requirements for the construction of the new veterinary facility. The new facility was required to fit within the footprint and dimensions of an existing barn, in a manner which matched the

residential characteristics of Eaton Road. As Dr. McTigue noted in his deposition, "…the town dictated to us the size and the shape of the layout of this hospital."

9. Dr. McTigue retained Warren Freedenfeld to prepare the construction drawings for the facility.

10. The plans for the hospital thus consisted of three primary elements—the ideas and requirements brought to the table by McTigue following his extensive research, the requirements of the City of Gardner which dictated the proportions and basic appearance of the facility, and traffic patterns, exterior elevations and basic truss designs prepared by Warren Freedenfeld & Associates, Inc.

11. As to the primary floor plan, Freedenfeld was the scribe; Freedenfeld and McTigue were joint authors of the floor plans. Freedenfeld solely designed the exterior elevations, the trusses and several other elements not specified on the main floor layout of the hospital.

12. By his own admission, the traffic patterns of the new facility proposed by Freedenfeld had become industry standard many years prior to the facts alleged in this case. Freedenfeld claimed at his deposition that "a lot of the concepts I developed then, which is over 30 years ago…have almost become industry standard today." (Deposition of Warren Freedenfeld, page 52.)[1]

13. Freedenfeld also confirmed that, "today", other veterinary hospitals designed by other architects use the traffic flows originally designed by Freedenfeld, and that these flows had become "industry standard." (Deposition of Warren Freedenfeld, page 52.)

---

[1] Freedenfeld gives himself too much credit. Even a cursory reading of All Creatures Great and Small reveals that the traffic flow of veterinary hospitals was well established long before Warren Freedenfeld was born.

14. Notwithstanding that Freedenfeld claimed to have invented the industry standard in the mid 1970's, Freedenfeld did not apply for a design patent. (Deposition of Freedenfeld, page 140)

15. The only trademarks held by Warren Freedenfeld Associates, Inc. were logos for the company, not non-utilitarian design elements. (Deposition of Freedenfeld, page 139)

16. Warren Freedenfeld was terminated for failure to perform his responsibilities as an architect. (Deposition of McTigue, page 126)

17. On September 2, 1999, Dr. McTigue and Warren Freedenfeld & Associates, Inc. signed a termination agreement in which the Freedenfeld acknowledged that the plans were not "solely" his, and that McTigue had the right to use any plans which were not "solely" Freedenfeld's. (The Agreement was marked as Exhibit 29 at the Deposition of McTigue)

18. Dr. McTigue paid Freedenfeld consideration for this agreement. (The Agreement was marked as Exhibit 29 at the Deposition of McTigue)

19. The portion of the work that was "solely" the work of Warren Freedenfeld & Associates, Inc. consisted of exterior elevations and truss designs, both of which were discarded by Dr. McTigue when Cormier, the successor architect, was retained.

20. Dr. McTigue also discarded the confusing, claustrophobic internal traffic pattern in the facility which has been suggested by Freedenfeld,[2] replacing that traffic pattern with a more user friendly flow between sections of the hospital.

---

[2] Presumably, the "warren" in the architect's name reflects this architect's tendency to design buildings in which rabbits would feel quite at home.

21. In 1999, notwithstanding that Freedenfeld had admitted that the plans were not solely his, Freedenfeld registered a sole copyright on the jointly authored work. Notwithstanding that Warren Freedenfeld & Associates had simply taken the requirements of the City of Gardner, the concepts and plans of McTigue and non-patented industry-standard flows, and reduced, them, as scribe, to paper, Warren Freedenfeld & Associates, Inc. denied McTigue his rights to joint-authorship. (Counterclaim of McTigue)

22. Freedenfeld's copyright claim alleges that the Moving Defendants infringed on the Plaintiff's copyright in 1999 by "copying" the registered work.

23. In 2000, Gardner Animal Care Center, LLC was incorporated. (See, Records of the Secretary of State)

24. In 2000, Warren Freedenfeld & Associates, Inc. filed for a Chapter 11 bankruptcy. (Deposition of Freedenfeld, page 108 et seq,)

25. A new company, Warren Freedenfeld Associates, emerged from the bankruptcy at some point in 2000. (Deposition of Freedenfeld, page 108 et seq.)

26. In 2005, Warren Freedenfeld Associates filed a copyright claim alleging copyright infringement in 1999.

27. On February 8, 2006, this Court dismissed the copyright infringement claim as time-barred.

28. The Plaintiff has since transferred the bulk of its assets to a new entity, Rauhaus Freedenfeld & Associates, LLP, apparently only retaining the corporate plaintiff as a shell entity, without any assets or revenues to satisfy any claims against it.

(Deposition of Freedenfeld, page 111 et seq.) However, some confusion exists as to who now owns this lawsuit, as Freedenfeld also testified that the "two companies came together to form one company, the two halves forming the whole." (Deposition of Freedenfeld, page 111 et seq.)

29. The Moving Defendants are now aware that Defendant, Edward Cormier, has reached a separate settlement with the Plaintiff, which will provide some funds to the Plaintiff.

## II.    THE COPYRIGHT CLAIM WAS BOTH PROCEDURALLY AND SUBSTANTIVELY FRIVOLOUS

### A. THE CLAIM HAD NO MERIT PROCEDURALLY AT THE TIME OF FILING

For the purposes of this motion, the Court need only take note that this Court determined on February 8, 2006 that the claim was time-barred. The Court should also take note that the claim was time-barred by a number of years. There was no argument, nor could there have been a valid argument, that the claim was not time-barred, at the time of filing. The lawsuit was clearly time-barred when the suit was filed, and was therefore frivolous and without any legal basis.

### B. THE CLAIM HAD NO MERIT SUBSTANTIVELY AT THE TIME OF FILING, AS THE PLAINTIFF LACKED STANDING TO BRING SUIT

Aside from the fact that the claim was time-barred, the case was also substantively frivolous on the grounds that the Plaintiff apparently had no standing to bring this suit.

It is well-established that the primary element for success in a copyright infringement claim is "ownership" of a copyrighted work. Because of the dismissal of the claim on statute of limitations grounds on February 8, 2006, the issue of "ownership" was not subject to discovery. However, a cursory review of publicly available bankruptcy records suggest that the 2000 bankruptcy resulted in the loss of the intellectual property assets of Warrant Freedenfeld & Associates, Inc. which had been established in 1999, even if fraudulently registered.

Thus, as of 2005, when this claim was filed, five years apparently had elapsed between the time that the Plaintiff lost the rights to the claim, and the time the claim was filed.

It is also not clear that the current entity, Warren Freedenfeld Associates, Inc. carved out any remaining interest in the intellectual property at the time of formation of Rauhaus Freedenfeld, further raising doubts as to current ownership of standing to sue.

Had this matter not been dismissed on the grounds of statute of limitations, it would not have survived a summary judgment claim on the grounds of ownership, as it does not appear that the Plaintiff has standing to sue.

### C. THE CLAIM HAD NO MERIT SUBSTANTIVELY AT THE TIME OF FILING, AS THE DEFENDANT'S WERE ENTIRELY FREE OF CULPABILITY FOR INFRINGEMENT

Even if the claim had not been time-barred, and even if the Plaintiff could have established ownership (both of which are dubious propositions at best), these defendants were clearly not culpable for the alleged infringement.

The Gardner Animal Care Center, LLC, was established in 2000, *after* the alleged

infringement in 1999. There is no evidence, nor would there be any evidence, that the corporation is liable for the actions of one of its incorporators prior to creation of the entity. Massachusetts corporate law has long held that a new corporation does not assume liability for the debts of a predecessor without express agreement to accept those liabilities. See, <u>New England Factors v. Genstil</u>, 322 Mass. 36,45 (1947).

Gardner Animal Care Center, LLC is not liable for the acts and conducts of Gardner Animal Hospital that occurred prior to the incorporation of the corporate entity.

Thus, even if the Plaintiff had standing to bring suit, and even if the Plaintiff had not had his claim time-barred, the claim against the corporation was still contrary to law and frivolous when the suit was filed.

Similarly, the McTigue Family Trust, and its trustees, had absolutely nothing to do with alleged infringement. The McTigue Family Trust merely owned the land which was leased to the hospital, and had no involvement in the design or construction of the building. There has been no evidence to demonstrate any such involvement, nor is there any evidence that Nancy McTigue, as Trustee, had any involvement, at all, with the facts alleged.

Thus, even if the Plaintiff had standing to bring suit, and even if the Plaintiff had not had his claim time-barred, the claim against the Trust and its trustees was still contrary to law and frivolous when the suit was filed.

Defendant Brian Hurley was merely an employee of Gardner Animal Hospital at the time of the events in 1999. There is no evidence, nor could there be any evidence, that he had any involvement in the design or construction of the hospital, or that he had any control or involvement in the design or construction of management of the hospital.

Thus, even if the Plaintiff had standing to bring suit, and even if the Plaintiff had not had his claim time-barred, the claim against Hurley was still contrary to law and frivolous when the suit was filed.

Freedenfeld acknowledged in the termination agreement in 1999 that McTigue was a joint author of the joint work that Freedenfeld registered. McTigue paid consideration for that agreement.

17 USC § 201(a), which defines joint work and joint authors, specifically states defines these terms as "a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole."  As noted in Nimmer on Copyrights, § 6.01, "a joint work may more properly be defined as one in which the copyright is owned in undivided shares by two or more persons."

As a joint author, McTigue had the absolute legal right to use his jointly authored work as he saw fit. Consequently, he is not subject to claims for infringement of his own work. Freedenfeld has acknowledged that he, upon the request of McTigue, added the word "solely," and that he initialed the change and signed the document. (Deposition of Freedenfeld, page 103 et seq.)

Thus, even if the Plaintiff had standing to bring suit, and even if the Plaintiff had not had his claim time-barred, the claim against McTigue was still contrary to law and frivolous when the suit was filed.

In addition, as a joint owner of the work, McTigue had the legal right to authorize its use by others under license. Thus, even if the Plaintiff had standing to bring suit, and even if the Plaintiff had not had his claim time-barred, the claim against any of these

parties, who would have had license by McTigue to use the material, was still contrary to law and frivolous when the suit was filed.

    D.  EVEN IF THE PLAINTIFF WERE A PROPER PARTY, AND EVEN IF A LEGITIMATE DEFENDANT EXISTED, THERE WAS NEVER ANY BASIS FOR A CLAIM OF COPYRIGHT INFRINGMENT

      Finally, even if the Plaintiff had identified a proper plaintiff, and even if the Plaintiff had identified a proper defendant, the Plaintiff would have been unable to make a substantive showing of infringement; the claim appears to have been based on the absurd proposition that the Cormier plan and the Freedenfeld plan were "virtually identical" because both plans had a waiting room adjacent to the front door.

      It is well established as a matter of copyright law that a party cannot base a claim upon substantial similarity to elements not subject to protection of their own accord. This Court should take note that the Plaintiff in this case filed this suit shortly after the First Circuit handed down its opinion in <u>Johnson v. Gordon</u>, 409 F 3rd 12 (1st Cir. 2005).

      The <u>Johnson</u> Court noted as a preliminary matter "that copying does not invariably constitute copyright infringement." <u>Johnson</u>, 409 F.3rd at 18. In assessing the "substantial similarity test" to determine whether infringement exists, "…a court must engage in dissection of the copyrighted work by separating its original, protected expressive elements from those aspects that are not copyrightable because they represent unprotected ideas or unoriginal expressions." <u>Johnson</u>, 409 F.3rd at 19.

      In his deposition, Warren Freedenfeld admitted that the drawings prepared by Cormier for Michael McTigue were not copies of his plans. (Deposition of Warren Freedenfeld, page 148). Thus, the Plaintiff in this case is basing his claim entirely upon

the principal that substantial similarities exist between the Freedenfeld plans and the hospital as it was built.[3] These substantial similarities apparently include such diverse common elements as a front door, a reception desk, a waiting room near the front door that encompasses a reception desk, a medical records area and the other, typical elements found in any medical facility.

In short, by his own admission, the Plaintiff's own claim for copyright infringement is based entirely upon the fact that the Freedenfeld floor plan contained a common, industry-standard traffic flow, as well as entirely unoriginal expressions and ideas not subject to copyright protection under Johnson.[4]

The Johnson case, already recognized as a landmark case by Nimmer, drew a sharp line in the First Circuit as to the elements of copyright infringement. Under Johnson, the Plaintiff falls clearly and easily on the wrong side of the line.

The Court should also note that the Johnson case created a stir when it was handed-down, and was the subject of substantial discussion among the copyright bar. The filing of the Plaintiff's claim after Johnson, in clear disregard of the holding of Johnson,

---

[3] This is inferred from the questions posed at the deposition of Michael McTigue in which counsel for Freedenfeld elicited the testimony that the current hospital must be substantially similar to the Freedenfeld plan because both had a pharmacy, treatment rooms, restrooms, a janitor closet and other such features of veterinary hospitals, even though the features were in different locations. (deposition of McTigue, page 125 et seq.) The Court might wish to take note that these questions were asked, notwithstanding that the copyright claim had already been dismissed and such questions were supposedly off limits.

[4] By Freedenfeld's theory, a homeowner who fired a residential architect would be required to place the dining room upstairs in a new home, as opposed to placing it next to the kitchen, in order to avoid allegations of substantial similarity. After Johnson, neither the residential homeowner, nor a veterinary surgeon, faces liability under copyright law for makings his house or his veterinary hospital like every other such structure in the community.

further demonstrates a flagrant disregard for the law, and a further act of intentional frivolous litigation.[5]

Any claim that a copyright infringement occurred because a vet hospital looked like a vet hospital, is entirely frivolous, and any claims on that basis were frivolous when filed.

    III.    17 USC § 505 PROVIDES FOR PAYMENT OF ATTORNEY'S FEES FOR THE PREVAILING PARTY, WHICH, IN THIS CASE, IS THE GROUP OF MOVING DEFENDANTS

    A.  THE MOVING DEFENDANTS HAVE ALREADY ESTABLISHED A CERTAINTY OF ENTITLEMENT TO ATTORNEY'S FEES UNDER FEDERAL LAW

17 USC § 505 was created to shift attorney's fees to the prevailing party in a copyright suit.

The Moving Defendants are already the prevailing party in this suit, as demonstrated by Court Order of February 8, 2006. They are entitled to attorney's fees under federal law.

Notwithstanding the clearly frivolous nature of the claims, both on a procedural and substantive level, and the Order of this Court dismissing the claim for infringement, the Plaintiff has vowed to appeal the Order and to continue this litigation well into the future.

---

[5] The Plaintiff has routinely disregarded case law that was handed down after 2002, including his disregard for such landmark cases as Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23 (2003). Considering the repetitive pattern of disregarding recent and important case law, it is becoming difficult to believe that the reliance on outdated case law is anything other than intentional.

    B.  THE PLAINTIFF LACKS FINANCIAL WHEREWITHAL TO PAY THE ASSESSED ATTORNEY'S FEES

The Plaintiff in this lawsuit has admitted that it is no longer a functioning business entity following its merger with Rauhaus. The Plaintiff is now a mere shell without revenue or income or, apparently, assets.

The Moving Defendants have already incurred substantial costs defending the frivolous copyright infringement claims, which include the initial evaluation of the claim, the drafting of motions to dismiss a patently frivolous claim and the travel to court to argue the motion to dismiss. The Moving Defendants have also incurred substantial costs during the Plaintiff's frivolous attempts to appeal this matter on an interlocutory basis, and during the Plaintiff's bizarre attempt to dismiss the remaining counts of its own Complaint. The Moving Defendants have also incurred substantial costs successfully quashing infringement discovery.

Finally, the Moving Defendants have incurred substantial costs in responding to frivolous infringement discovery after the Order of February 8, 2006, all of which will be addressed at a subsequent date.

The Plaintiff will likely be ultimately responsible for nearly $100,000 in legal fees and costs.

The Moving Defendants are unaware of any insurance policy that provides coverage for an award of attorney's fees paid to the prevailing party following clearly frivolous litigation.

It thus appears that the Plaintiff, while facing certain, substantial imposition of fees and costs, lacks, any ability to pay for the harm it has caused.

C. ANY FUNDS AVAILABLE TO THE PLAINTIFF, INCLUDING SETTLEMENT PROCEEDS, SHOULD BE PRESERVED FOR PAYMENT OF PLAINTIFF'S DEBTS, INCLUDING INCHOATE ATTORNEY'S FEES TO BE PAID TO THE MOVING DEFENDANT

The only funds which will apparently be flowing to the Plaintiff are the settlement proceeds being paid by Cormier to the Plaintiff.

As the sole asset that will likely ever be available to pay the Plaintiff's debts, a debt which will include an award of attorney's fees to the Moving Defendants, these proceeds should be preserved to ensure that the Moving Defendants have access to the remedy deemed appropriate by the Congress in established 17 USC § 505. This provision, drafted by Congress, is intended as an equitable remedy for parties who are unfairly, and wrongly, dragged through the excessive costs and fees that are part and parcel of copyright litigation.

The claims brought by Freedenfeld were so frivolous that equity demands compensation to the Moving Defendants. The mere fact that the copyright claim was dismissed outright, at the 12(b)(6) stage, is substantial confirmation that the claim was without merit from the day of filing. Even if the claim had survived the initial motion, the Plaintiff would not have survived a well-pled motion for summary judgment.

Equity demands that this Court preserve any funds due to the Plaintiff to ensure the Moving Defendants' equitable right to payment of its fees for defending this lawsuit, by requiring that any settlement funds be preserved pending the conclusion of this litigation, either by payment of the funds to a joint, interest bearing account, or to an escrow agent selected by the parties charged with holding and disbursing funds at the direction and discretion of the Court.

There will be no prejudice to the Plaintiff, as he has no entitlement to the funds received. Indeed, he should be deemed a trustee for the benefit of the Moving Defendants, who have been harmed by the Plaintiff's misconduct. Failure to secure these funds will cause extreme prejudice to the Moving Defendants, as it is not apparent that any further income will be received by the Plaintiff. Thus, an equitable balance is reached by allowing this motion.

## IV.    CONCLUSION

For the foregoing reasons,

1. that the copyright claims were frivolous from both a substantive and procedural basis from the date of filing
2. that the claims have already been dismissed
3. that the statute provides for payment of attorney's fees to the prevailing party
4. that the Plaintiff has apparently no assets
5. that the Moving Defendants are unaware of insurance coverage to provide for fees
6. that the Plaintiff is apparently receiving funds as part of a settlement with Defendant Cormier
7. that the funds ought to be preserved to pay fees and costs to the prevailing party, which is the Moving Defendants,

this Court should Order that the funds received, up to an including $100,000, should be secured in a joint account or by an escrow agent, and that this motion, in equity, must be ALLOWED.

        Respectfully Submitted,

        The Moving Defendants,

        By their attorneys,

        s/Robert N. Meltzer_____
        The Mountain States Law Group
        Robert N. Meltzer, BBO #564745
        P.O. Box 1459
        Framingham, MA 01701
        Phone: (508) 872-7116


        s/Mary C. Casey_____
        Mary C. Casey, BBO #636250
        Harbor Law Group
        385 South Street
        Shrewsbury, MA 01545
        Phone: (508) 842-9244


Dated: February 20, 2007

## CERTIFICATE OF COMPLIANCE WITH L.R. 7.1

    I, Robert N. Meltzer, hereby certify that prior to the filing of this motion I initiated a conference to meet and confer with Plaintiff's counsel. Ironically, the Plaintiff responded by suggesting that this motion was frivolous. Clearly, the parties could not resolve this issue without court intervention.


        s/Robert N. Meltzer

CERTIFICATE OF SERVICE

      I, Robert N. Meltzer, do hereby certify that on this day I have served the foregoing by providing a copy of the same by first class mail, postage prepaid, to:

Barry S. Scheer, Esq.
Parker Scheer, LLP
One Constitution Center
Boston, MA 02129

Stephen D. Rosenberg, Esq.
The McCormack Firm
One International Place
Seventh Floor
Boston, MA 02110

Robert D.City, Esq.
Michael J. Dissette, Esq.
City, Hayes & Dissette, PC
50 Congress Street
Boston, MA 02109

Robert A. McCall, Esq.
Peabody & Arnold, LLP
30 Rowes Wharf
Boston, MA 02110

                                                     s/Robert N. Meltzer_____

February 20, 2007