UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. NO. 05-11573-RGS

WARREN FREEDENFELD ASSOCIATES, INC.
as successor in interest to
WARREN FREEDENFELD & ASSOCIATES, INC.

v.

MICHAEL P. McTIGUE, DVM,
NANCY A. McTIGUE,
BRIAN C. HURLEY, DVM,
GARDNER ANIMAL CARE CENTER, LLC
d/b/a/ GARDNER ANIMAL HOSPITAL,
and
EDWARD D. CORMIER ASSOCIATES, INC.

MEMORANDUM AND ORDER ON MOTIONS
FOR SUMMARY JUDGMENT

March 9, 2007

STEARNS, D.J.

On July 26, 2005, Warren Freedenfeld Associates, Inc. (WFA), an architectural firm, filed this action for copyright infringement and violation of the Lanham Act, 15 U.S.C. § 1125(a). The dispute involves architectural plans for the design of an animal hospital. Named as defendants are Michael P. McTigue, DVM, Nancy A. McTigue, Brian C. Hurley, DVM, the Gardner Animal Care Center, LLC d/b/a Gardner Animal Hospital (collectively, the Hospital Defendants), and the architectural firm of Edward D. Cormier Associates, Inc. On February 9, 2006, the court entered summary judgment in favor of all defendants on the copyright-related claims. On August 15, 2006, Michael McTigue brought counterclaims against WFA claiming joint authorship and ownership of the hospital plans. McTigue

asserted claims against WFA for: (1) copyright infringement; (2) violation of the Federal Trade Commission Act (FTCA), 15 U.S.C. § 45; (3) common-law conversion; and (4) violation of the Massachusetts Consumer Protection Act, G.L. c. 93A.  The Hospital Defendants also moved for summary judgment on WFA's Lanham Act claim.  WFA responded with a motion for summary judgment on the counterclaims.  At oral argument on March 8, 2007, counsel for WFA informed the court that WFA had decided to withdraw and dismiss the Lanham Act claim against the Hospital Defendants.  Accordingly, the court will limit its discussion to WFA's motion for brevis disposition of the counterclaims.

## BACKGROUND

In March of 1998, McTigue hired architect Warren Freedenfeld, the principal of WFA, to design a veterinary hospital for a site in Gardner, Massachusetts.  Freedenfeld completed several drawings that were submitted to the Gardner Planning Board to obtain a zoning variance.  On March 24, 1998, McTigue and Freedenfeld executed an American Institute of Architects Abbreviated Form of Agreement between Owner and Architect (Owner and Architect Agreement).  However, they soon came to a falling out.  Freedenfeld complained that McTigue had not made all of the payments due for his services, while McTigue accused Freedenfeld of exceeding the agreed budget while failing to complete all of the required work.  In August of 1999, McTigue sent Freedenfeld a letter terminating the Owner and Architect Agreement.  On August 11, 1999, Freedenfeld registered a copyright in the design plans. On September 2, 1999, the parties executed a mutual release.

Sometime thereafter, the Hospital Defendants submitted building plans to the City of Gardner, listing defendant Edward Cormier as the architect.  The City issued a building

permit on October 26, 1999. In June of 2000, the hospital opened for business. In 2004, Freedenfeld saw an article about the hospital in *Veterinary Economics*, a trade journal for veterinarians. The article noted that the hospital had received a design merit award, and credited Cormier as the architect. Freedenfeld obtained a copy of the building plans from the City, and concluded that Cormier had copied his design plans.[1] This litigation ensued.

## DISCUSSION

WFA argues that it is entitled to summary judgment on McTigue's copyright claim because: (1) the copyright registration entitles WFA to a presumption of copyright validity; (2) that by contract, WFA is the sole owner and author of the work; and (3) McTigue can not demonstrate joint authorship.[2] For efficiency's sake, I will begin with WFA's third contention, because if McTigue cannot show joint authorship, he can not sustain a claim for copyright infringement. Pursuant to the Copyright Act, the authors of a joint work are co-owners of the copyright. 17 U.S.C. § 201(a). A "joint work" is "a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. § 101. McTigue can only be considered a joint author if he and WFA intended co-authorship, and intended further that their respective contributions be melded together into an integrated and indivisible work.

---

[1]The dispute between WFA and Cormier was resolved privately and Cormier is no longer a party to the case.

[2]In their reply brief, defendants state that the plans submitted to *Veterinary Economics* were created by Cormier, and not by Freedenfeld, a position inconsistent with defendants' earlier pleadings in which they maintained that the plans resulted from a collaborative effort between WFA and McTigue.

Childress v. Taylor, 945 F.2d 500, 508 (2d Cir. 1991); Aalmuhammed v. Lee, 202 F.3d 1227, 1232 (9th Cir. 2000).

> Section 6.1 of the Owner and Architect Agreement provides, in pertinent part, that
>
> [t]he Drawings, Specifications and other documents prepared by the Architect for this Project are instruments of the Architect's service for use solely with respect to this Project, and **the Architect shall be deemed the author of these documents and shall retain all common law, statutory and other reserved rights, including the copyright.** (Emphasis added).
>
> Section 9.5 of the Agreement is an integration clause providing that
>
> [t]his Agreement represents the entire and integrated agreement between the Owner and Architect and supersedes all prior negotiations, representations or agreements, either written or oral. This Agreement may be amended only by written instrument signed by both Owner and Architect.

The plain language of the Agreement makes clear that at its inception the parties did not contemplate giving recognition to McTigue as the joint author of the plans, whatever contribution he might make to the ultimate design of the hospital. "In [the architect-client] relationship, it is quite normal for the client to supply the engineer or architect with general design features which the client expects to be incorporated into the architectural plans and for the professional then to create the design drawings incorporating these features." Aitken, Hazen, Hoffman, Miller, P.C. v. Empire Construction Co., 542 F. Supp. 252, 259 (D. Neb. 1982). As the Court explained in construing § 101 of the Copyright Act in Childress, 945 F.2d at 507,

> [t]he wording of the statutory definition appears to make relevant only the state of mind regarding the unitary nature of the finished work — an intention "that their contributions be merged into inseparable or interdependent parts of a unitary whole." However, an inquiry so limited would extend joint author status to many persons who are not likely to have been within the contemplation of Congress. For example, a writer frequently works with an editor who makes numerous useful

4

revisions to the first draft, some of which will consist of additions of copyrightable expression. Both intend their contributions to be merged into inseparable parts of a unitary whole, yet very few editors and even fewer writers would expect the editor to be accorded the status of joint author, enjoying an undivided one-half interest in the copyright in the published work. Similarly, research assistants may on occasion contribute to an author some protectable expression or merely a sufficiently original selection of factual material as would be entitled to a copyright, yet not be entitled to be regarded as a joint author of the work in which the contributed material appears. What distinguishes the writer-editor relationship and the writer-researcher relationship from the true joint author relationship is the lack of intent of both participants in the venture to regard themselves as joint authors.

McTigue hangs his hat on the parties' September 1999 Termination and Mutual Release Agreement. McTigue argues that § 3 of the Termination Agreement, as modified, "confirms and verifies" his status as the joint author. Section 3, in its entirety, provides that

> GAH agrees not to use any of the work **solely** produced by WFA. Article 6 of the Owner and Architect Agreement shall remain in full force and effect. (Emphasis added).

The word "solely" was inserted in handwriting in the typewritten contract, and was initialed by both McTigue and Freedenfeld. McTigue argues that he insisted on the addition of the word to make clear that the parties had joint rights in the plans. According to McTigue, he and Freedenfeld "worked jointly on the design process, with McTigue providing numerous ideas for the Hospital and Freedenfeld, working as a scribe, reducing the ideas of the collaboration to a unified set of plans for the Project." Counterclaim, ¶ 4. McTigue contends that by agreeing to the inclusion of the word "solely" in the Termination Agreement, Freedenfeld admitted that the "work" was not exclusively his.

McTigue argues that questions of fact thus persist about the parties' intent. "A contract is to be construed to give reasonable effect to each of its provisions." McMahon v. Monarch Life Ins. Co., 345 Mass. 261, 264 (1962). "[E]very phrase and clause must be presumed to have been designedly employed, and must be given meaning and effect,

whenever practicable, when construed with all the other phraseology contained in the instrument, which must be considered as a workable and harmonious means for carrying out and effectuating the intent of the parties." J.A. Sullivan Corp. v. Commonwealth, 397 Mass. 789, 795 (1986), quoting Charles I. Hosmer, Inc. v. Commonwealth, 302 Mass. 495, 501 (1939).  "[T]he court must construe all words that are plain and free from ambiguity according to their usual and ordinary sense." Suffolk Construction Co., Inc. v. Lanco Scaffolding Co., Inc., 47 Mass. App. Ct. 726, 729 (1999).  Contract language is ambiguous "where an agreement's terms are inconsistent on their face or where the phraseology can support reasonable difference of opinion as to the meaning of the words employed and the obligations undertaken." Fashion House, Inc. v. K Mart Corp., 892 F.2d 1076, 1083 (1st Cir. 1989).  However, "an ambiguity is not created simply because a controversy exists between parties, each favoring an interpretation contrary to the other's." Jefferson Ins. Co. of N.Y. v. Holyoke, 23 Mass. App. Ct. 472, 475 (1987).

Construed according to its plain meaning, § 3 of the Termination Agreement does not modify § 6 of the Owner and Architect Agreement, which explicitly provides that WFA is the sole author of the plans and the sole owner of the copyright.  Section 3 expressly provides that "Article 6 of the Owner and Architect Agreement shall remain in full force and effect."  WFA is therefore entitled to summary judgment on McTigue's counterclaim for copyright infringement.

WFA contends that a dismissal of McTigue's claim for copyright infringement requires a dismissal of his claims for conversion and violation of G.L. c. 93A.[3]  With regard

---

[3] WFA notes that the claim for violation of the FTCA must be dismissed in any event, as the Act does not provide for a private right of action.  McTigue, appropriately, does not

6

to the conversion claim, McTigue maintains that WFA, while allegedly admitting that the plans were not solely its own, expropriated and converted his share of the work for its own benefit. As WFA notes, a claim of conversion requires that a defendant be proved to have "intentionally or wrongfully exercise[d] acts of ownership, control or dominion over personal property to which he has no right of possession at the time . . . ." Abington Nat'l Bank v. Ashwood Homes, Inc., 19 Mass. App. Ct. 503, 507 (1985). The Owner and Architect Agreement specifically provides that WFA is the exclusive owner of the copyrighted work. "In Massachusetts, conversion focuses on the wrongful possession of personal property of the owner, without the owner's consent." John G. Danielson, Inc. v. Winchester-Conant Props., Inc., 186 F. Supp. 2d 1, 28 (D. Mass. 2002). As McTigue cannot show that he is an owner of the work, WFA is entitled to summary judgment on the conversion claim. It follows that judgment must also enter for WFA on the claim brought under G.L. c. 93A.[4]

### ORDER

For the foregoing reasons, WFA's motion for summary judgment is ALLOWED and the counterclaims are DISMISSED. Defendant's motion for summary judgment on the Lanham Act claim is ALLOWED with plaintiff's consent, and the claim is DISMISSED with prejudice. No claims remaining, the Clerk will terminate the case. The parties are to bear their own costs.

---

dispute this contention.

[4] If McTigue were, as he claims, the joint author of the hospital design with Freedenfeld, he would as a result be precluded by law from bringing a G.L. c. 93A claim against WFA. See Zimmerman v. Bogoff, 402 Mass. 650, 662 (1988) (noting that it is "well-established" that disputes between parties in a joint venture do not fall within the scope of G.L. c. 93A), Newton v. Moffie, 13 Mass. App. Ct. 462, 467 (1982) (same, partnership disputes).

SO ORDERED.

/s/ Richard G. Stearns

_____
UNITED STATES DISTRICT JUDGE